MARC LAZO (Ca. Bar. No. 215998)
PHILIP EIKER (Az Bar. No. 025913)
**WILSON KEADJIAN BROWNDORF LLP**
62 Rail X Ranch Estates Place
Patagonia, Arizona 85624
Phone No.:     (888) 690-5557
Fax No.:         (949) 234-6254
mlazo@wkbllp.com
peiker@aol.com

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| In re | **Case No.**  2:11-BK-21164 |
| Daniel Hendon | **Chapter 11** |
| Debtor. | -------------------------------------------- |
| | **Adversary No. 2:16-ap-00127** |
| Diversified Funding Group, LLC;  Reynaldo Gutierrez; The Faradjollah Fred Djahandideh Trust; Fred Djahandideh; HCM Retirement Trust, Drew Sherline; Rightpath Investors, LLC; Sirotka Holdings, LLC; iDea Services, LLC; Van Buren Development, LLC; Southwest Development Partners, LLC; and Fortuna Asset Management, LLC, Judgment Creditors | **Adversary Complaint for:** |
| | 1. **AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS;** |
| V. | 2. **VIOLATIONS OF A.R.S. §44-1004 (FRAUD UPON A PRESENT CREDITOR);** |
| Daniel Hendon, Debtor; Nell Hendon; Heather Hendon; Victoria Hendon; Kelly Carroll; Alan Meda; Ernie Garcia; Burch & Cracchiolo; Verde Auto Services, LLC; Verde Investments, Inc.; Ellis Rubenstein; Prudential Metal and Steel Supply, LLC; E Management Consulting, LLC; Ernie Vasquez; Gil Olguin; Jay Swart; Maria Barker; Pacwest Energy, LLC; Jacksons Food Stores, Inc.; Equilon Enterprises, LLC; Kent Despain; Steven Johnson; OCS Capital Group; Dickinson Wright PLLC; Carolyn J. Johnsen   and DOES 1 through 100, inclusive, | 3. **WIRE FRAUD;** |
| | 4. **MONEY LAUNDERING;** |
| | 5. **VIOLATION OF 18 U.S.C. §1962 (CIVIL RICO);** |
| | 6. **NEGLIGENCE;** |
| | 7. **NEGLIGENCE PER SE;** |
| | 8. **CONSTRUCTIVE TRUST.** |
| Defendants | |

1

First Amended Adversary Complaint

# FIRST AMENDED ADVERSARY COMPLAINT

Diversified Funding Group; Reynaldo Gutierrez; The Faradjollah Fred Djahandideh Trust; Fred Djahandideh; HCM Retirement Trust, Drew Sherline; Rightpath Investors, LLC; Sirotka Holdings, LLC; iDea Services, LLC; Van Buren Development, LLC; Southwest Development Partners, LLC; and Fortuna Asset Management, LLC, Plaintiffs and Judgment Creditors (collectively referred to herein as "Plaintiffs"), by and through their attorney of record, Marc Y. Lazo, hereby file this First Amended Adversary Complaint against Daniel Hendon ("Debtor"); Nell Hendon; Heather Hendon; Victoria Hendon; Kelly Carroll; Alan Meda; Ernie Garcia; Verde Auto Services, LLC; Verde Investments, Inc.; Ellis Rubenstein; Prudential Metal and Steel Supply, LLC; Ernie Vasquez; Gil Olguin; Jay Swart; Maria Barker; Pacwest Energy, LLC; Jacksons Food Stores, Inc.; Equilon Enterprises, LLC; Kent Despain, Steven Johnson, OCS Capital Group, Dickinson Wright PLLC, Carolyn J. Johnsen (collectively referred to herein as "Defendants"). In support of its First Amended Adversary Complaint, Plaintiffs state as follows:

## ALLEGATIONS COMMON TO ALL COUNTS

## I. THE PARTIES

### A. Plaintiffs

1.     At all times mentioned herein, Plaintiff DIVERSIFIED FUNDING GROUP, LLC was and is an Arizona limited liability company operating as a capital investment company with its principal place of business in Scottsdale, Arizona.

2.     The other individuals and entities identified as Plaintiffs are parties to this matter by and through certain loan participation agreements with DIVERSIFIED FUNDING GROUP, LLC and have been harmed by the fraudulent conduct of Defendants.

### B. Defendants

3.     Defendants consist of Debtor, DANIEL HENDON ("Debtor"), HEATHER HENDON, and eighteen (18) separate entities or individuals, all of whom have participated in a scheme to defraud Plaintiff and the courts.

4. HEATHER HENDON is the Debtor's daughter and intentionally acted to participate in the fraudulent transfers orchestrated by Debtor, as alleged herein, in order to put beyond reach of creditors and Plaintiff property it would be entitled to. Defendant HEATHER HENDON was and is an individual residing in the city of Phoenix, Arizona.

5. Defendant ERNIE GARCIA participated as a strawman in a scheme to defraud Plaintiff and the bankruptcy court. Defendant ERNIE GARCIA is an acquaintance of Debtor and/or HEATHER HENDON. Plaintiff is informed and believes and thereon alleges that Defendant ERNIE GARCIA is a resident in the State of Arizona.

6. Defendant ERNIE GARCIA is the founder of VERDE INVESTMENTS, INC., and has the power, directly or indirectly, to direct the management and policies of VERDE INVESTMENTS, INC. Defendant VERDE INVESTMENTS, INC., is an Arizona corporation with its principal place of business in Phoenix, Arizona.

7. Defendant ERNIE GARCIA, an individual, is the founder of VERDE AUTO SERVICES, LLC, and has the power, directly or indirectly, to direct the management and policies of VERDE AUTO SERVICES, LLC. Defendant VERDE INVESTMENTS, INC., is an Arizona corporation with its principal place of business in Phoenix, Arizona.

8. Defendant ELLIS RUBENSTEIN is a family friend and/or former co-worker of Debtor. Plaintiff is informed and believes and thereon alleges that Defendant ELLIS RUBENSTEIN is a resident in the State of Arizona.

9. Defendant ELLIS RUBENSTEIN is the founder of PRUDENTIAL METAL AND STEEL SUPPLY, LLC, and has the power, directly or indirectly, to direct the management and policies PRUDENTIAL METAL AND STEEL SUPPLY, LLC. PRUDENTIAL METAL AND STEEL SUPPLY, LLC, is an Arizona limited liability company with its principal place of business in Scottsdale, Arizona.

10. Defendant E MANAGEMENT CONSULTING, LLC, is an Arizona limited liability company and a shell corporation owned and operated by ELLIS RUBENSTEIN.

11. Defendant ALAN MEDA is the Debtor's attorney and has participated in the fraud, by among other things, orchestrating the fraudulent conduct and receiving a substantial amount of money

otherwise belong to the creditors and specifically Plaintiff. Plaintiff is informed and believes and thereon alleges that Defendant ALAN MEDA is a resident in the State of Arizona.

12. Defendant BURCH & CRACCHIOLO, is an Arizona Corporation with its principal place of business at 400 N. Tustin Ave. Suite 370 Santa Ana, California 92705.

13. MARIA BARKER is the Debtor's girlfriend and participated in the fraud by receiving and/or hiding Debtor's assets. Plaintiff is informed and believes and thereon alleges that Defendant MARIA BARKER was and is an individual residing in the city of Corona Del Mar, California and has participated in the fraud upon the bankruptcy court in Arizona.

14. Defendant KELLY CAROL is the Debtor's ex-wife. KELLY CAROL participated in the fraud by receiving funds, rightfully belonging to the Plaintiff and/or the bankruptcy courts. Plaintiff is informed and believes and thereon alleges that Defendant KELLY CAROL was and is an individual residing in the State of Arizona.

15. Defendant NELL HENDON is Debtor's mother and participated in the scheme by wrongfully receiving funds and/or hiding assets to hinder, delay, or defraud Plaintiff and other creditors from collecting. Plaintiff is informed and believes and thereon alleges that Defendant NELL HENDON was and is an individual residing in the State of Arizona.

16. Defendant VICTORIA HENDON is Debtor's ex-wife and Defendant HEATHER HENDON'S mother and participated in effectuating the conspiracy and scheme. Plaintiff is informed and believes and thereon alleges that Defendant VICTORIA HENDON was and is an individual residing in the State of Arizona.

