**Lewis Roca Rothgerber Christie LLP**
201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595
Telephone: 602.262.5311

**Susan M. Freeman** (State Bar No. 004199 )
  Direct Telephone: 602.262.5756
  Direct Facsimile:  602-734-3824
  Email:  sfreeman@lrrc.com

**Robert H. McKirgan** (State Bar No. 011636)
  Direct Telephone: 602.262.5396
  Direct Facsimile:  602.734-3874
  Email:  rmckirgan@lrrc.com

**Justin J. Henderson** (State Bar No. 026930)
  Direct Telephone: 602.262.5738
  Direct Facsimile: 602.734.3937
  E-mail: jhenderson@lrrc.com

*Defendants Ernie Garcia, Steven Johnson, Verde*
*Investments, Inc., and Verde Auto Services, LLC*

## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | Chapter 11 Proceedings |
| DANIEL LEWIS HENDON | Case No. 2:11-bk-21164-SHG |
| Debtor. | |
| Diversified Funding Group, LLC; Reynaldo Gutierrez; The Faradjollah Fred Djahandideh Trust; Fred Djahandideh; HCM Retirement Trust, Drew Sherline; Rightpath Investors, LLC; Sirotka Holdings, LLC; iDea Services, LLC; Van Buren Development, LLC; Southwest Development Partners, LLC; and Fortuna Asset Management, LLC, Judgment Creditors | Adversary Case No. 2:16-ap-00127 |
| Plaintiffs, | |
| vs. | **MOTION TO DISMISS FIRST AMENDED COMPLAINT WITH PREJUDICE BY DEFENDANTS ERNIE GARCIA, STEVEN JOHNSON, VERDE AUTO SERVICES, LLC AND VERDE INVESTMENTS, INC.** |
| Daniel Hendon, Debtor; Nell Hendon; Heather Hendon; Chris Alvarez; Victoria Hendon; Kelly Carroll; Alan Meda; Ernie Garcia; Burch & Cracchiolo; Verde Auto Services, LLC; Verde Investments, Inc.; Ellis Rubenstein; Prudential Metal and Steel Supply, LLC; E Management Consulting, LLC; Ernie Vasquez; Gil Olguin; Jay Swart; Maria Barker; Pacwest Energy, LLC; Jacksons Food Stores, Inc.; Equilon Enterprises, LLC; and DOES 1 through 100, inclusive, | |
| Defendants | |

Defendants Ernie Garcia, Steven Johnson, Verde Auto Services, LLC, and Verde Investments, Inc. (collectively "Verde") request that the Court dismiss the First Amended Complaint ("FAC") against them under Federal Rule of Civil Procedure 12(b)(6), applicable under Bankruptcy Rule 7012(b)(6), because (1) Plaintiffs lack standing to assert avoidance claims or RICO claims; (2) there is no cause of action under §§ 544 or 548 for avoidance of postpetition transfers; (3) Verde did not transfer or receive any of the Debtor's property or property of the estate; (4) Plaintiffs' avoidance and RICO claims are barred by the doctrine of *in pari delicto*; (5) Plaintiffs have not alleged a valid RICO injury because they have not alleged even an expectancy interest in the property that Verde allegedly transferred; (6) Plaintiffs have not alleged proximate cause because they have not shown that the alleged transfers of non-estate property had any effect on Plaintiffs (or that the property had any value); (7) the alleged acts by Verde occurred within months of each other and are not "continuous" enough to establish a "pattern of racketeering activity"; (8) the "hub and spoke" association-in-fact alleged by Plaintiffs has been routinely rejected as a basis for RICO liability; (9) Plaintiffs have failed to allege sufficient facts to support any of the "predicate offenses" necessary to impose RICO liability; (10) Plaintiff's negligence claim fails because Verde did not owe Plaintiffs a duty to disclose anything about its purchase or sale of the mortgage debt or the loans to Heather Hendon and Plaintiffs cannot establish that anything Verde did caused harm to them; (11) Plaintiffs have not alleged that Verde violated a statute that is intended to promote safety and its negligence *per se* claim therefore fails; and (12) constructive trust is not a cause of action.

The Complaint is also subject to dismissal because Plaintiffs have failed to allege any specific facts to support their conclusory allegations that Verde Auto Services, LLC and Verde Investments, Inc. should be disregarded as separate legal entities, and treated as the alter egos of Ernie Garcia. And Plaintiffs' request for punitive damages fails not only for lack of specific facts, but also because punitive damages are not available under RICO.

At least some of the grounds for dismissal of the avoidance and RICO claims are not curable by amendment. The dismissal should be ordered with prejudice.[1]

---

[1] This court does not have authority to enter a final judgment against Verde because Plaintiffs' fraudulent transfer claims are constitutional *noncore* claims under *Stern v. Marshall*, 564 U.S. 462

Lewis Roca
ROTHGERBER CHRISTIE
201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595

2010815391_1

Lewis Roca
ROTHGERBER CHRISTIE

201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595

## BACKGROUND

### A. The Hendon and Car Wash Entities' Bankruptcy Cases.

On February 3, 2010, Danny's Happy Valley, LLC, and three related entities filed Chapter 11 bankruptcy petitions. On March 3 and 4, 2010, fifteen related entities filed Chapter 11 petitions (collectively, the "Car Wash Entities"). [2] The Car Wash Entities were engaged in an integrated business that owned and operated car wash facilities in the Greater Phoenix area and were managed and owned in substantial part by Daniel Hendon ("Daniel").

Plaintiff Diversified Funding Group ("DFG") obtained a judgment against Daniel based upon a loan for the acquisition and development of commercial property, not car wash operations, on March 31, 2011. (FAC ¶¶ 34, 44). [3] On July 25, 2011, Daniel filed a Chapter 11 petition, commencing case number 2:11-bk-21164-SHG (the "Hendon Case"). The bankruptcy cases were jointly administered under case number 2:10-bk-02794 (the "Main Case"). The bankruptcy court ruled in that Daniel's debt to DFG is non-dischargeable in August 2014. (FAC ¶ 46).

### B. The Joint Plan

On December 12, 2011, the Car Wash Entities and Daniel filed their Amended and Restated Joint Plan of Reorganization ("Plan"). [DE 1516 in the Main Case.] The Plan was confirmed on December 16, 2011 and became effective on December 31, 2011. [DE 1536 in the Main Case.] All of

---

(2011), and Plaintiffs' other claims are statutorily non-core under 28 U.S.C. § 157(b)(2). *See In re Bellingham Ins. Agency, Inc.*, 702 F.3d 553, 565 (9th Cir. 2012) (bankruptcy court may not enter final judgment on a fraudulent transfer claim under § 548); *Barnett v. Stern*, 909 F.2d 973 (7th Cir. 1990) (RICO claim is noncore, related proceeding); *In re Olde Prairie Block Owner, LLC*, 457 B.R. 692, 699 (Bankr. N.D. Ill. 2011) (negligence claims were non-core). If the Court denies this motion to dismiss, Verde reserves its right to district court review of any judgment entered against it by this Court. *See Bellingham*, 702 F.3d at 566 ("[B]ankruptcy courts have statutory authority to hear and enter proposed findings of fact and conclusions of law in a fraudulent conveyance proceeding asserted by a bankruptcy trustee against a noncreditor, subject to de novo review by a federal district court.").

[2] Verde requests that the Court take judicial notice of filings in this Court without converting this motion to dismiss to a motion for summary judgment. *See Reyn's Pasta Bella LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (courts "may take judicial notice of court filings and other matters of public record"); *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1016 n.9 (9th Cir. 2012) ("[A] court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment.").

[3] Verde is assuming the truth of the facts in the Complaint only for purposes of this motion to dismiss.

201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595

1   the Car Wash Entities' cases have been closed.  [DE 2068 in the Main Case.]  Daniel's case remains

2   open, with ongoing monthly payments.  Two pending motions seek conversion to Chapter 7.  [DE 157

3   and 166 in the Hendon Case.]

4          The Plan provided for a Plan Agent of the Car Wash Entities and a Liquidating Trust for Daniel

5   to administer and implement the Plan.  The Liquidating Trust Agreement and Declaration of Trust were

6   approved by the Court on December 11, 2012.  [DE 1826 in the Main Case.]  Thomas Allen currently

7   serves as the Liquidating Trustee.

8          The Plan defines "Causes of Action" as "with regard to the Hendon and Hendon Trust, any right,

9   claim, tort, lien, liability, obligation, action, cause of action, avoiding power, proceeding, debt, contract,

10  judgment, offset, damage and demand whatsoever in law or equity, whether known or unknown,

11  contingent or otherwise, that the Debtor and its Bankruptcy Estate may have against any Person . . . ."

12  [DE 1516-2 at 2-3.]