17. Defendant GIL OLGUIN is, or purports to be, a bond financier and helped facilitate the scheme to defraud Plaintiff and the courts. Plaintiff is informed and believes and thereon alleges that Defendant GIL OLGUIN was and is an individual residing in the State of Nevada and has participated in the fraud upon the bankruptcy court in Arizona.

18. Defendant JAY SWART is a longtime family friend of Debtor and received assets, including a Ferrari, to effectuate a scam upon the bankruptcy court and Plaintiff. Plaintiff is informed and believes and thereon alleges that Defendant JAY SWART was and is an individual residing in the State of Arizona.

First Amended Adversary Complaint

19.     Defendant PACWEST ENERGY, LLC participated in a fraudulent transaction to preclude Plaintiff from recovery. Plaintiff is informed and believes and thereon alleges that Defendant PACWEST ENERGY, LLC is a Delaware limited liability company domesticated as a foreign entity in the State of Arizona with its principal place of business in Phoenix, Arizona.

20.     Defendant JACKSONS FOOD STORES, INC is the managing member of PACWEST ENERGY, LLC. Plaintiff is informed and believes that Defendant JACKSONS FOOD STORES, INC, is a Nevada corporation conducting business in the State of Arizona the managing member of PACWEST ENERGY, LLC

21.     Defendant EQUILON ENTERPRISES, LLC is a member of PACWEST ENERGY, LLC.

22.     Defendant ERNIE VASQUEZ is Debtor's former employee and assisted Debtor in engaging in several fraudulent transfers. Plaintiff is informed and believes and thereon alleges that Defendant ERNIE VASQUEZ was and is an individual residing in the State of Arizona.

23.     Defendant KENT DESPAIN operated as the CFO of Debtor's car wash entities and was instrumental in negotiating and structuring the terms of the fraudulent transfers that were intended to defraud creditors and Plaintiff.

24.     Defendant STEVEN JOHNSON is general counsel for VERDE INVESTMENTS, INC. and was highly involved in negotiating and structuring the fraudulent transfer of Defendant DANIEL HENDON'S interests in the car wash entities to preclude Plaintiff from recovery.

25.     Defendant OCS CAPITAL GROUP, through its agent GIL OLGUIN, acted to siphon millions of dollars belonging to DANIEL HENDON in order to preclude Plaintiff and other creditors from reaching such assets.

26.     Defendant CAROLYN J. JOHNSEN, Defendant HEATHER HENDON's attorney, and her firm DICKINSON WRIGHT, PLLC participated in the fraud by concealing evidence and/or producing fabricated documents in response to a subpoena with the intent of precluding Plaintiff from pursing its civil remedies against Defendants.

**C. Alter Ego Status**

27.     At all times mentioned herein, there was such a unity of interests between each of the individual defendants named herein, that the separate corporate entities should be disregarded, and the corporate entities of the defendants should be treated merely as the alter-ego of the respective individual defendants. Adherence to the fiction of separate existence of the corporate and entity defendants as an entity distinct from the respective individual defendants would permit an abuse of the corporate provision, would sanction fraud and injustice in that the individual defendants could evade personal liability for their wrongdoing alleged in this Adversary Complaint and could and would continue in the corporate name to perpetuate the fraudulent plan, scheme and device alleged in this Complaint. The individual defendants failed to respect the separate identity of the corporate and entity defendants among other ways, as follows:

a.     The corporate defendants were created, and are being continued, pursuant to a fraudulent plan, and devised, conceived and operated by the individual defendants to defraud the plaintiff and the general public;

b.     Corporate funds were withdrawn for personal use without treating such withdrawals as salaries or dividends;

c.     The individual defendants and some of them acting jointly and individually commingled their funds with those of the corporate defendants and vice versa; and

d.     The individual defendants and some of them acting jointly and individually at all times herein mentioned, completely controlled, dominated, managed and operated the corporate defendant.

**D. Doe Defendants**

28.     The true names and capacities, whether individual, corporate, associate or otherwise, of defendants named herein as DOES 1 through 100, inclusive, are currently unknown to Plaintiff, who therefore sues said defendants by such fictitious names.  Each of these fictitiously named defendants is in some manner responsible for the events and damages alleged herein and will seek leave of court to

First Amended Adversary Complaint

amend this Adversary Complaint to show the true names and capacities when the same have been ascertained. Each reference in this Adversary Complaint to "Defendant," "Defendants," or a specifically named defendant refers also to all defendants sued under fictitious names.

29.     Plaintiff is informed and believes and thereon alleges that at all times mentioned herein, each of the defendants, as well as DOES 1 through 100, was the principal, agent, representative, partner, joint venture, co-conspirator, alter ego or employee of each of the other defendants, as well as DOES 1 through 100, and in doing the things alleged herein was acting within the course and scope of such relationship with the full knowledge, consent, authority and/or ratification of each of the other defendants and DOES 1 through 100.

## II. JURISDICTION AND VENUE

30.     This is an adversary proceeding commenced in this Court, in which the Debtor petitioned for individual Chapter 11 relief, Case No. 2:11-BK-21164 and for relief for all entities under his control under Case No. 2:10-bk-02794. Debtor's individual chapter 11 petition is still pending before this Court thus, this Court has jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. 157 and 1334.

31.     Further, this Court also has jurisdiction over this adversary proceeding pursuant to 11 U.S.C 105(a) and 11 U. S.C. 7001(a) and (7).

32.     This is a core proceeding pursuant to 28 U.S.C. 157(b)(2)(A), (E), (H), (L).

33.     The venue of this Adversary Proceeding is proper in this Court pursuant to 28 U.S.C. §§ 1391 and 1409.

## III. BACKGROUND FACTS

### A. *Relevant History*

34.     On or around June of 2007, Debtor, personally and by and through an alter ego entity Rightpath Limited Development Group, LLC ("Rightpath"), fraudulently procured a loan of $7.7 million dollars from Plaintiff Diversified Funding Group, LLC for the acquisition and development of a commercial property.

35.     The funds for the loan came from ten participating investors, all of whom have been named as individual or entity plaintiffs in this complaint.

36.     Upon the maturation of the loan, Debtor defaulted on the note and engaged in a series of delay tactics to prevent Plaintiff from pursuing its legal recourses. Furthermore, shortly thereafter, Plaintiff learned that Debtor had engaged in a scheme to defraud Plaintiff and had used the loan proceeds for his personal use, in direct violation of the terms of the loan agreement.

37.     Plaintiff learned that Debtor had used the loan proceeds for his personal use and the use of his friends and relatives, including defendants NELL HENDON, KELLY CAROL, and HEATHER HENDON.

38.     In fact, Plaintiff learned that the entire commercial development was a ruse aimed at stealing Plaintiff's monies.

39.     Debtor transferred approximately $530,033 to his own personal bank account alleging that it was a loan to repay defendant NELL HENDON. However, no supporting documentation for the purported loan was produced.

40.     Debtor also transferred approximately $160,000 to defendant KELLY CARROLL, his former spouse.

41.     More than 3,000,000 was transferred into the car washes owned and operated by the Debtor DANIEL HENDON and HEATHER HENDON.

42.     In sum, DANIEL HENDON misappropriated the entirety of the loan received from Plaintiff and attempted to disguise the misappropriation by labeling the transfers as loans or equity contributions to the car wash entities.

43.     Based on the foregoing in or around February of 2010, Plaintiff filed suit against Debtor in the Arizona Superior Court, for the County of Maricopa (Arizona Superior Court, County of Maricopa, Case No. CV2010-004194) for breach of contract and fraud.

44.     On March 31, 2011, a judgment in excess of $17.7 million ("State Court Judgment") was awarded to Plaintiff and issued against Debtor.

45. On or around July 25, 2011, Debtor petitioned for individual Chapter 11 relief in the United States Bankruptcy Court, District of Arizona, Case No. 2:11-bk-21164 and for relief for all entities under his control, Case No. 2:10-bk-02794.

46. After filing an adversary proceeding, on or around August of 2014, the Court entered a memorandum of decision determining that the debt to Plaintiff was non-dischargeable (Docket 119; Adversary Case No. 2:11-ap-01972). A true and correct copy of the non-dischargeable judgment is attached hereto as Exhibit "A".

47. Plaintiff thus became the holder of a non-dischargeable judgment now in excess of $26M with interest to accrue at .11% per annum.

48. Ultimately, Debtor's business bankruptcy was closed on the basis that a reorganization plan was "substantially consummated." Debtor's individual bankruptcy case remains open.