13         An "Avoidance Action" is defined as "a claim or cause of action of an Estate of a Proponent to

14  avoid transfers made by the Proponent to the extent such claim arises under §§ 544-551 of the

15  Bankruptcy Code."  [*Id.* at 1.]

16         The Plan provides that all Avoidance Actions and all Causes of Action vest in the Liquidating

17  Trust.  [DE 1516 in the Main Case at 42 ("Avoidance Actions of the Hendon or Hendon Trust estates

18  shall be deemed transferred to the Individual Plan Agent."[4]); 69-70 ("The Individual Plan Agent shall

19  have the following rights, powers and duties: . . . . To prosecute Avoidance Actions and other Causes of

20  Action transferred to the Individual Plan Agent . . . ."); 82 ("On the Effective Date, the Liquidating

21  Trustee shall succeed to all Avoidance Actions of the Hendon and Hendon Trust Estates, other than

22  those Avoidance Actions that are Excluded Assets,[5] and shall have authority to pursue such Avoidance

23  Actions."); 84 ("[A]ll Avoidance Actions and Causes of Action held by, through or on behalf of Hendon

24  and/or the Hendon Trust and/or their Estates are hereby preserved in full.").

25         The Avoidance Actions and Causes of Action are listed as a source of payment of creditors under

26

27  _____
    [4] The Individual Plan Agent is the Liquidating Trustee.

    [5] The Excluded Assets are not at issue here.

4

2010815391_1

Lewis Roca
ROTHGERBER CHRISTIE

201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595

the "Funding Provisions" of the Plan that sets forth the "Plan funding obligations of the Proponents." [*Id.* at 40, 42.] The Plan also provides for Daniel to pay $10,000 per month to the Liquidating Trustee to repay creditors.

## C. The Immigration Raid.

In August, 2013, the Department of Homeland Security executed search warrants at a number of the Car Wash Entities' operations. [DE 1989 in the Main Case.] At a hearing on January 9, 2014, the Court expressed concern that the ensuing criminal indictments were a "huge problem," that the corporate cases were "troubling," and that "good news is needed or the parties need to know that the criminal indictment is going to kill the company." [DE 2002 in the Main Case.] The Complaint alleges that instead, in February 2014, as a result of another federal raid uncovering the employment of over 800 illegal immigrants, Daniel was required to divest his ownership interest in the Car Wash Entities. (FAC ¶ 52).

## D. Verde Buys and Sells Secured Debt of the Car Wash Entities, and Loans Part of the Proceeds

Verde purchased three mortgage notes secured by assets belonging to the Danny's Car Wash business ("Danny's Car Wash") from Danny's Car Wash's secured lenders. (FAC ¶ 57). The purchase of the notes was disclosed to this Court and was no secret to anyone. [DE 2015 in the Main Case (minute entry discussing Verde's possible investment in assets of Danny's Car Wash); DE 2018 in the Main Case (minute entry discussing Verde's purchase of "secured positions"); DE 2032 in the Main Case (minute entry stating that Verde had purchase all of the secured debt, all of which was in default).] Garcia and/or Verde subsequently sold the notes to PacWest Energy, LLC. (FAC ¶ 58). PacWest acquired the remaining assets of the Danny's Car Wash companies via a deed in lieu of foreclosure. (*Id.* ¶ 70)

The FAC alleges that Verde transferred $600,000 of the note sale proceeds to Heather Hendon as a loan in December 2014. (*Id.* ¶¶ 62-63). Plaintiffs allege that the money lent to Heather is from the proceeds of the mortgage notes. (*Id.*). Verde loaned another $1 million to Heather in April 2015, again, allegedly from the proceeds of selling the mortgage notes. (*Id.* ¶ 64). Heather Hendon, in turn, used some of the loaned money for the benefit of Daniel, including paying his expenses, bankruptcy trustees'

fees and attorneys' fees. (*Id.* ¶ 65).

**E.      The Trustee Attempts to Sell the Estate's Claims to DFG.**

Recognizing that that it might not own the claims that are the subject of this lawsuit, DFG offered to buy all of the estate's claims from the Liquidating Trustee under Bankruptcy Code § 363. Verde submitted an overbid for the claims at the hearing on the motion to sell.  The Court held an evidentiary hearing on July 25, 2016 to consider whether the claims should be sold to DFG or to Verde. The parties have filed post-trial briefs, and the sale is under advisement.  The Liquidating Trustee is currently the owner of all estate causes of action.

**I.      THE FRAUDULENT TRANSFER CLAIM SHOULD BE DISMISSED WITH PREJUDICE.**

**A.      Motion to Dismiss Standard.**

The Court dismisses claims under Federal Rule of Civil Procedure 12(b)(6) (and Bankruptcy Rule 7012(b)(6)) when the plaintiff fails to state a claim upon which relief may be granted.  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  To survive a motion to dismiss, Plaintiffs must make *factual* allegations "that 'nudg[e] their claims across the line from conceivable to plausible.'"  *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014) (quoting *Twombly*, 550 U.S. at 570).

**B.      Plaintiffs Lack Standing, Which Cannot Be Salvaged by Amendment.**

**1.      Plaintiffs Lack Standing to Assert a Claim Under Bankruptcy Code §§ 548 or A.R.S. § 44-1004.**

It is universally held that "[a]bsent court approval, only a trustee or debtor in possession has standing to assert a fraudulent transfer action."  *In re Pac. Gas & Elec. Co.*, 281 B.R. 1, 13 (N.D. Cal. 2002); *see also In re Curry & Sorensen, Inc.*, 57 B.R. 824, 827-28 (9th Cir. 1986) ("Section 548 establishes power to avoid fraudulent transfers, which usually may only be asserted by a trustee . . . ."); *In re Howrey LLP*, 2014 WL 3899309, at *4 (N.D. Cal. Aug. 8, 2014) ("The Trustee has the exclusive

power to bring [a] claim . . . predicated on a fraudulent transfer theory."); *cf. Ahcom, Ltd. v. Smeding*, 623 F.3d 1248, 1250 (9th Cir. 2010) ("When the trustee does have standing to assert a debtor's claim, that standing is exclusive and divests all creditors of the power to bring the claim."). This exclusive standing applies to state law fraudulent transfer actions (which the trustee may assert under Bankruptcy Code § 544), in addition to claims under Bankruptcy Code § 548. *See Pac. Gas & Elec.*, 281 B.R. at 13; *In re Rosenblum*, 545 B.R. 846 (Bankr. E.D. Pa. 2016) ("The trustee has exclusive standing to file avoidance actions under § 544(b) to avoid fraudulent transfers under both federal and state law."). So the analysis is largely the same for the § 548 claims and the state law claims.

Plaintiffs lack standing to assert a claim under A.R.S. § 44-1004 or Bankruptcy Code §§ 544 or 548, so the fraudulent transfer claims should be dismissed with prejudice.

### 2.     Bankruptcy Code §§ 544 and 548 Do Not Apply to Postpetition Transfers

Most courts have held that there is no cause of action for a postpetition fraudulent transfer under Bankruptcy Code §§ 544 or 548. *See, e.g.*, *In re Kenny G. Enters., LLC*, 512 B.R. 628, 637-38 (C.D. Cal. 2014); *In re Sia*, 349 B.R. 640, 652 (Bankr. D. Haw. 2006). The only transfers that Plaintiffs allege with respect to Verde took place during Daniel's chapter 11 bankruptcy case. Plaintiffs have therefore failed to state a claim.

### 3.     Plaintiffs Lack Standing to Assert a Section 549 Claim So Amendment of the Complaint Would Be Futile.

Plaintiffs might seek leave to amend their complaint again to seek avoidance of postpetition transfers under a different theory. But postpetition transfers are avoidable only under Bankruptcy Code § 549. *See In re Hoang*, 460 B.R. 606, 619-21 (D. Md. 2012) (collecting cases). When, as here, Avoidance Actions are expressly reserved in a plan of reorganization for the benefit of creditors, the claims remain property of the estate after confirmation. *See In re Trident Shipworks, Inc.*, 262 B.R. 107, 109 (Bankr. M.D. Fla. 2001) ("[A] Chapter 11 debtor has standing to institute actions to recover or set aside voidable transfers, including post-confirmation transfers pursuant to § 549."); *In re T.F. Stone Cos., Inc.*, 170 B.R. 884, 888-889 (Bankr. N.D. Tex. 1994) (holding that plan of reorganization with retained causes of action, including § 549 claims, granted debtors standing to pursue avoidance of postconfirmation transfer); *see also Hillis Motors, Inc. v. Haw. Dealers' Ass'n*, 997 F.2d 581, 589 (9th

Lewis Roca
ROTHGERBER CHRISTIE
201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595

2010815391_1

Cir. 1993) (property to be used "to pay back the company's creditors under the supervision of the court" remained property of the estate post-confirmation).