49. Debtor is a criminal mastermind who is currently serving time in prison and has for years been involved in criminal conduct including, but not limited to, maintaining more than 100 scam business entities, fraudulently procuring loans, and engaging in identity fraud.

50. While Debtor is incarcerated, he continues to effectuate his fraudulent schemes to shield his assets from creditors and specifically from Plaintiff with the assistance of Defendants.

**B. *Defendants' Fraudulent Scheme to Fabricate a "Sale" of the Car Wash Business***

51. DANIEL HENDON, along with his daughter, defendant HEATHER HENDON, owned and operated a number of highly successful car washes in Arizona under the entity Danny's Family L.P. ("DFLP"). DANIEL HENDON held a 99% equity interest in DFLP and his daughter HEATHER HENDON held a 1% interest in DFLP.

52. Sometime on or around February of 2014, as a result of a federal raid which uncovered the employment of over 800 illegal immigrants and the fabrication of immigration documents, Debtor was required to divest his ownership interests in DFLP.

53. Defendants HEATHER HENDON, ERNIE GARCIA, VERDE AUTO SERVICES, LLC, VERDE INVESTMENTS, INC., STEVEN JOHNSON, ELLIS RUBENSTEIN, PRUDENTIAL MEDAL AND STEEL SUPPLY, LLC, E MANAGEMENT CONSULTING, AND ALAN MEDA collectively devised an elaborate scheme to fabricate the sale of DFLP, in order to improperly receive

1  such assets, income, and or receivables without paying a reasonably equivalent value and in an attempt

2  to hinder, delay, and defraud Plaintiff in its collection efforts.

3      54.    Further, in order to prevent Plaintiff and/or the bankruptcy court from reaching any of

4  Debtor's proceeds from the sale of the car wash business, Defendants and each of them participated as

5  buffers and decoys while personally gaining money, assets and/or other benefits from the fraud.

6      55.    Upon information and belief, in order to effectuate the scam, Defendants arranged to

7  have ERNIE GARCIA, by and through his entities VERDE AUTO SERVICES, LLC, and VERDE

8  INVESTMENTS, INC., (collectively referred to hereafter as "VERDE") act as a "straw man" to

9  conceal the sale profits from the courts and Plaintiff and for the benefit of all Defendants.

10      56.    Upon information and belief, Defendant STEVEN JOHNSON, as general counsel for

11  VERDE INVESTMENTS, INC. was also intricately involved in structuring a fraudulent transaction

12  and conspiring with the Debtor, HEATHER, HENDON, VERDE, ERNIE GARCIA, and ELLIS

13  RUBENSTEIN to ensure that any proceeds to be paid to the Debtor would be concealed and would

14  instead flow to third parties and ultimately to the Debtor.

15      57.    Upon information and belief, Defendants ERNIE GARCIA, VERDE, STEVEN

16  JOHNSON, HEATHER HENDON, and KENT DESPAIN, had several closed door meetings with

17  Debtor where they discussed several different versions of structuring a transaction so that Debtor could

18  divest his interests in the car wash but earn income, profits, and/or other benefits while attempting to

19  keep the car wash business "in the family." Defendant ERNIE GARCIA and/or VERDE, purchased

20  three (3) mortgage notes secured by the assets of the car wash business for a substantial discount from

21  the creditors in June of 2014. Exhibit "B".

22      58.    In turn, within a few weeks ERNIE GARCIA and/or VERDE entered into an agreement

23  to sell the mortgage loans to PACWEST ENERGY, LLC, a joint venture between EQUILON

24  ENTERPRISES, LLC, and JACKSONS FOOD STORES, INC., (collectively "PACWEST

25  ENTITIES") for a significant multi-million dollar profit. The sale was finalized in August of 2014,

26  when the PACWEST ENTITIES acquired all of the assets of the car wash entities through deeds in

27  lieu of foreclosure, which the Debtor signed off on in exchange for receiving profits from the sale of

28  the car wash entities by VERDE to the PACWEST ENTITIES.

First Amended Adversary Complaint

59.     Upon information and belief Defendants EQUILON ENTERPRISES, LLC, VERDE, ERNIE GARCIA, STEVEN JOHNSON, KENT DESPAIN, and HEATHER HENDON, were at all times aware that Plaintiff had been awarded a state court judgment in excess of $23 million dollars and had filed an adversary proceeding seeking the non-dischargeability of their judgment and therefore schemed with the Debtor to ensure that Plaintiff could not execute its judgment on any proceeds received by Debtor in connection with the sale of his interests in the car wash entities.

60.     Upon information and belief, representatives from EQUILON ENTERPRISES, LLC, including Robert W. Anderson were in direct contact with VERDE and STEVEN JOHNSON and participated in structuring the transaction to ensure that Debtor would receive funds and/or ongoing benefits in exchange for his signing the deeds in lieu of foreclosure documents and that such funds would be concealed from Debtor's creditors and particularly Plaintiff.

61.     The PACWEST ENTITIES even paid for the Debtor's administrative fees and to have the Debtor's chapter 11 business bankruptcy closed prior to finalizing the transaction.

62.     Immediately after selling the mortgage notes to the PACWEST ENTITIES for a purported 2.2 million dollar profit, Defendants ERNIE GARCIA and/or VERDE transferred approximately $1,600,000 of the proceeds from the sale of the mortgage notes back to the Hendon family and specifically through HEATHER HENDON, under the guise of two (2) loans.

63.     On or around December of 2015, ERNIE GARCIA, STEVEN JOHNSON and/or VERDE transferred approximately $600,000 of the proceeds from the sale of the mortgage notes back to the Hendon family and specifically through HEATHER HENDON. Exhibit "C".

64.     On or around April of 2015, Defendant ERNIE GARCIA, STEVEN JOHNSON and/or VERDE transferred an additional $1,000,000 from the proceeds of the sale to Defendant HEATHER HENDON. Exhibit "D".

65.     HEATHER HENDON, in turn, used such funds for the benefit of her father and has spent thousands of dollars on his behalf to pay his expenses, bankruptcy trustees' fees, and attorney's fees and for her own personal benefit to the detriment of Plaintiffs.

66.     On or around January of 2015 through December of 2015, Defendant ALAN MEDA, Debtor's attorney, through his law firm BURCH & CRACCHIOLO has accepted at least seven (7)

wire transfers of approximately $45,000 from HEATHER HENDON to pay for Debtor's legal fees,

knowing that said funds are the proceeds from the fraudulent sale of the car wash.

67.     Plaintiff is informed and believes and thereon alleges that Defendant ALAN MEDA

advised and counseled Debtor to effectuate this bankruptcy fraud.

68.     Defendants ERNIE GARCIA, VERDE, HEATHER HENDON, PACWEST ENERGY,

LLC, and ALAN MEDA were aware of Debtor's pending bankruptcy and of Plaintiff's non-

dischargeable judgment and therefore conspired to devise this scheme, outside the purview of the

bankruptcy court, in order to perpetrate a fraud on the court and specifically to preclude Plaintiffs from

reaching such assets.

69.     Approximately six (6) months prior to the sale of the mortgage notes to ERNIE

GARCIA and/or VERDE, HEATHER HENDON, at the request of Debtor, HEATHER HENDON met

with a representative of PACWEST ENERGY, LLC to orchestrate this elaborate scheme.

Representatives of PACWEST and/or JACKSON FOOD STORES, Or EQUILON (collectively

"PACWEST ENTITIES"), even conducted a walkthrough of the car wash facilities.

70.     After purchasing the three (3) mortgage notes from ERNIE GARCIA, PACWEST

ENTITIES subsequently acquired all the remaining assets of the company in lieu of foreclosure of the

three mortgage notes.

71.     Agents of PACWEST ENTITIES were aware of HEATHER HENDON's fraudulent

scheme and knowingly participated in such.

72.     Upon the consummation of the sale of the car wash business to PACWEST ENTITIES

Defendant HEATHER HENDON was immediately appointed as the vice president of operations and

as an agent for certain liquor licenses owned by JACKSON FOOD STORES, INC.

73.     Plaintiff is informed and believes and thereon alleges that Defendant HEATHER

HENDON continues to act as the alter ego of her father, Debtor DANIEL HENDON, and uses the

proceeds from the sale of the car wash business to pay for Debtor's expenses and/or continues to

operate the business and derive benefits on his behalf.

74.     Defendant HEATHER HENDON currently maintains approximately $510,000 from the

proceeds of the car wash business in a bank or investment account operated by LPL Financial. Upon

information and belief, these funds are being held directly or indirectly for the benefit of DANIEL HENDON.