Under the Plan and the Trust, the Liquidating Trust has the exclusive authority to pursue the Avoidance Actions and Causes of Action. *See In re Tex. Gen. Petroleum*, 52 F.3d 1330 (5th Cir. 1995) (liquidating trustee granted avoidance powers under plan had standing as "representative of the estate" under 11 U.S.C. § 1123(b)(3)(B)); *In re Marrero*, 382 B.R. 861 (1st Cir. BAP 2008) ("It is the trustee who is invested with the discretion to pursue or not pursue avoidance [under § 549] in a given instance; and it is the trustee who must weigh the relative costs and benefits of avoidance."); *In re Haw. Telcom Commc'ns, Inc.*, 483 B.R. 217, 221 (Bankr. D. Haw. 2012) (liquidating trust had standing to assert Chapter 5 avoidance actions given to the trust under plan and litigation trust agreement); *McGuirk*, 414 B.R. at 879 ("Standing to assert actions under Section[] . . . 549 . . . to set aside . . . postpetition transfers is limited to the trustee, and individual creditors have no standing to bring such actions except through the trustee or debtor in possession.").

Thus, it would be futile for Plaintiffs to amend to the complaint to add a claim to avoid postpetition transfers (under any theory) because they lack standing. The fraudulent transfer claim should therefore be dismissed with prejudice. *See Chinatown Neighborhood Ass'n v. Harris*, 794 F.3d 1136, 1143 (9th Cir. 2015) (leave to amend may be denied if it would be "futile in saving the plaintiff's suit").

### C. Plaintiffs Fail to Allege a Transfer of Daniel's Property and Therefore Fail to State an Avoidable Transfer Claim.

Even if the Trustee's causes of action were sold to Plaintiffs, the claims against Verde would still be subject to dismissal because Plaintiffs were never entitled to any of the property that Verde transferred. Bankruptcy Code § 548 permits the trustee to avoid a transfer of "an interest of the debtor in property." Arizona law contains the same limitation. *See* A.R.S. § 44-1004(A) (defining only "transfer made . . . by a debtor" as fraudulent). Likewise, Bankruptcy Code § 549 only permits avoidance of a transfer of "property of the estate."

Plaintiff DFG only has a judgment against Daniel, but Plaintiffs have not alleged that Verde transferred or received any of Daniel's property. The FAC has only alleged the purchase and sale of

Lewis Roca
ROTHGERBER CHRISTIE
201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595

secured debt and the loan of the proceeds of that transaction to Daniel's daughter. It does not (and could not) allege that Daniel owned the secured debt or its proceeds. *See In re Kunze*, 459 B.R. 468, 473-74 (Bankr. D. Kan. 2011) ("Numerous other courts have followed the holding in [*In re Halabi*, 184 F.3d 1335 (11th Cir. 1999)], finding that the transfer of a mortgage from one lender to another does not involve a transfer of an interest in the property of the debtor or property of the bankruptcy estate."); *In re Sanchez*, 2011 WL 10656551, at *8 (E.D. Cal. Dec. 16, 2011) ("[A] post-petition assignment of the deed of trust and related Note from one holder to another is not a transfer of the Plaintiff-Debtor's interest in a property right and does not constitute a violation of the automatic stay or subject to avoidance." (citing *In re Samuels*, 2010 WL 2651909 (Bankr. D. Mass. 2010))).

Stated somewhat differently, because Plaintiffs are not creditors *of Verde*, they have no claim against Verde, because Verde only transferred its own property. *See In re Milby*, 2016 WL 778164, at *3 (9th Cir. BAP. Feb. 24, 2016) ("[O]nly a creditor of a debtor/transferor can seek avoidance of the debtor's fraudulent transfers."). Plaintiffs therefore fail to state a claim under A.R.S. § 44-1004 or Bankruptcy Code §§ 544, 548, or 549, so their fraudulent transfer claims must be dismissed. *Kunze*, 459 B.R. at 475 (dismissing claims under §§ 547, 548, and 549). This flaw cannot be cured by amendment, so the dismissal should be with prejudice.

### D. Plaintiffs Fail to Allege that Verde Was a Transferee.

Plaintiffs have not, and cannot, allege that Verde was the transferee of fraudulent property. Even if Plaintiffs had standing to recover a fraudulent transfer, recovery can only be sought from the transferee of the property. *In re Christian & Porter Aluminum Co.*, 584 F.2d 326, 338-39 (9th Cir. 1978) (under Bankruptcy Act, recovery is only available "against persons who have 'received' the property in question"); *In re Saraland, LLLP*, 2014 WL 555805, at *5 (Bankr. S.D. Ga. Jan. 17, 2014) ("[T]he Trustee cannot recover from the transferor."); *In re Lott*, 2008 WL 4368911 (W.D. Ark. Sept. 23, 2008) (transferor is not liable under § 550). To the extent Plaintiffs complain about the alleged transfer of the car wash business assets, Verde was neither the transferor or the transferee; PacWest obtained those assets from the Car Wash Entities. To the extent Plaintiffs complain about the loans made to Heather Hendon, again, Verde was not the transferee; Heather was the recipient of the monies.

Lewis Roca ROTHGERBER CHRISTIE

201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595

### E.    **Plaintiffs' Avoidance Actions are Barred by *In Pari Delicto*.**

Daniel's involvement in the transactions alleged in the FAC bars a fraudulent conveyance claim on *in pari delicto* grounds. *In re Crown Vantage, Inc.*, 2003 WL 25257821, at *6 (N.D. Cal. Sept. 25, 2003), *aff'd Crown Paper Liquidating Trust v. Pricewaterhousecoopers LLP*, 198 Fed. Appx. 597 (9th Cir. 2006) ("We affirm for the reasons set forth in the well-reasoned district court orders . . . .").

## II.    THERE IS NO PRIVATE RIGHT OF ACTION FOR WIRE FRAUD OR MONEY LAUNDERING.

The wire fraud (18 U.S.C. § 1343) and money laundering (18 U.S.C. § 1956) statutes do not create a private right of action. *See Wisdom v. First Midwest Bank of Poplar Bluff*, 167 F.3d 4092, 408 (8th Cir. 1999) (wire fraud); *Ryan v. Ohio Edison Co.*, 611 F.2d 1170 (6th Cir. 1979) (wire fraud); *Bologna v. Allstate Ins. Co.*, 138 F. Supp. 2d 310, 322 (E.D.N.Y. 2001) (wire fraud); *Phillips v. Deutsche Bank Nat'l Trust Co.*, 2010 WL 5246032 (C.D. Cal. Dec. 16, 2010) (wire fraud and money laundering); *de Pacheco v. Martinez*, 515 F. Supp. 2d 773, 787 (S.D. Tex. 2007) (money laundering); *Dubai Islamic Bank v. Citibank, N.A.*, 126 F. Supp. 2d 659, 668 (S.D.N.Y. 2000) (money laundering). Plaintiffs' Third and Fourth claims should therefore be dismissed.

## III.    THE RICO CLAIM SHOULD BE DISMISSED

### A.    **RICO Allegations Require Particular Court Focus**

#### 1.    **RICO Allegations Should Be Scrutinized with Extra Care.**

"[I]n cases alleging civil RICO violations, particular care is required to balance the liberality of the Civil Rules with the necessity of preventing abusive or vexatious treatment of defendants." *Miranda v. Ponce Fed. Bank*, 948 F.2d 41, 44 (1st Cir. 1991).

> Civil RICO is an unusually potent weapon – the litigation equivalent of a thermonuclear device. The very pendency of a RICO suit can be stigmatizing and its consummation can be costly; a prevailing plaintiff, for example, stands to receive treble damages and attorneys' fees. For these reasons, it would be unjust if a RICO plaintiff could defeat a motion to dismiss simply by asserting an inequity attributable to a defendant's conduct and tacking on the self-serving conclusion that the conduct amounted to racketeering.

*Id.* (citations omitted).

Thus, "[i]n fairness to innocent parties, courts should strive to flush out frivolous RICO

201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595
Lewis Roca
ROTHGERBER CHRISTIE

allegations at an early stage of the litigation." *Figueroa Ruiz v. Alegria*, 896 F.2d 645, 650 (1st Cir. 1990); *Fazio v. Wash. Mut. FA*, 2014 WL 2593752, at *9 (E.D. Cal. June 10, 2014) (citing *Figueroa Ruiz* and dismissing complaint with prejudice). Courts "will not permit a civil RICO suit to go forward when, in fact, it is merely 'an effort to construct a treble damage suit from what, at best, is a civil wrong[.]'" *Turner*, 84 F. Supp. 3d at 168 (quoting *Kimm v. Lee*, 2005 WL 89386, at *5 (S.D.N.Y. Jan. 13, 2005)). That is exactly what is happening here. Plaintiffs are improperly attempting to bootstrap a RICO claim to a meritless fraudulent transfer claim that it lacks standing to bring. The Court should review the allegations in the complaint against this backdrop.