### C. *Fraudulent Transfers through ELLIS RUBENSTEIN to Daniel Hendon*

75.     Defendant HEATHER HENDON has wired approximately $910,000 of the sale proceeds from the car wash to Defendants PRUDENTIAL METAL AND STEEL SUPPLY, LLC ("PRUDENTIAL") and E MANAGEMENT CONSULTING ("E MANAGEMENT") the alter egos of ELLIS RUBENSTEIN.

76.     Defendant ELLIS RUBENSTEIN is a friend of Debtor and/or a previous employee of Debtor's car wash business.

77.     Defendant HEATHER HENDON transferred the proceeds from the sale of the car wash to Defendant ELLIS RUBENSTEIN under the guise of an "investment" and/or "loan." Exhibit "E".

78.     Upon information and belief, ELLIS RUBENSTEIN, through PRUDENTIAL and E MANAGEMENT, was holding the proceeds from the sale of the car wash for the benefit of Debtor and has transferred large sums of funds to the Debtor directly in cash or made payments for the Debtor's payments or on Debtor's behalf.

### D. *Other Fraudulent Transfers*

79.     During Plaintiff's pending adversary proceeding against Debtor, Defendants engaged in a series of transactions to hide and/or obtain Debtor's assets to the detriment of Plaintiff.

80.     Defendant HEATHER HENDON was transferred more than 40% of the membership interests in Debtor's business entity Danny's Management Services, LLC in order to preclude Plaintiff from collecting on its judgment.

81.     Further on or around September of 2014, Debtor made several transfers to HEATHER HENDON which were used to pay for her lavish wedding. Upon information and belief said sums totaled approximately 1 million dollars.

82.     On or around September of 2014, Defendant HEATHER HENDON immediately began transferring her interests in said funds into her living trust, in order that the funds not be reached by Plaintiff.

First Amended Adversary Complaint

83. Upon information and belief, Defendant KELLY CARROLL participated in a scam to receive funds from the sale of Debtor's furniture.

84. In his Chapter 11 voluntary petition, Debtor fraudulently disclosed that his personal furniture was only worth approximately $40,000. However, Debtor sold the same furniture in escrow for the sum of $600,000 (the "First Bank Account"). Defendant KELLY CAROL received $200,000 in proceeds from the sale of this furniture. Plaintiff is informed and believes and thereon alleges that KELLY CAROL used the funds to purchase real property located at 6647 E. Morning Vista Lane, Scottsdale, Arizona.

85. Additional transfers to KELLY CAROL were consummated pursuant to a sham settlement agreement, designed for the purpose of hiding Debtor's assets from Plaintiff.

86. Furthermore, Plaintiff learned that Defendant KELLY CAROL personally received at least $160,000 from the 7.7 million dollar loan that Plaintiff gave to Debtor, which was only supposed to be used for the development of a commercial property.

87. Defendants NELL HENDON and VICTORIA HENDON, participated in the perpetration of the fraud by receiving assets, monies, and/or title to personal and real property from Debtor.

88. Furthermore, Plaintiff is informed and believes and thereon alleges that Defendant VICTORIA HENDON is holding Debtor's property and assets in various states under various corporate entities to shield their existence from Plaintiff.

89. Defendant ERNIE VASQUEZ, Debtor's car wash manager and "right-hand man," assisted Debtor in implementing his fraudulent scheme by concealing evidence of fraudulent transfers, incriminating communications, and committing perjury to protect Debtor.

90. Defendant ERNIE VASQUEZ received funds from Debtor, disguised as payments for past-rendered services.

91. In a ruse to allow Debtor to transfer large sums of money out of the country, Defendants OCS CAPITAL GROUP ("OSC CAPITAL" and GIL OLGUIN made false representations to Plaintiff and claimed that he had procured bond financing for Debtor which would be used to pay off the 7.7

First Amended Adversary Complaint

million dollar loan owed to Plaintiff. Specifically, GIL OLGUIN, an agent of OCS CAPITAL maintained that the bond financing was a "done deal."

92. Relying on GIL OLGUIN's representations, Plaintiff refrained from filing a lawsuit to enforce its promissory note and provided Debtor with additional time to pay off the note. Debtor used this additional time to wire large sums of money to accounts outside of the United States which were owned and/or operated by Defendant GIL OLGUIN.

93. On or around August of 2014, Debtor's girlfriend, Defendant MARIA BARKER received at least $100,000 from Debtor in order to preclude Plaintiff from recovering such funds. Defendant MARIA BARKER cashed four checks from Debtor which originated from the First Bank Account.

94. In an effort to hide other assets from Plaintiff, Defendant MARIA BARKER received thousands of dollars from Debtor and used it to prepay rent for a home located in Corona Del Mar, California. Debtor resides at this address. Further, to elude creditors and Plaintiff, MARIA BARKER goes by various names, one such name is Priscila De Leon.

95. Defendants KELLY CAROL and JAY SWART, a longtime friend of Debtor, engaged in a series of secret transactions disguised as loans whereby JAY SWART would appear to be a secured creditor in various assets belonging to Debtor. Defendants' actions were purposefully designed to keep Debtor's assets out of reach of creditors in his individual bankruptcy case and specifically Plaintiff.

96. Among other assets, Plaintiff is informed and believes and thereon alleges that Debtor transferred a Ferrari to Defendant JAY SWART without adequate compensation and in an effort to hide such asset. Upon information and belief, Defendant JAY SWART is holding the Ferrari for the benefit of DANIEL HENDON.

97. Defendant ALAN MEDA, Debtor's counsel, actively assisted Debtor in providing legal advice to further Debtor's fraudulent schemes and in violation of the rules of professional conduct.

98. All of the aforementioned transfers were made without adequate compensation and were done for the sole purpose of hiding such assets from the bankruptcy courts.

First Amended Adversary Complaint

***E. Fraudulent Concealment by Defendants Carolyn J. Johnsen and Dickinson Wright***

99.　On June 18, 2015, after filing a protective order to preclude Plaintiff from inquiring into the financial affairs of defendant HEATHER HENDON, defendant DICKINSON WRIGHT PLLC, through its agent CAROLYN J. JOHNSEN ("JOHNSEN") made numerous false representations in open court. Before the Honorable Judge Eileen W. Hollowell, JOHNSEN affirmatively represented that there were "no transfers" that would inure to the benefit of the Debtor and that all documents responsive to this inquiry were already produced.

100.　Upon information and belief JOHNSEN made these representations knowing they were false with the intent that Plaintiff would rely on these representations and would forego its attempts to find Debtor's hidden assets.

101.　JOHNSEN also represented to the Court that a substantial sum of money received from ERNIE GARCIA and/or VERDE had inured to HEATHER HENDON'S personal benefit and was used for personal income, while these funds were actually being used for the benefit of the Debtor and to pay for Debtor's personal expenses and his bankruptcy administrative expenses.

102.　Upon information and belief JOHNSEN also tampered with evidence and/or produced discovery responses that included two manufactured promissory notes which were purposely created to cover up the funds that channeled through defendant ELLIS RUBENSTEIN, who acted as a conduit. Upon information and belief, the documents were produced with the intent that Plaintiff would rely on these representations and would forego its attempts to find the Debtor's hidden assets.

**FIRST CAUSE OF ACTION**

**FRAUDULENT TRANSFERS – 11 U.S.C. §547- 550**

**(Against all Defendants and DOES 1-100)**

103.　Plaintiff refers to each of the foregoing paragraphs in their entirety, and hereby incorporates them by reference as though fully set forth herein.

104.　At all times relevant to this lawsuit, Plaintiff was a creditor and had a right of payment from DANIEL HENDON for at least $7.7 million dollars.

105.     Plaintiff is informed and believes and thereon alleges that at all times relevant to this lawsuit, DANIEL HENDON, working in conjunction with Defendants, systematically transferred his assets, income, and/or receivables to the entity and individual Defendants named herein for the specific purpose of avoiding collection of the debts owed to creditors and Plaintiff.

106.     Plaintiff is further informed and believes and thereon alleges that as a result of each transfer, DANIEL HENDON became insolvent.