### 2. The Court Must Evaluate the Allegations Against Verde Separate from the Other Defendants.

"The requirements of section 1962(c) must be established as to each individual defendant." *Craig Outdoor Advertising, Inc. v. Viacom Outdoor, Inc.*, 528 F.3d 1001, 1027 (8th Cir. 2008); *DeFalco v. Bernas*, 244 F.3d 286, 306 (2d Cir. 2001); *see also Jones v. Nat'l Commc'n & Surveillance Networks*, 409 F. Supp. 2d 456, 473 (S.D.N.Y. 2006) ("The duration, frequency, and substance of the purported racketeering activity are measured independently for each individual defendant."); *Prime Partners IPA of Temecula, Inc. v. Chaudhuri*, 2012 WL 1669726, at *11 (C.D. Cal. May 14, 2012) (same as *Craig Outdoor*).

In other words, "[t]he focus of section 1962(c) is on the individual patterns of racketeering engaged in by a defendant, rather than the collective activities of the members of the enterprise . . . ." *United States v. Persico*, 832 F.2d 705, 714 (2d Cir. 1987); *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 2012 WL 713289, at *9 (N.D. Cal. Mar. 5, 2012), *aff'd* 751 F.3d 990 (9th Cir. 2014) (citing *Persico* for the proposition that the "pattern requirement must be satisfied as to each defendant individually"). And "[f]ailure to present sufficient evidence on any one element of a RICO claim means the entire claim fails." *Craig Outdoor*, 528 F.3d at 1028.

### 3. Plaintiffs' Fraud-Based Allegations Must Satisfy the Heightened Pleading Requirements of Rule 9(b).

The rule that defendants should be evaluated individually has particular force when applied to

2010815391_1

Plaintiffs' fraud-based RICO claims.[6] Those claims must satisfy the heightened pleading requirements of Rule 9(b). *See Mostowfi v. i2 Telecom Int'l, Inc.*, 269 Fed. Appx. 621, 623 (9th Cir. 2008) (Rule 9(b) applies to civil RICO fraud claims and even claims "that although lacking fraud as an element—are 'grounded' or 'sound' in fraud"). The purpose of Rule 9(b) is "to protect individuals from broad and unfounded charges of fraudulent wrongdoing. The need to protect the reputations of individuals is just as acute, if not greater, in the RICO context where defendants are labeled 'racketeers.'" *In re Forty-Eight Insulations, Inc.*, 63 B.R. 415, 418 (N.D. Ill. 1986).

A pleading does not satisfy Rule 9(b) by "merely lump[ing] multiple defendants together." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007); *Cheery Way (USA), Inc. v. Duong*, 2012 WL 1670172 (N.D. Cal. May 14, 2012) ("A complaint 'shot through with general allegations that the 'defendants' engaged in fraudulent conduct' does not comply with Rule 9(b).'" (quoting *Swartz*, 476 F.3d at 765)). Where a complaint "does not allege any facts – as opposed to conclusions – that [the defendants] had any knowledge of the activities attributed to [the primary alleged perpetrators of a fraudulent scheme], let alone that they were involved in the 'operation or management' of the alleged racketeering enterprise," the complaint "cannot survive a motion to dismiss." *Cheery Way*, 2012 WL 1670172, at *6. This Complaint fails to meet the required scrutiny on several grounds.

### B. Plaintiffs Lack Standing to Assert a RICO Claim Because That Claim Belongs to the Trustee Too.

The standing rules that apply to Plaintiffs' fraudulent transfer claim also bar their RICO claim. RICO claims asserting postpetition acts to "conceal assets belonging to the bankruptcy . . . estate[] . . . for the purpose of obstructing the payment of . . . creditors" may only be asserted by the Trustee. *Estate of Spirtos v. One San Bernadino Cnty. Superior Court Case Numbered SPR 02211*, 443 F.3d 1172, 1174-76 (9th Cir. 2006); *see also Hamid v. Price Waterhouse*, 51 F.3d 1411, 1419-20 (9th Cir. 1995) ("Creditors of a bankrupt corporation generally do not have standing under RICO.").

"[A] plaintiff may not, simply by casting a fraudulent conveyance as a RICO violation, create standing for itself unless the RICO statute so provides." *Dana Molded Prods., Inc. v. Brodner*, 58 B.R.

---

[6] It appears that, at least as to Verde, *all* of Plaintiffs' theories revolve around fraud.

Lewis Roca ROTHGERBER CHRISTIE  201 East Washington Street, Suite 1200  Phoenix, AZ 85004-2595

201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595

Lewis Roca
ROTHGERBER CHRISTIE

576, 580 (N.D. Ill. 1986). Because Plaintiffs have suffered no particularized injury different from the injury suffered by all other creditors, Plaintiffs lack standing and "must take [their] 'place in line' as a creditor in the bankruptcy action." *Hamid*, 51 F.3d at 1420; *see also Groth-Hill Land Co., LLC v. Gen. Motors LLC*, 2013 WL 3853160, at *12 (N.D. Cal. July 23, 2013) ("[E]ven an allegedly defrauded creditor has no direct action . . . .").

## C.  Plaintiffs Have Not Alleged a Cognizable RICO Injury.

Like the avoidance action claims, the RICO claim fails, even if the Trustee sells his claims to Plaintiffs. Setting aside bankruptcy issues, a RICO plaintiff must establish that it was "injured in his business or property by reason of a violation of section 1962." 18 U.S.C. § 1964(c); *Hill v. Opus Corp.*, 841 F. Supp. 2d 1070, 1089 (C.D. Cal. 2011) ("To state a RICO claim, plaintiff[] must allege that defendants' violation of § 1962 caused injury to [its] business or property."). This requires the plaintiff to demonstrate two things– a valid RICO injury and proximate cause. Plaintiffs have not alleged sufficient facts to establish either of these things, so it lacks standing under substantive RICO law.

### 1.  *Plaintiffs have failed to allege facts sufficient to demonstrate a RICO injury*

The words "'business or property' are, in part, words of limitation; if Congress had intended for the victims of predicate acts to recover for all types of injuries suffered, it would have drafted the statute to read: 'A person *injured* by reason of a violation of a section of 1962 of this chapter may sue therefor . . . .'" *Grogan v. Platt*, 835 F.2d 844, 846 (11th Cir. 1988); *see also Steele v. Hospital Corp. of Am.*, 36 F.3d 69, 70 (9th Cir. 1994) ("This limitation to a person 'injured in his business or property' has a 'restrictive significance.'" (quoting *Reiter v. Sonotone Corp.*, 442 U.S. 330 (1979))). The limitation "helps to assure that RICO is not expanded to provide 'a federal cause of action and treble damages to every tort plaintiff.'" *Steele*, 36 F.3d at 70 (quoting *Oscar v. University Students Co-op Ass'n*, 965 F.2d 783 (9th Cir. 1992)).

Thus, demonstrating a RICO violation does not necessarily establish a RICO injury. *See Adell v. Macon Cnty. Greyhound Park, Inc.*, 785 F. Supp. 2d 1226, 1239 (M.D. Ala. 2011) ("While the substantive elements of a RICO claim require a pattern of racketeering activity involving at least two predicate acts, the issue of RICO standing is a separate and distinct inquiry."). And "[f]inancial losses,

in and of themselves, are insufficient to confer standing under RICO." *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 364 (9th Cir. 2005). The plaintiff must identify "harm to a *specific* business or property interest." *Diaz v. Gates*, 420 F.3d 897, 900 (9th Cir. 2005) (emphasis added). A "mere expectancy interest" is not enough. *See Chaset v. Fleer/Skybox Int'l, LP*, 300 F.3d 1083, 1087 (9th Cir. 2002) (quoting *Price v. Pinnacle Brands, Inc.*, 138 F.3d 602, 607 (5th Cir. 1998)).

Plaintiff DFG is an unsecured creditor of Daniel by virtue of its judgment against him. That judgment conveys "a general interest in [Daniel's bankruptcy] estate" that amounts to only an expectancy interest. *Hill*, 841 F. Supp. 2d at 1091. Plaintiffs have no "specific" interest in any of Daniel's property, much less the property that was allegedly transferred, which did not belong to Daniel (or his bankruptcy estate) when Verde received or transferred it. Plaintiffs' general expectancy interest in Daniel's property is insufficient to confer standing under RICO. *See id.* And Plaintiffs did not even have an *expectancy* interest in the property that Verde allegedly transferred because it was not property of the estate. Plaintiffs therefore cannot establish a RICO injury.