107.     Plaintiff is informed and believes and thereon alleges that DANIEL HENDON divested himself of the income, assets, and/or property described herein without receiving adequate value by conveying it to friends and family in order to leave the Debtor without sufficient assets to repay creditors, including but not limited to making the following transfers:

.

     a.   Plaintiff is informed and believes and thereon alleges that DANIEL HENDON'S alleged divestiture from the car wash business was a sham and that DANIEL HENDON continues to have an ownership interest in the car wash business either directly or indirectly and continues to receive benefits including income and assets.

     b.   Plaintiff is informed and believes and thereon alleges that Defendants DANIEL HENDON and KELLY CAROL fraudulently misrepresented the value of their joint assets. Specifically, DANIEL HENDON alleged that the value of his jointly owned furniture was a nominal amount of $30,000. Subsequently, thereafter DANIEL HENDON sold the same furniture for $600,000 and transferred approximately $200,000 to Defendant KELLY CARROLL.

     c.   Plaintiff is informed and believes and thereon alleges that, prior to filing for bankruptcy, in 2010 Defendant DANIEL HENDON transferred substantial assets of at least 1.2 million to Defendant OCS and/or GIL OLGUIN to be held for the benefit of DANIEL HENDON. Defendants

purposefully concealed their acts to preclude Plaintiffs from learning of the transfers.

    d.  Plaintiff is informed and believes and thereon alleges that on or about 2010, DANIEL HENDON fraudulently transferred a Ferrari to his long-time friend Jay Swart for the nominal sum of $80,000, with the intent to hinder, defraud, and delay his creditors.

    e.  Plaintiff is informed and believes and thereon alleges that on or about 2010, DANIEL HENDON fraudulently transferred at least $198,000 to defendant KELLY CARROLL

108.    Plaintiff is informed and believes and thereon alleges that Defendants' actions were taken willingly, intentionally, and knowingly in violation of Plaintiffs' rights and with the actual intent to hinder, delay and defraud Plaintiff in its attempt to collect on its non-dischargeable judgment.

109.    Plaintiff is informed and believes and thereon alleges that Defendants assisted or participated in DANIEL HENDON'S scheme to form multiple business entities in order to hide assets and/or shift funds between different entities and/or persons, thereby avoiding mounting judgments and the debt owed to Plaintiff.

110.    Plaintiff is informed and believes and thereon alleges that Defendants intentional acts were designed to disrupt and frustrate Plaintiff's ability to receive performance of DANIEL HENDON'S obligations in his bankruptcy and specifically to preclude Plaintiff, a non-dischargeable judgment debtor, from collecting on its judgment.

111.    As a direct, legal, and proximate result of Defendants' fraudulent transfers, Plaintiff has suffered, and will continue to suffer, substantial general and special damages in an amount according to proof.

112.    The aforementioned conduct was willful, wanton, malicious and oppressive and was undertaken with the intent to defraud Plaintiff and justifies an award of exemplary and punitive damages.

113. As a direct and proximate result of the foregoing unlawful, unfair or fraudulent acts and practices by Defendants and DOES 1 through 100, inclusive, and each of them, Plaintiff is entitled to injunctive relief prohibiting such acts or practices from hereinafter continuing.

114. Plaintiff is moreover entitled to an order of restitution, requiring Defendants and DOES 1 through 100, inclusive, and each of them, to disgorge any and all funds they received or derived, directly or indirectly, as a result of such unlawful, unfair or fraudulent business acts and practices.

**SECOND CAUSE OF ACTION**

**VIOLATIONS OF A.R.S. §44-1004 (FRAUDULENT TRANSFER AS TO PRESENT CREDITOR)**

(**Against All Defendants and DOES 1-100**)

115. Plaintiff refers to each of the foregoing paragraphs in their entirety, and hereby incorporates them by reference as though fully set forth herein.

116. At all times relevant to this lawsuit, Plaintiff was a creditor and had a right of payment from Daniel Hendon for at least $23 million dollars.

117. Plaintiff is informed and believes and thereon alleges that at all times relevant to this lawsuit, DANIEL HENDON, working in conjunction with Defendants, systematically transferred his assets, income, and/or receivables to the entity and individual Defendants named herein with actual intent to hinder, delay or defraud the Plaintiff who was a non-dischargeable judgment creditor. Plaintiff is further informed and believes and thereon alleges that as a result of each transfer, DANIEL HENDON was insolvent, or became insolvent as a result of the transfers

118. Plaintiff is informed and believes and thereon alleges that DANIEL HENDON, without receiving a reasonably equivalent value in exchange for the transfer, engaged in a transaction for which DANIEL HENDON'S remaining assets were unreasonably small in relation to the transaction.

119. Plaintiff is informed and believes and thereon alleges that Defendants actions were taken willingly, intentionally, and knowingly in violation of Plaintiffs' rights and with the actual intent to hinder, delay and defraud Plaintiff in its attempt to collect on its non-dischargeable judgment.

120.     Plaintiff is informed and believes and thereon alleges that Daniel Hendon's alleged divestiture from the car wash business was a sham and that Daniel Hendon continues to have an ownership interest in the car wash business either directly or indirectly and continues to receive benefits including income and assets.

121.     Plaintiff is informed and believes and thereon alleges that Defendants assisted or participated in Daniel Hendon's scheme to form multiple business entities in order to hide assets and/or shift funds between different entities and/or persons, thereby avoiding the mounting judgment and the debt owed to Plaintiff.

122.     Plaintiff is informed and believes and thereon alleges that Defendants intentional acts were designed to disrupt and frustrate Plaintiff's ability to receive performance of DANIEL HENDON'S obligations to repay the non-dischargeable debt.

123.     Plaintiff is informed and believes and thereon alleges that all of the Defendants acting in concert, intended to hide assets from Plaintiff and therefore transferred approximately 1.6 million dollars between multiple defendants including HEATHER HENDON and ELLIS RUBENSTEIN which ultimately flowed to DANIEL HENDON.

124.     Plaintiff is therefore entitled to garnishment against the fraudulent transferee or the recipient of the fraudulent obligation, in accordance with the procedure prescribed by law in obtaining such remedy pursuant to A.R.S. 44-1007(A)(1);

125.     Plaintiff is entitled to an attachment or other provisional remedy against the asset transferred or other property of the transferee in accordance with the procedure prescribed by law in obtaining such remedy pursuant to A.R.S. 44-1007(A)(3);

126.     Plaintiff is entitled to an injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property pursuant to A.R.S. 44-1007(A)(4)(a);

127.     Plaintiff is entitled to appointment of a receiver to take charge of the asset transferred or of other property of the transferee pursuant to A.R.S. 44-1007(A)(4)(B).

128.     As a direct, legal, and proximate result of Defendants' fraudulent transfers, Plaintiff has suffered, and will continue to suffer, substantial general and special damages in an amount according to proof.

129. The aforementioned conduct was willful, wanton, malicious and oppressive and was undertaken with the intent to defraud Plaintiff and justifies an award of exemplary and punitive damages.

Plaintiff is moreover entitled to an order of restitution, requiring Defendants and DOES 1 through 100, inclusive, and each of them, to disgorge any and all funds they received or derived, directly or indirectly, as a result of such unlawful, unfair or fraudulent business acts and practices.

**THIRD CAUSE OF ACTION**

**<u>VIOLATIONS OF 18 USC 1343 (WIRE FRAUD)</u>**

(**Against All Defendants and DOES 1-100**)

130. Plaintiff refers to each of the foregoing paragraphs in their entirety, and hereby incorporates them by reference as though fully set forth herein.

131. Plaintiff is informed and believes and thereon alleges that Defendants devised and/or participated in a scheme to hinder, delay, and defraud Plaintiff of its ability to collect on the $26 million dollar non-dischargeable state court judgment against debtor DANIEL HENDON.

132. Plaintiff is informed and believes and thereon alleges that the above referenced scheme included a series of fraudulent wire transfers whereby debtor DANIEL HENDON's property was liquidated through deeds in lieu of foreclosure conveyances to the PACWEST ENTITIES for significantly less than a reasonably equivalent value. These wire transfers were made with the intent to preclude Plaintiff from recovering funds flowing to the debtor DANIEL HENDON.

133. Plaintiff is informed and believes and thereon alleges that Defendants transmitted or caused to be transmitted by means of wire in interstate and/or foreign commerce, writings, signs, and signals in furtherance of the above referenced scheme. Such transmissions included, but were not limited to, the direct and indirect wiring of at least 1.6 million dollars in funds from PACWEST to VERDE to HEATHER HENDON to ELLIS RUBENSTEIN and ultimately to DANIEL HENDON; the wiring of funds from the business and/or personal accounts of DANIEL HENDON to other Defendants who then wired the funds to a foreign destination; the wiring of funds from sham entities to HEATHER HENDON for the benefit of debtor DANIEL HENDON; and electronic communications

among the various Defendants and debtor DANIEL HENDON whereby Defendants assisted and/or counseled HENDON in the planning and execution of the scheme, and/or received instructions from DANIEL HENDON regarding the scheme.