### 2. *Plaintiffs have failed to allege facts sufficient to demonstrate proximate cause.*

A RICO plaintiff must establish both "but for" causation and proximate cause. *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 653-54 (2008); *Hamid v. Price Waterhouse*, 51 F.3d 1411, 1419 (9th Cir. 1995). In order to establish proximate cause plaintiff must show some "*direct* relation between the injury asserted and the injurious conduct alleged." *Holmes v. Secs. Inv. Protection Corp.*, 503 U.S. 258, 268 (1992) (emphasis added).

Plaintiffs have not even alleged that the car wash businesses whose assets were secured by the promissory notes and mortgages that Verde bought had any value to Daniel, the equity owner of the Car Wash Entities owning the businesses, or his bankruptcy estate. This Court noted that the car wash businesses were on the verge of death following the criminal indictment. When Verde bought the secured notes, the Car Wash Entities were delinquent on payment of tax claims, unsecured claims, administrative expenses and secured claims due under the confirmed plan. As this Court heard at the evidentiary hearing regarding sale of these claims, the appraised value of the Car Wash Entities' assets collateralizing the secured notes was significantly less than the secured claims.

At this stage of the case, there is not even an allegation (or any basis in the bankruptcy record) to show that there was any equity value in the businesses for Daniel or his personal creditors at the time that Verde bought and sold the secured debt, wholly apart from Daniel having no interest in the secured debt itself. Any losses Plaintiffs suffered even indirectly by virtue of Daniel's nominal equity interest in the Car Wash Entities therefore cannot be attributed to any alleged RICO violations. *See Bastian v. Petren Res. Corp.*, 892 F.2d 680, 686 (7th Cir. 1990) ("If the plaintiffs would have lost their shirts in the oil and gas business regardless of the defendants' violations of RICO, they have incurred no loss for which RICO provides a remedy."); *see also Hill*, 841 F. Supp. 2d at 1109 ("Plaintiffs' causation allegations would be significantly strengthened if they could assert that defendants fraudulently transferred money to which they had a specific right.").

Plaintiffs have failed to allege facts sufficient to demonstrate that any of Verde's actions were the proximate cause of Plaintiffs' alleged injury.

### D. **Plaintiffs' RICO Claims Are Barred by the Doctrine of *In Pari Delicto*.**

Plaintiffs' RICO claims are barred by the doctrine of *in pari delicto*. Courts have routinely held in non-bankruptcy cases that the doctrine of *in pari delicto* is a defense to a RICO claim. *See Republic of Iraq v. ABB AG*, 768 F.3d 145, 162-63 (2d Cir. 2014); *Rogers v. McDorman*, 521 F.3d 381, 389 (5th Cir. 2008); *Official Comm. of Unsecured Creditors of PSA, Inc. v. Edwards*, 437 F.3d 1145, 1156 (11th Cir. 2006).

The doctrine applies here because the Liquidating Trustee (the owner of the RICO claims) stands in Daniel's shoes. Plaintiffs allege that Daniel is the "mastermind" of the alleged scheme to defraud them. Daniel would consequently be barred from asserting a RICO claim, so the Trustee is too. And Plaintiffs (if allowed to buy the claims from the Trustee) would be subject to the same defense, standing in the Trustee's shoes. The RICO claims should therefore be dismissed.

### E. **Plaintiffs Have Not Adequately Alleged a "Pattern of Racketeering Activity."**

"To state a claim under § 1962(c), a plaintiff must allege '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Odom v. Microsoft Corp.*, 486 F.3d 541 (9th Cir. 2007) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 547 (1985)).

### 1. Plaintiffs Have Insufficiently Alleged a Continuous Pattern.

"'Mere association with an enterprise does not violate § 1962(c).'" *Prime Partners IPA of Temecula, Inc. v. Chaudhuri*, 2012 WL 1669726 (C.D. Cal. May 14, 2012) (quoting *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 370 (3d Cir. 2010)). "At a minimum, a 'pattern' requires that the predicate criminal acts be 'related' and 'continuous.'" *Allwaste, Inc. v. Hecht*, 65 F.3d 1523, 1527 (9th Cir. 1995). "[T]he continuity requirement focuses on whether the associates' behavior was 'ongoing' rather than isolated activity." *Odom*, 486 F.3d at 553 (citing *United States v. Qaoud*, 777 F.2d 1105, 1116 (6th Cir. 1985)).

> [Establishing continuity] can be done either by pleading 'closed-ended continuity' or by pleading 'open-ended continuity.' Closed-ended continuity refers to a closed period of repeated conduct. It is established by showing that the predicate acts occurred over a substantial period of time. If closed-ended continuity cannot be established, plaintiffs may plead open-ended continuity. Open-ended continuity refers to past conduct that by its nature indicates a threat of future criminal conduct. It is established by showing either that the predicate acts specifically threaten repetition or that they were an ongoing entity's regular way of doing business.

*Allwaste*, 65 F.3d at 1526. Like the pattern requirement generally, the continuity component is evaluated "with respect to each defendant individually." *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 180 (2d Cir. 2004). "Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 242 (1989).

### a. There Is No Open-Ended Continuity Because the Last Alleged Event Took Place Over a Year Ago.

Plaintiffs do not appear to allege open-ended continuity. Nor could they, because Verde's past conduct was not criminal and certainly does not indicate any likelihood of future criminal activity. The last act by Verde alleged by Plaintiffs took place in April 2015,[7] well over a year ago. *See Turner v. Cook*, 362 F.3d 1219, 1230 (9th Cir. 2004) (upholding dismissal when there was no indication that

---

[7] Paragraph 63 of the FAC alleges that a transfer of $600,000 took place in December of 2015, but that appears to be a typographical error. The exhibit cited to support that paragraph's allegations is dated December 5, 2014. The Court can take judicial notice of that exhibit when ruling on this motion. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (court may treat documents attached to a complaint as part of the pleading and assume its contents are true when ruling on motion under Rule 12(b)(6)).

Lewis Roca
ROTHGERBER CHRISTIE
201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595

criminal activity would continue and complaint indicated that all activity had already ceased); *Gentile v. Brunswick Cnty. Sheriff's Dep't*, 2014 WL 133159, at *14 (E.D.N.C. Apr. 2, 2014) ("[T]he fact that the last alleged predicate act by [defendant] occurred, at the latest, more than one year prior to the filing of the complaint, weighs against a finding of threatened future conduct."). And any "alleged bankruptcy fraud was 'inherently terminable.'" *First Capital*, 385 F.3d at 180 (quoting *GICC Capital Corp. v. Tech. Fin. Group, Inc.*, 67 F.3d 463, 466 (2d Cir. 1995)). When an alleged scheme to convey and conceal assets has come to its conclusion, there is no threat of continued criminal activity, even if the bankruptcy case is still open. *Id.* at 181.

b. **There Is No Closed-Ended Continuity Because the Events Took Place Over Only a Few Months and Revolved Around the Sale of the Secured Notes and Loans of Sale Proceeds.**

That leaves closed-ended continuity, which Plaintiffs cannot establish either. "[C]ourts have rarely if ever found activity lasting less than a year sufficient" to meet the closed-ended continuity requirement. *Eclectic Props.*, 2012 WL 713289, at *10; *see also Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 184 (2d Cir. 2008) ("Although we have not viewed two years as a bright-line requirement, it will be rare that conduct persisting for a shorter period of time establishes closed-ended continuity."); *Mexicanos v. Hewlett-Packard Co.*, 2015 WL 9592606, at *11 (N.D. Cal. July 13, 2015) (acts that took place over seven months were "insufficient for purposes of closed-ended continuity").

Moreover, "[t]he courts . . . have repeatedly recognized that . . . schemes involving fraud related to the sale of a single enterprise do not constitute, or sufficiently threaten, the 'long-term criminal conduct' that RICO was intended to address." *GE Inv. Private Placement Partners II v. Parker*, 247 F.3d 543, 549 (4th Cir. 2001). The fact that a scheme "victimized numerous creditors does not necessarily establish the requisite pattern of racketeering activity," especially where the scheme only lasts a few months and has a built-in ending. *ePlus Tech., Inc. v. Aboud*, 313 F.3d 166, 182-83 (4th Cir. 2002).

Plaintiffs allege that three Verde transactions were fraudulent – (1) the purchase of the debt; (2) the selling of the debt; and (3) the loans to Heather Hendon. These alleged acts by Verde took place over less than a year – from June 2014 to April 2015. Aside from occurring too close in time to one

Lewis Roca
ROTHGERBER CHRISTIE
201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595

another to establish continuity, those three acts are "too 'sporadic' to satisfy the continuity requirement." *See Birch Street Recovery Corp. v. Thomas*, 2000 WL 1513799, at *11 (D.N.H. July 29, 2000) (holding that fraudulent concealment of assets during 1990 and 1991 and preparation of false financial statements in 1992 did not satisfy continuity requirement). They also relate to alleged fraud in "the sale of a single enterprise" – the car wash business. That is insufficient to establish continuity. *See GE Inv.*, 247 F.3d at 549.