134. As a direct, legal, and proximate result of the aforementioned conduct, Plaintiff has suffered, and will continue to suffer, substantial general and special damages in an amount according to proof.

135. The aforementioned conduct was a substantial factor in causing harm to Plaintiff and was conduct that was oppressive, fraudulent, and malicious, and subjected Plaintiff to cruel and unjust hardship in a willful and conscious disregard of their rights. As such, Plaintiff is entitled to an award of punitive damages at trial.

136. As a direct and proximate result of the foregoing unlawful, unfair or fraudulent acts and practices by Defendants and DOES 1 through 100, inclusive, and each of them, Plaintiff is entitled to injunctive relief prohibiting such acts or practices from hereinafter continuing.

137. Plaintiff is moreover entitled to an order of restitution, requiring Defendants and DOES 1 through 100, inclusive, and each of them, to disgorge any and all funds they received or derived, directly or indirectly, as a result of such unlawful, unfair or fraudulent business acts and practices.

**FOURTH CAUSE OF ACTION**

**<u>VIOLATIONS OF 18 USC 1956 (MONEY LAUNDERING)</u>**

**(Against All Defendants and DOES 1-100)**

138. Plaintiff refers to each of the foregoing paragraphs in their entirety, and hereby incorporates them by reference as though fully set forth herein.

139. Plaintiff is informed and believes and thereon alleges that Defendants devised and/or participated in a scheme to hinder, delay, and defraud Plaintiff of its ability to collect on the $26 million dollar non-dischargeable state court judgment against debtor DANIEL HENDON and/or to defraud the bankruptcy court and bankruptcy creditors.

140. Plaintiff is informed and believes and thereon alleges that the above referenced scheme was facilitated by Defendants ERNIE GARCIA, STEVEN JOHNSON, VERDE, PACWEST

First Amended Adversary Complaint

ENTITIES, HEATHER HENDON, ELLIS RUBENSTEIN and E MANAGEMENT CONSULTING, whereby funds from a financial transaction that involved the proceeds of a specified unlawful activity, namely bankruptcy fraud and fraud upon creditors, was transferred through the accounts of these named defendants and to debtor DANIEL HENDON, without such funds being disclosed to the bankruptcy court and with the intent that the funds be concealed from Plaintiff.

141. Defendants acted with the intent to carry out the bankruptcy fraud and/or knowing that the transaction was designed in whole or in part to conceal or disguise the nature, location, the source, the ownership, or the control of the proceeds of the unlawful activity.

142. Plaintiff is informed and believes and thereon alleges that all Defendants named herein knew that the receipt and transmission of the funds related to DANIEL HENDON's bankruptcy fraud and the fraudulent conveyance of his interests in the car wash entities were accomplished by bankruptcy and wire fraud and in fact represented the proceeds of such unlawful activities.

143. As a direct, legal, and proximate result of the aforementioned conduct, Plaintiff has suffered, and will continue to suffer, substantial general and special damages in an amount according to proof.

144. The aforementioned conduct was a substantial factor in causing harm to Plaintiff and was conduct that was oppressive, fraudulent, and malicious, and subjected Plaintiff to cruel and unjust hardship in a willful and conscious disregard of their rights. As such, Plaintiff is entitled to an award of punitive damages at trial.

145. As a direct and proximate result of the foregoing unlawful, unfair or fraudulent acts and practices by Defendants and DOES 1 through 100, inclusive, and each of them, Plaintiff is entitled to injunctive relief prohibiting such acts or practices from hereinafter continuing.

146. Plaintiff is moreover entitled to an order of restitution, requiring Defendants and DOES 1 through 100, inclusive, and each of them, to disgorge any and all funds they received or derived, directly or indirectly, as a result of such unlawful, unfair or fraudulent business acts and practices.

**FIFTH CAUSE OF ACTION**

**<u>VIOLATIONS OF 18 U.S.C. §1962(c) and (d) (CIVIL RICO)</u>**

**(Against All Defendants and DOES 1-100)**

147.    Plaintiff refers to each of the foregoing paragraphs in their entirety, and hereby incorporates them by reference as though fully set forth herein.

148.    Plaintiff is informed and believes and thereon alleges that Defendants DANIEL HENDON, ERNIE GARCIA, VERDE, HEATHER HENDON, STEVEN JOHNSON, ELLIS RUBENSTEIN, E MANAGEMENT CONSULTING, PACWEST ENERGY LLC, JACKSONS FOOD STORES, EQUILON ENTERPRISE, CAROLYN J. JOHNSEN, ALAN MEDA and KENT DEPAIN secretly, surreptitiously and illegally formed a scheme and Association-in-Fact Enterprise within the meaning of 18 U.S.C. §1962(c) and (d). The affairs of the Enterprise were participating in and conducted through a pattern of racketeering activity as herein alleged.

149.    Plaintiff is informed and believes and thereon alleges that Defendants' developed several individual formats of corporations and bank accounts and/or considered actions which were used to achieve the objective of the Enterprise. These schemes, all of which were engaged in for the purpose of financial gain and benefit of the Defendants, included:

150.    The operation of undercapitalized and shell corporations through which said Defendants could accomplish the objectives of the Enterprise at no risk to the assets of the individual shareholders, officers and directors of said shell corporations;

151.    The use and manipulation of multiple corporate entities, to accomplish the objectives of the Enterprise at no risk to the assets of the individual shareholders, officers and directors of said shell corporations, and without divulging accurate information to those entities with which they conduct business; and

152.    The establishment of several bank accounts for the purpose of laundering funds to DANIEL  HENDON;

153.    Plaintiff is informed and believes and thereon alleges that each of the Defendants are liable for the predicate acts of wire fraud in violation of 18 U.S.C. §1343 and money laundering in violation of 18 U.S.C. §1956 as discussed above, and at least the following additional predicate acts:

a. Bankruptcy fraud and/or conspiracy to commit bankruptcy fraud in violation of 18 U.S.C. §152 ;

b. Mail fraud in violation of 18 U.S.C. §1341;

c. The use of deception to undermine investigations of Defendants' activities;

d. Abuse of the legal system;

e. Obstruction of civil proceedings;

f. Tampering with evidence and/or witnesses;

g. Structuring pursuant to 31 U.S.C. 5324(d)(1)

154. Each of the violations by the Defendants herein constitute an incident of "racketeering activity" as defined by 18 U.S.C. §1961 and §1962.

155. During the ten (10) calendar years preceding April 2015, all Defendants did cooperate jointly and severally in the commission of two (2) or more of the RICO predicate acts. Defendants DANIEL HENDON, NELL HENDON, KELLY CARROLL, and HEATHER HENDON'S first predicate acts occurred in June of 2007, upon DANIEL HENDON'S procurement of a 7.7 million loan from Plaintiff. DANIEL HENDON fraudulently misrepresented his assets and liquidity and misrepresented the purpose of the loan as an acquisition and development of commercial property. Thereafter, DANIEL HENDON with his cohorts NELL HENDON, KELLY CARROLL and HEATHER HENDON, through wire fraud, mail fraud, and money laundering, siphoned more than 3 million dollars of Plaintiffs funds to the car wash entities and to Defendants NELL HENDON, KELLY CARROLL and HEATHER HENDON, who owned an equity ownership in the car wash entities.

156. The subsequent predicate acts occurred upon DANIEL HENDON'S filing of his petition for bankruptcy, at which time he misrepresented the assets he owned and the value of other assets he owned jointly with Defendant KELLY CARROLL. Thereafter, Defendants DANIEL HENDON, NELL HENDON, KELLY CARROLL, and HEATHER HENDON began to engage in a series of schemes to defraud the bankruptcy court and bankruptcy creditors, including Plaintiff. Defendants HEATHER HENDON, NELL HENDON, and KELLY CARROLL, schemed to assist

First Amended Adversary Complaint

DANIEL HENDON to conceal his asses and hide such assets in their own name which is evidenced by multiple wire transfers that occurred in 2010.