Plaintiffs have failed to allege closed-ended continuity, and the RICO claim should be dismissed. Because the events at issue took place in less than a year's time, the deficiency in Plaintiffs' cause of action cannot be cured, and the Complaint should be dismissed with prejudice.

### 2. *Plaintiffs Have Not Alleged an "Association in Fact" "Enterprise"*

Plaintiffs must establish an "enterprise" to prevail on theirs RICO claim. "'*The "enterprise" is not the "pattern of racketeering activity"; it is an entity separate and apart from the pattern of activity in which it engages.*'" *Odom*, 486 F.3d at 549 (quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981)). "The 'enterprise' is the actor, and the 'pattern of racketeering activity' is an activity in which that actor engages." *Id.* "[P]roof of a 'pattern of racketeering activity' is not, by itself, proof of an 'enterprise.'" *Id.*

Plaintiffs have alleged an "association in fact" enterprise. Although "an association-in-fact enterprise under RICO does not require any particular organizational structure, separate or otherwise," the plaintiff must still "provide both 'evidence of an ongoing organization, formal or informal,' and 'evidence that the various associates function as a continuing unit.'" *Odom*, 486 F.3d at 551-52; *see also Elsevier Inc. v. W.H.P.R., Inc.*, 692 F. Supp. 2d 297, 307 (S.D.N.Y. 2010) (if the plaintiff's allegations of an association in fact enterprise do not plausibly "tie[] together the various defendants allegedly comprising the association in fact *into a single entity* that was formed for the purpose of working together," the RICO claim must be dismissed (emphasis added)).

"Most courts have found that complaints alleging hub-and-spoke enterprises fail to satisfy the RICO enterprise requirement." *In re Pharmaceutical Indus. Average Wholesale Price Litig.*, 263 F. Supp. 2d 172, 183 (D. Mass. 2003) (collecting cases). A "hub and spoke" enterprise is one that the

Lewis Roca
ROTHGERBER CHRISTIE
201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595

2010815391_1

moniker suggests – the person at the hub directs the activities of the spokes. "[W]ithout a 'rim,' there are no allegations of concerted actions among the spokes, only allegations of parallel conduct." *Target Corp. v. LCH Pavement Consultants, LLC*, 2013 WL 2470148, at *4 (D. Minn. June 7, 2013). An "association-in-fact enterprise requires more than parallel conduct; it requires relationships among those associated with the enterprise, and it requires those associated with the enterprise to 'function as a unit, that they be 'put together to form a whole.'" *Id.*

Allegations like Plaintiffs' involving "hub and spoke" enterprises confuse the "'common purpose of a single enterprise with the several, though similar, purposes of numerous separate enterprises of like character.'" *Pharmaceutical Indus. Average*, 263 F. Supp. 2d at 183 (quoting *Kotteakos v. United States*, 328 U.S. 750, 769 (1946)). The hub-and-spoke caselaw is consistent with *Boyle v. United States*, 556 U.S. 938, 946 (2009), which noted that one of the three essential features of an association-in-fact enterprise is that there must be "relationships among those associated with the enterprise."

Thus, "[t]he allegation that each [defendant] was aware that there were likely other [defendants] engaged in parallel schemes is insufficient to establish an association-in-fact RICO enterprise." *Id.* at 184. Assertions of "common fraudulent purposes and plans" are insufficient "absent allegations as to how the members [of the alleged enterprise] were associated together in an 'enterprise.'" *First Nationwide Bank v. Gelt Funding, Corp.*, 820 F. Supp. 89, 98 (S.D.N.Y. 1993).

The FAC makes it even clearer that Plaintiffs are alleging a hub and spoke enterprise because Plaintiffs now allege that Verde was only allegedly a participant in the "third, fourth and fifth predicate acts." (Amend. Compl. at 36 ¶ 157.) A common fraudulent purpose by Daniel (the spoke) is all that Plaintiffs have alleged to tie all of the other alleged schemes together. Plaintiffs have not alleged any facts to demonstrate that Verde was aware of the many parallel schemes allegedly carried out by other alleged members of the enterprise. The FAC has therefore failed to allege an association-in-fact enterprise because it has not alleged facts to demonstrate a "rim" that can connect all of the alleged members of the enterprise.

### 3. Plaintiffs Have Not Pled a Predicate Offense of Racketeering Activity.

In order to state a claim for civil RICO, the plaintiff must allege that the defendant committed

one of the crimes that qualify as "racketeering activity" in 18 U.S.C. § 1961(1). *See H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 232 (1988); *Galas v. Lending Co., Inc.*, 2013 WL 308745, at *4 (D. Ariz. Jan. 25, 2013) (dismissing RICO claims based on alleged crimes that do not qualify under the statute). Those crimes are commonly referred to as "predicate offenses." *See, e.g.*, *Sedima*, 473 U.S. at 496. "[G]eneral and conclusory statements about the predicate acts" are insufficient to state a claim. *Krusha v. Perverted Justice Found. Incorporated.org*, 2010 WL 4791666, at *7 (D. Ariz. Nov. 18, 2010).

Here are the predicate offenses that Plaintiffs have asserted:

1. Wire fraud and money laundering.

2. "The use of deception to undermine investigations of Defendants' activities."

3. Bankruptcy fraud.

4. "Abuse of the legal system."

5. "Obstruction of civil proceedings."

6. "Tampering with evidence and/or witnesses."

7. "Structuring pursuant to 31 U.S.C. [§] 5324(d)(1)."

The "use of deception to undermine investigations of Defendants' activities," "obstruction of civil proceedings," "abuse of the legal system," and "structuring" are not listed in 18 U.S.C. § 1961(1) Those alleged actions cannot support a RICO claim. The remaining alleged predicate acts fail to state a claim as well.

### a. *Plaintiffs have failed to allege wire fraud with particularity.*

Wire fraud under 18 U.S.C. § 1343 is listed as a predicate offense in § 1961(1). But it must be pled with particularity under Federal Rule of Civil Procedure 9(b). *Odom*, 486 F.3d at 553.

The mail and wire fraud statutes "require[] the object of the fraud to be 'property' in the victim's hands" *Cleveland v. United States*, 531 U.S. 12, 26 (2000). Plaintiffs have not identified, with particularity, any of *their* property that was taken through the alleged fraudulent scheme. The secured debt that Verde bought and sold and the funds that Verde loaned to Heather Hendon were not property in Plaintiffs' hands. In fact, Plaintiffs didn't even have a claim to the proceeds of the sale of the secured debt because the proceeds were not property of the estate.

Lewis Roca
ROTHGERBER CHRISTIE

201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595

And although Plaintiffs make conclusory allegations that "Defendants" concealed facts from the bankruptcy court, the docket demonstrates otherwise with respect to Verde. There is no wire fraud when the facts are disclosed. *Cf. Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106, 119-20 (2d Cir. 2013) (no wire fraud when use of the wires made the scheme's discovery more likely).

### b. Plaintiffs have failed to sufficiently allege bankruptcy fraud.

Bankruptcy fraud is listed as a predicate offense in 18 U.S.C. § 1961(1)(D). But Plaintiffs have failed to allege a specific Verde action that constituted bankruptcy fraud. "Allegations of bankruptcy fraud . . . are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b)." *First Capital*, 385 F.3d at 178-79. Statements that defendants "embezzled, stole, or unlawfully and willfully abstracted and converted . . . moneys, funds, premiums, credits, property, or other assets" are "legal conclusions cast as factual allegations, and do not pass muster under Rule 9(b)'s requirement that alleged fraud be pled with particularity." *Hill*, 841 F. Supp. 2d at 1100.

"In addition to alleging the particular details of a fraud, 'the plaintiff[] must allege facts that give rise to a *strong* inference of fraudulent intent.'" *Id.* (quoting *Moore v. PaineWebber, Inc.*, 189 F.3d 165, 173 (2d Cir. 1999)). A strong inference of fraudulent intent is lacking when "the Bankruptcy Trustee, the true victim of the alleged fraud, apparently refused to join" a lawsuit. *Baron v. Rabinovici*, 2006 WL 1318426, at *2 (E.D.N.Y. May 12, 2006). The Liquidating Trust has not joined Plaintiffs' lawsuit, so the strong inference is missing here. And if there was a strong inference of fraud, the Liquidating Trust would keep the lawsuit and litigate it instead of attempting to sell it for 10% of the recovery. The RICO claim should therefore be dismissed for this reason alone.