157.    Thereafter,  the third, fourth and fifth predicate acts perpetrated by Defendants DANIEL HENDON, NELL HENDON and HEATHER HENDON occurred in 2014, upon the fraudulent scheme for DANIEL HENDON to purportedly divest his interest in the car wash entities in exchange for a considerable sum of money but to conceal his profits from Plaintiff, and to launder money from this unlawful activity through wire transfers to multiple defendants including VERDE, PACWEST ENTITIES, ERNIE GARCIA, HEATHER HENDON, NELL HENDON and ELLIS RUBENSTEIN.

158.    VERDE, PACWEST ENTITIES, ERNIE GARCIA, HEATHER HENDON, ELLIS RUBENSTEIN AND DANIEL HENDON engaged in at least two separate transactions of wire fraud and/or money laundering by wiring $1.6m in at least two (2) separate wire transaction, in December of 2014 and April of 2015.

159.    Defendants ALAN MEDA, BURCH & CRACCHIOLO, CAROLYN J. JOHNSEN and DICKINSON WRIGHT PLLC engaged in at least two predicate acts by among other things engaging in the following conduct: instructing DANIEL HENDON and HEATHER HENDON to create a sham bank account in HEATHER HENDON'S name so that funds could be deposited for the benefit of DANIEL HENDON without it being known to Plaintiff or the bankruptcy court; making false representations to the bankruptcy court and to Plaintiff regarding the assets held under the possession, custody or control of DANIEL HENDON and HEATHER HENDON; submitting false and fabricated evidence to Plaintiff in response to a subpoena for request for documents; obstructing Plaintiff's ability to pursue its civil remedies by producing false promissory notes; and knowingly receiving thousands of dollars in funds from DANIEL HENDON'S hidden assets, knowing that such assets were hidden from Plaintiff and other creditors.

160.    These sequential acts created a pattern of racketeering and continuity based on the numerous predicate acts, the extended duration of unlawful activity, and the number of alleged schemes.

161. The multiple acts of racketeering activity by the Defendants may be interrelated but part of a common and continuous pattern of fraudulent schemes perpetrated for the same or similar purpose, thus constituting a "pattern of racketeering activity" as defined by 18 U.S.C. 1961.

162. The primary objective of the racketeering enterprise has been to inflict severe and sustained economic hardship upon Plaintiff, with the intent of impairing, obstructing, and preventing creditors, and particularly Plaintiff from collecting on its 26 M, non-dischargeable judgment and Plaintiff has been directly injured by the wrongful acts of Defendants by reason of their violations of 18 U.S.C. §1962.

163. As such, Plaintiff is entitled to have their actual damages trebled and have a constructive trust imposed upon all proceeds resulting from Defendants' fraudulent and unlawful conduct; recover costs of investigation of the fraudulent scheme; and attorneys' fees incurred hereinabove; and a forfeiture by the Defendants of all their wrongfully acquired assets and income.

164. As a direct, legal, and proximate result of the aforementioned conduct, Plaintiff has suffered, and will continue to suffer, substantial general and special damages in an amount according to proof.

165. The aforementioned conduct was a substantial factor in causing harm to Plaintiff and was conduct that was oppressive, fraudulent, and malicious, and subjected Plaintiff to cruel and unjust hardship in a willful and conscious disregard of their rights. As such, Plaintiff is entitled to an award of punitive damages at trial.

166. As a direct and proximate result of the foregoing unlawful, unfair or fraudulent acts and practices by Defendants and DOES 1 through 100, inclusive, and each of them, Plaintiff is entitled to injunctive relief prohibiting such acts or practices from hereinafter continuing.

167. Plaintiff is moreover entitled to an order of restitution, requiring Defendants and DOES 1 through 100, inclusive, and each of them, to disgorge any and all funds they received or derived, directly or indirectly, as a result of such unlawful, unfair or fraudulent business acts and practices.

# SIXTH CAUSE OF ACTION

## NEGLIGENCE

### (Against All Defendants and DOES 1-100)

168.    Plaintiff refers to each of the foregoing paragraphs in their entirety, and hereby incorporates them by reference as though fully set forth herein.

169.    At all relevant times herein, Defendant DANIEL HENDON owed Plaintiff, as a judgment creditor, and all creditors of both his individual and business bankruptcies, the duty to truthfully disclose the assets and/or income of the debtors; to refrain from causing unreasonable risk of harm to Plaintiff and other creditors; to divest his interest in the car wash business in a manner that would increase the value of the bankruptcy estate for the benefit of his creditors whom he had defrauded; and to ensure that he nor anyone within his organization or enterprise, defrauded Plaintiff by hiding assets and/or income.

170.    DANIEL HENDON breached his duties in at least the following ways: by making false statements to the bankruptcy court regarding the value of his assets and income in both his individual and business bankruptcy cases; by fraudulently scheming to hide his assets from Plaintiff and other creditors; and by fraudulently divesting his interest in the car wash entities for less than reasonably equivalent value.

171.    At all relevant times herein, Defendant HEATHER HENDON, as an equity owner of the car wash entities, owed Plaintiff as a judgment creditor, and all creditors of the car wash entities the duty to truthfully disclose the assets and/or income of the car wash entities; to refrain from causing unreasonable risk of harm to Plaintiff and other creditors; and to ensure that the car wash entities did not defraud the bankruptcy court and creditors.

172.    HEATHER HENDON breached her duties in at least the following ways: by failing to prevent false statements to be made to the bankruptcy court regarding the value of the assets of the car wash entities; by fraudulently scheming with DANIEL HENDON to hide his assets from Plaintiff and other creditors; and by engaging in fraud to have DANIEL HENDON divest his interest in the car wash entities for less than reasonably equivalent value, while receiving at least 1.6 million dollars in funds which she concealed for DANIEL HENDON to the detriment of Plaintiff and other creditors.

173. At all relevant times herein, Defendants ERNIE GARCIA, STEVEN JOHNSON and VERDE owed Plaintiff as a judgment creditor, and all creditors of both Daniel Hendon's individual and business bankruptcies, the duty to provide truthful information to the bankruptcy court upon its purchase of the mortgage notes and when disclosing information to the bankruptcy court; to truthfully disclose all material facts to the bankruptcy court, including the fact that DANIEL HENDON was to receive a substantial sum of money from the sale of the mortgage notes; and particularly owed Plaintiff, a judgment creditor with rights to attach to the assets of the car wash entities and DANIEL HENDON, the duty to not take actions which would detrimentally affect Plaintiff's ability to execute upon its judgment.

174. ERNIE GARCIA, STEVEN JOHNSON and VERDE breached their duties in at least the following ways: by failing to prevent false statements to be made to the bankruptcy court regarding the value of the assets of the car wash entities; by failing to truthfully disclose to the bankruptcy court and creditors of DANIEL HENDON that DANIEL HENDON was to receive 1.6 million dollars from the proceeds of the sale of the mortgage notes; by failing to by fraudulently scheming with DANIEL HENDON to hide the 1.6 million of profits realized by him from Plaintiff and other creditors by wiring such funds to HEATHER HENDON as a conduit; and by engaging in fraud to have DANIEL HENDON divest his interest in the car wash entities for less than reasonably equivalent value.

175. At all relevant times herein, Defendants PACWEST ENTITIES, owed Plaintiff as a judgment creditor, and all creditors of both Daniel Hendon's individual and business bankruptcies, the duty to provide truthful information to the bankruptcy court upon its purchase of the mortgage notes from VERDE; to truthfully disclose all material facts to the bankruptcy court, including the fact that DANIEL HENDON was to receive a substantial sum of money from the sale of the mortgage notes; and particularly owed Plaintiff, a judgment creditor with rights to attach to the assets of the car wash entities and DANIEL HENDON, the duty to not take actions which would detrimentally affect Plaintiff's ability to execute upon its non-dischargeable judgment.

176. PACWEST ENTITIES breached their duties in at least the following ways: by failing to truthfully disclose to the bankruptcy court and creditors of DANIEL HENDON that DANIEL

HENDON was to receive 1.6 million dollars from the proceeds of the sale of the mortgage notes in exchange for signing deeds-in-lieu of foreclosure; by engaging in fraud to have DANIEL HENDON divest his interest in the car wash entities for less than reasonably equivalent value; by taking fraudulent measures to prevent a non-dischargeable judgment creditor from reaching the assets of the car wash entities.