The prototypical bankruptcy fraud case involves transfers or concealment of estate property or outright lying. *See, e.g.*, *Stuhley v. Hyatt*, 667 F.2d 807, 809 n.3 (9th Cir. 1982) ("Although Section 152 may be violated by persons other than the bankrupt, it appears that the principal objectives of the provisions are to prevent and punish efforts by a bankrupt to avoid the distribution of any part of a liable bankrupt estate."); *In re Sheehan*, 187 B.R. 669, 671 (Bankr. D. Ariz. 1995) ("Although 18 U.S.C. 152 may be violated by persons other than the bankrupt, the principal objective of sections 152(1) and (7) is to allow identification of all of a debtor's assets and affairs to prevent the debtor from hiding or

Lewis Roca ROTHGERBER CHRISTIE 201 East Washington Street, Suite 1200 Phoenix, AZ 85004-2595

2010815391_1

fraudulently transferring any assets.").

In order to "conceal" something for purposes of the bankruptcy fraud statue, the property must "in effect, be held in trust for the bankrupt." *Stuhley*, 667 F.2d at 809 n.3  Again, Verde did not transfer or conceal any property of the estate and there are no allegations that Verde lied about anything. Instead, many of the allegations that specifically mention Verde are of the generic kind mentioned in *Hill*.  *See also In re Forty-Eight Insulations, Inc.*, 63 B.R. 415, 417 (N.D. Ill. 1986) (Rule 9(b) is not satisfied when plaintiff has merely "invo[ked] . . . statutory enactments" without alleging specific violations of bankruptcy fraud statute).  Plaintiffs have failed to allege bankruptcy fraud.

**c.**   ***Plaintiffs have failed to adequately allege money laundering.***

To establish a claim for "laundering of monetary instruments," Plaintiffs must show that Verde "(1) engaged in a financial transaction which involved proceeds from specified illegal activity, (2) knew the proceeds were from illegal activity, and (3) intended the transaction either to promote the illegal activity or to conceal the nature, source, or ownership of the illegal proceeds."  *United States v. Marbella*, 73 F.3d 1508, 1514 (9th Cir. 1996).

Plaintiffs have not alleged that there was any financial transaction "which involved proceeds from specified illegal activity."  The only "proceeds" that can be attributed to Verde are the proceeds of its sale of secured debt.  But buying and selling secured debt is not "illegal activity."  "Claims trading markets are as old as our nation" and "[d]istressed debt trading has become so commonplace that it plays a part in nearly every major chapter 11 case."  *In re KB Toys, Inc.*, 470 B.R. 331, 341-42 (Bankr. D. Del. 2012).

Loaning money to Heather Hendon isn't illegal either.  Money must be "dirty" before it can be "laundered," and Verde's secured note sale proceeds needed no cleaning.  Plaintiffs' allegations of concealment are belied by this Court's docket when it comes to the purchase and sale of the secured debt, reported to the bankruptcy court in public filings.

To the extent that Plaintiffs are attempting to bootstrap a claim of bankruptcy fraud into a claim of money laundering, they have failed to state a claim for bankruptcy fraud, so bankruptcy fraud cannot serve as the predicate "specified illegal activity" for money laundering.  *See United States v. D'Alessio*,

822 F. Supp. 1134, 1146 (D.N.J. 1993) (money laundering charge had to be dismissed when predicate charge of mail fraud was dismissed).

### d. *Plaintiffs have failed to allege tampering with a witness.*

Tampering with a witness (18 U.S.C. § 1512) is listed as a predicate offense in 18 U.S.C. § 1961(1), but Plaintiffs have alleged zero facts to support the conclusion that anyone tampered with witnesses or did anything to any evidence. The FAC has not alleged that anyone killed (or attempted to kill) a witness, used physical force (or the threat of physical force) against a witness, intimidated or threatened a witness, or harassed a witness. *See* 18 U.S.C. § 1512(a)(1), (2), 1512(b), 1512(d). Plaintiffs likewise have not identified any evidence whatsoever that has been altered, destroyed or mutilated. *Id.* § 1512(c). The FAC has merely declared that Verde engaged in "[t]ampering with evidence and/or witnesses." That is insufficient to establish a predicate offense. *See Krusha*, 2010 WL 4791666, at *7 ("general and conclusory statements about the predicate acts" are insufficient); *Fuce v. West*, 2012 WL 3046235, at *3 (E.D. Pa. July 26, 2012) ("[T]he conclusory allegation of 'robbery' does not make out a predicate offense for racketeering activity.").

## IV. Plaintiffs' Inability to Allege a Violation of 18 U.S.C. § 1962(c) Is Fatal to the Claim Under § 1962(d).

Plaintiffs' "failure to plead the requisite elements of either a Section 1962(a) or a Section 1962(c) violation implicitly means that [they] cannot plead a conspiracy to violate either section." *Simon v. Value Behavioral Health, Inc.*, 208 F.3d 1073, 1084 (9th Cir.), *as amended*, 234 F.3d 428 (9th Cir. 2000), *overruled on other grounds by Odom v. Microsoft Corp.*, 486 F.3d 541 (9th Cir. 2007); *ING Bank v. Korn*, 2011 WL 1637162, at *4 (W.D. Wash. Apr. 29, 2011) ("To prevail on its RICO conspiracy claim, [plaintiff] must first establish the elements of a RICO section 1962(c) claim."). Because Plaintiffs cannot plead a violation of Section 1962(c), the claim under 18 U.S.C. § 1962(d) should also be dismissed.

## V. Plaintiffs Have Failed to Allege Alter Ego Liability With Required Specificity.

Plaintiffs have vaguely and conclusorily alleged that all individual defendants, including Ernie Garcia, failed to respect the separate identity of entity defendants. It likewise alleges that the entity defendants were created and operated by the individual defendants to defraud the plaintiff and public,

commingled and misused corporate funds for individual purposes. (FAC ¶ 27(a)-(c)). Plaintiffs have further alleged that individual defendants completely controlled, dominated, managed and operated the corporate defendants, without either factual allegations to support that conclusion or any indication of what liability alleged stems from it. (FAC ¶ 27(d)).

"When pleading alter ego liability, a plaintiff must allege specific facts in support of that theory." *See Cornelis v. B & J Smith Assocs. LLC*, 2014 WL 1828891, at *12 (D. Ariz. May 8, 2014). A plaintiff must prove "(1) unity of control and (2) that observance of the corporate form would sanction a fraud or promote injustice." *Gatecliff v. Great Republic Life Ins. Co*, 170 Ariz. 34, 37 (1991). Plaintiffs have not alleged a single fact to establish either of these elements, so the Court should dismiss the alter ego allegations. *See Cornelis*, at *11-*12 (dismissing alter ego allegations where there were no facts to support them).

**VI.    Plaintiffs Are Not Entitled to Punitive Damages, as Alleged.**

Plaintiffs' predilection for vague and conclusory allegations carries over into their allegation of entitlement to punitive damages. (Compl. ¶¶ 112, 165). That is insufficient to state a claim for such relief under the same legal principles. Moreover, punitive damages are not available under RICO because RICO already provides for treble damages, which are punitive in nature. *See, e.g.*, *Southstar Funding, LLC v. Sprouse*, 2007 WL 812174, at *4 (W.D.N.C. Mar. 13, 2007); *Standard Chlorine of Del., Inc. v. Sinibaldi*, 821 F. Supp. 232, 252-53 (D. Del. 1992) ("[P]unitive damages are not proper under RICO since the Act already provides for treble damages."); *Sw. Marine, Inc. v. Triple A Mach. Shop, Inc.*, 720 F. Supp. 805, 810 (N.D. Cal. 1989) ("Punitive damages in addition to these treble damages are not appropriate."); *see also Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 404-05 (9th Cir. 1991) (RICO treble damages are punitive). And "[i]t is generally accepted that punitive damages are not recoverable in § 548 actions." *See* Thomas J. Salerno & Jordan A. Kroop, *Bankruptcy Litigation & Practice* § 4.10 n. 476 (citing *Mach v. Newton*, 737 F.2d 1343 (5th Cir. 1984)); *see also In re Checkmate Stereo & Elecs., Ltd.*, 9 B.R. 585 (Bankr. E.D.N.Y. 1981) (punitive damages are not available under Section 548). They are not available for negligence claims either. *Volz v. Coleman Co., Inc.*, 155 Ariz. 567, 570 (1987). The court should therefore dismiss the claim for punitive

Lewis Roca
ROTHGERBER CHRISTIE
201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595

2010815391_1

damages, with prejudice.