177. At all relevant times herein, Defendants ALAN MEDA, BURCH AND CRACCHIOLO, CAROLYN J. JOHNSEN, and DICKINSON WRIGHT, PLLC, as officers of the court, owed Plaintiff and the bankruptcy court, the duty to provide truthful information to the bankruptcy court when representing their respective clients; to refrain from obstructing Plaintiff's ability to properly pursue its civil remedies; to refrain from making false statements or producing false evidence to Plaintiff and the courts; to avoid conduct that undermines the integrity of the adjudicative process; to take reasonable remedial measures if the lawyer comes to know that the client has offered evidence that is false.

178. Defendants ALAN MEDA, BURCH AND CRACCHIOLO, CAROLYN J. JOHNSEN, and DICKINSON WRIGHT, PLLC, breached their duties by, among other things, by engaging in the following conduct: instructing DANIEL HENDON and HEATHER HENDON to create a sham bank account in HEATHER HENDON'S name so that funds could be deposited for the benefit of DANIEL HENDON without it being known to Plaintiff or the bankruptcy court; making false representations to the bankruptcy court and to Plaintiff regarding the assets held under the possession, custody or control of DANIEL HENDON and HEATHER HENDON; submitting false and fabricated evidence to Plaintiff in response to a subpoena for request for documents; obstructing Plaintiff's ability to pursue its civil remedies by producing false promissory notes; and knowingly receiving thousands of dollars in funds from DANIEL HENDON'S hidden assets, knowing that such assets were hidden from Plaintiff and other creditors.

179. As a direct, legal and proximate result of Defendant DANIEL HENDON, HEATHER HENDON, ERNIE GARCIA, VERDE, STEVEN JOHNSON, PACWEST ENTITIES, ALAN MEDA, BURCH AND CRACCHIOLO, CAROLYN J. JOHNSEN, and DICKINSON WRIGHT, PLLC'S

negligence, Plaintiff has suffered, and will continue to suffer, substantial general and special damages in an amount according to proof.

180.    The aforementioned conduct was a substantial factor in causing harm to Plaintiff and was conduct that was oppressive, fraudulent, and malicious, and subjected Plaintiff to cruel and unjust hardship in a willful and conscious disregard of their rights. As such, Plaintiff is entitled to an award of punitive damages at trial.

181.    As a direct and proximate result of the foregoing unlawful, unfair or fraudulent acts and practices by Defendants and DOES 1 through 100, inclusive, and each of them, Plaintiff is entitled to injunctive relief prohibiting such acts or practices from hereinafter continuing.

182.    Plaintiff is moreover entitled to an order of restitution, requiring Defendants and DOES 1 through 100, inclusive, and each of them, to disgorge any and all funds they received or derived, directly or indirectly, as a result of such unlawful, unfair or fraudulent business acts and practices

## SEVENTH CAUSE OF ACTION
## <u>NEGLIGENCE PER SE</u>
### (Against ALL Defendants and DOES 1-100)

183.    Plaintiff refers to each of the foregoing paragraphs in their entirety, and hereby incorporates them by reference as though fully set forth herein.

184.    Federal statute 11 U.S.C. § 548-550 prohibit a debtor from transferring a property interest with actual intent to hinder, delay, or defraud any entity to which the debtor is indebted.  The above-referenced statutes were designed to prevent a debtor from diminishing, to the detriment of some or all creditors, funds that are generally available for distribution to creditors. <u>In re Chase & Sanborn Corp.</u>, 813 F.2d 1181 (1987).

185.    Disregarding the statutory scheme, DANIEL HENDON, working in conjunction with Defendants, systematically transferred his assets, income, and/or receivables to the entity and individual Defendants named herein for the specific purpose of avoiding collection of the debts owed to creditors and Plaintiff.

First Amended Adversary Complaint

186. Plaintiff is informed and believes and thereon alleges that DANIEL HENDON'S alleged divestiture from the car wash business was a sham and that DANIEL HENDON continues to have an ownership interest in the car wash business either directly or indirectly and continues to receive benefits including income and assets.

187. As a direct and proximate result of Defendants' breach of its statutory duty under 11 U.S.C. § 548-550, DANIEL HENDON was able to receive and divert for himself proceeds originating from the fraudulent transfer to the detriment of Plaintiff creditor.

188. Thus, as a direct and proximate result of Defendant's violation Plaintiff has suffered, and will continue to suffer, substantial general and special damages in an amount according to proof.

189. The aforementioned conduct was a substantial factor in causing harm to Plaintiff and was conduct that was oppressive, fraudulent, and malicious, and subjected Plaintiff to cruel and unjust hardship in a willful and conscious disregard of their rights. As such, Plaintiff is entitled to an award of punitive damages at trial.

190. As a direct and proximate result of the foregoing unlawful, unfair or fraudulent acts and practices by Defendants and DOES 1 through 100, inclusive, and each of them, Plaintiff is entitled to injunctive relief prohibiting such acts or practices from hereinafter continuing.

191. Plaintiff is moreover entitled to an order of restitution, requiring Defendants and DOES 1 through 100, inclusive, and each of them, to disgorge any and all funds they received or derived, directly or indirectly, as a result of such unlawful, unfair or fraudulent business acts and practices.

## EIGHT CAUSE OF ACTION

## CONSTRUCTIVE TRUST

### (Against All Defendants and DOES 1-100)

192. Plaintiff refers to each of the foregoing paragraphs in their entirety, and hereby incorporates them by reference as though fully set forth herein.

193. This is an action seeking equitable redress for Defendants' illegal and wrongful course of conduct in taking the income, profits, proceeds, assets and monies from sale of properties and other transfers.

194. Plaintiff is informed and believes, and thereon alleges, that Defendants have gained an unconscionable advantage in the retention of wrongfully withheld monies and assets belonging to Plaintiff.

195. Plaintiff is further informed and believes, and thereon alleges, that Defendants wrongfully transferred, acquired and/or hold property and monies that were deprived from the bankruptcy estate, and Plaintiff as a judgment creditor, including, but not limited to the fraudulent sale of the car wash business and all proceeds generated therefrom.

196. As a direct, legal, and proximate result of the aforementioned conduct, Plaintiff has suffered, and will continue to suffer, substantial general and special damages in an amount according to proof.

197. The aforementioned conduct was oppressive, fraudulent, and malicious, and subjected Plaintiff to cruel and unjust hardship in a willful and conscious disregard of their rights. As such, Plaintiff is entitled to an award of punitive damages at trial.

198. Plaintiff is further informed and believes, and thereon alleges, that if Defendants and DOES 1 through 100 inclusive, and each of them, are permitted to further engage in such unlawful, unfair or fraudulent business acts and practices, they will even more grievously injure Plaintiff.

199. As a direct and proximate result of the foregoing unlawful, unfair or fraudulent acts and practices by Defendants and DOES 1 through 100, inclusive, and each of them, Plaintiff is entitled to injunctive relief prohibiting such acts or practices from hereinafter continuing.

200. Plaintiff is moreover entitled to an order of restitution, requiring Defendants and DOES 1 through 100, inclusive, and each of them, to disgorge any and all funds they received or derived, directly or indirectly, as a result of such unlawful, unfair or fraudulent business acts and practices.

201. Based upon the facts alleged, Defendants are holding properties and proceeds, or any portion thereof, in constructive trust for the benefit of Plaintiff.

## **REQUEST FOR RELIEF**

Wherefore, plaintiff prays as follows:

For treble damages pursuant to 18 U.S.C. §1964;

1    For general, special and consequential damages according to proof;

2    For an award of exemplary and punitive damages;

3    That this Court enter an order for injunctive relief prohibiting such acts or practices from

4    hereinafter continuing.

5    That this Court enter into an order of restitution, requiring Defendants and DOES 1 through

6    100, inclusive, and each of them, to disgorge any and all funds that they received or derived as a result

7    of the fraudulent transfers.

8    That all Defendants and all their directors, officers, employees, agents, servants and all other

9    persons in active concert or in participation with them, be enjoined temporarily during the pendency of

10   this action, and permanently thereafter, from committing any more predicate acts in furtherance of the

11   RICO enterprise.

12   That all Defendants be required to account for all gains, profits, and advantages derived from

13   their several acts of racketeering activity and from all other violations of applicable state and federal

14   laws.

15   That this Court award Plaintiff such other relief that the Court deems just and proper including

16   but not limited to the recovery of personal and real property fraudulently transferred to other third

17   parties in an attempt to hinder, delay or defraud Plaintiff.

18

19

20

21   Dated:  August 2, 2016                    **WILSON KEADJIAN BROWNDORF, LLP**

22

23

24   _____

25   Marc Lazo
     Attorney for Plaintiff

26

27

28