## VII. Plaintiffs' Negligence Claims Are Subject to Dismissal.

### A. Plaintiffs' Negligence Claims Are Displaced by the UFTA.

The Uniform Fraudulent Transfer Act "has displaced similar common law actions." *See Dooley v. O'Brien*, 226 Ariz. 149, 154 (App. 2010). Thus, to the extent that Plaintiffs are alleging that the same conduct undergirding the fraudulent transfer claims also constitutes negligence or negligence per se, the negligence claims have been "displaced."

### B. Plaintiffs Have Not Alleged a Cause of Action for Negligence.

"A necessary element of any negligence claim is the existence of a duty." *Dawson v. Withycombe*, 216 Ariz. 84, 109 (App. 2007). Forseeability of harm is irrelevant to whether a duty exists. *See Gipson v. Kasey*, 214 Ariz. 141, 143 (2007).

Plaintiffs apparently believes that Verde has a duty to help Diversified collect its judgment. But there is no authority for the proposition that a party who buys and sells debt secured by assets owned by a company that is, in turn, owned by a judgment debtor, has any duty to that judgment debtor's creditors. Verde does not owe any duty to Diversified whatsoever.

Plaintiffs contend that Verde was negligent "by failing to prevent false statements to be made to the bankruptcy court regarding the value of the assets of the car wash entities" (FAC ¶ 174), but this claim fails because there is no common law duty "to control the conduct of a third person so as to prevent harm from befalling another." *Collette v. Tolleson Unified Sch. Dist., No. 214*, 203 Ariz. 359, 363 (App. 2002). Even if Plaintiffs could establish that Verde knew of a risk of harm to them, Verde still would not have owed a duty to Plaintiffs. *Id.* at 832 ("Knowledge of a risk of harm and the ability to take some action to ameliorate that risk do not alone impose a duty to act."); *Markowitz v. Ariz. Parks Bd.*, 146 Ariz. 352, 356 (1985) (reasoning that there are no consequences for negligence even in light of foreseeable risk if there is no duty).

Moreover, liability for nondisclosure and concealment is limited to parties to a transaction. *See* Restatement (Second) of Torts §§ 550, 551 (1977). Verde has no relationship with Plaintiffs, so Verde owes no duty to disclose anything to them. Plaintiffs' remedy, if any, "is not in negligence, but in the

Lewis Roca
ROTHGERBER CHRISTIE
201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595

2010815391_1

intentional torts [they have] alleged." *Koss Corp. v. Am. Express Co.*, 233 Ariz. 74 (App. 2013).

To the extent Plaintiffs are arguing that the Bankruptcy Code or Rules create a duty to creditors, they are simply wrong. Bankruptcy Rule 3001(e)(2) requires that the transferee of a claim to file "evidence of the transfer" But it requires no other disclosure to the bankruptcy court. *See In re Burnett*, 306 B.R. 313, 318 (9th Cir. BAP 2004) (noting that Rule 3001 does not "require[] disclosure of the terms of the transfer"). "[A]bsent special circumstances involving fiduciary duties or statutory disabilities, transfers of claims presumptively are to be taken at face value." *Burnett*, 306 B.R. at 319. As in *Burnett*, here, there is "no hint that [Verde] owed any fiduciary obligations to the Debtors or that there is any statutory impediment to the allowance of the claims here."

Rule 3001 simply does not require disclosure of the amount paid for the claim, the amount of profit made from claims-trading, or what the claims-trader did with the profits. In fact, Rule 3001(e)(2) is intended solely for the protection of the *transferor*. "[T]he existence of a 'dispute' depends upon an objection *by the transferor*." *In re Olson*, 120 F.3d 98, 102 (8th Cir. 1997) (emphasis added). "Under Rule 3001(e) as amended, 'third parties, including the Debtor, do not have standing to object to a claim assignment itself.'" *In re Palmer-Dawkins*, 2013 WL 937603 (Bankr. N.D. Ga. Feb. 12, 2013) (quoting *In re Lynn*, 285 B.R. 858, 862 (Bankr. S.D.N.Y. 2002)).

Plaintiffs are also required to demonstrate "but for" causation and proximate causation. *Robertson v. Sixpence Inns of Am., Inc.*, 163 Ariz. 539, 546 (1990). They cannot do that for the same reasons that they cannot show causation under its RICO claim – any alleged transfer was not of any property to which Plaintiffs were entitled.

### C. Plaintiffs Have Not Alleged a Cause of Action for Negligence Per Se.

In yet another attempt to recast the fraudulent transfer claim as something else, Plaintiffs allege that a violation of Bankruptcy Code §§ 548-550 creates a claim for negligence per se. That claim fails because Verde did not violate the fraudulent transfer statutes. *See GATX Corp. v. Addington*, 879 F. Supp. 2d 633, 651 (E.D. Ky. 2012) (dismissing negligence per se claim where defendants "as non-transferees, cannot 'violate' the fraudulent conveyance statutes").

Even if Verde did violate the statutes, Plaintiffs still haven't stated a claim for negligence per se.

"As a general matter, a claim for negligence per se must be based on a statute enacted 'for the protection and safety of the public.'" *Steinberger v. McVey ex rel. Cnty. of Maricopa*, 234 Ariz. 125 (App. 2014) (quoting *Good v. City of Glendale*, 150 Ariz. 218, 221 (App. 1986)). The fraudulent transfer statutes are not for anyone's safety – they protect purely economic interests. They consequently cannot serve as the basis for a negligence per se claim.

And Plaintiffs also must show causation, which, again, they cannot do for the same reasons they cannot show causation under thes RICO claim. The negligence per se doctrine only establishes duty and breach of duty. *See Hatch Dev. LLC v. Solomon*, __ P.3d __, 2016 WL 3463313, at *5 (Ariz. Ct. App. June 21, 2016) (failure to comply with safety statute is negligence per se "if such conduct is the proximate cause of an injury"); *Alaface v. Nat'l Inv. Co.*, 181 Ariz. 586, 598 (App. 1995).

Plaintiffs also already have a remedy for their alleged wrongs under the fraudulent transfer statutes. Negligence per se is therefore unavailable. *See GATX*, 879 F. Supp. 2d at 651 (negligence per se statute "provides no relief for violations of the fraudulent conveyance statutes").

## VIII. There Is No Cause of Action for a Constructive Trust.

"[A] constructive trust is a remedy, not a cause of action." *See Premier Funding Group LLC v. Aviva Life & Annuity Co.*, 2014 WL 6885732, at *9 (D. Ariz. Dec. 8, 2014). That claim should therefore be dismissed. *See id.* (dismissing constructive trust claim).

### CONCLUSION

For the foregoing reasons, Plaintiffs' complaint against Verde should be dismissed, with prejudice.

2010815391_1

DATED this 7th day of September, 2016.

**LEWIS ROCA ROTHGERBER CHRISTIE LLP**


By:   _/s/ Susan M. Freeman (004199)_
                Susan M. Freeman
                Robert McKirgan
                Justin J. Henderson
                Attorneys for Defendants
                **Ernie Garcia, Steven Johnson, Verde Investments, Inc.
                and Verde Auto Services LLC**

**COPIES** served on September 7, 2016,
via ECF notice on all parties that have
appeared in this case.

**COPIES** mailed via U.S. Mail and/or emailed
this 7th day of September, 2016, to:

Helen R. Holden
SACKS TIERNEY, P.A.
4250 N. Drinkwater Blvd., 4th Floor
Scottsdale, AZ    85251
Email:  HelenHolden@SacksTierney.com

_Attorneys for Defendants Ellis Rubenstein,
Prudential Metal and Steel Supply LLC, and
E Management Consulting_

Katherine Anderson Sanchez
Carolyn J. Johnsen
Robert Shull
Charles H. Oldham
DICKINSON WRIGHT PLLC
1850 N. Central Avenue, Suite 1400
Phoenix, AZ    85004
Email:  ksanchez@dickinsonwright.com
Email:  cjjohnsen@dickinsonwright.com
Email:  rshull@dickinsonwright.com
Email:  coldham@dickinsonwright.com

_Attorneys for Defendants
Nell Hendon, Heather Hendon and Victoria Hendon_

Laura Rogal
JABURG & WILK
3200 N. Central Avenue, 20th Floor
Phoenix, AZ    85012
Email:  lar@jaburgwilk.com

Lewis Roca
ROTHGERBER CHRISTIE

201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595

Mark Lazo
Nilofar Karbassi
WILSON HARVEY BROWNDORF, LLP
1900 Main Street, Suite 500
Irvine, CA    92614
Email:  mlazo@whbllp.com
Email:  nkarbassi@whbllp.com

*Attorneys for Diversified Funding Group, LLP*

By   *Marie H. Mancino*
MARIE H. MANCINO
LEWIS ROCA ROTHGERBER CHRISTIE, LLP