# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | Chapter 11 Proceeding |
| **DANIEL LEWIS HENDON,** | Case No. 2:11-bk-21164-SHG |
| Debtor. | |
| | |
| **DIVERSIFIED FUNDING GROUP, LLC, et. al.,** | Adversary Case No. 2:16-ap-00127-SHG |
| Plaintiff, | Adversary Case No. 2:16-ap-00518-SHG |
| v. | **ORDER GRANTING MOTIONS TO DISMISS** |
| **DANIEL L. HENDON, DEBTOR, et. al.** | |
| Defendant. | |

## I. **INTRODUCTION**

Pending before the Court are multiple Motions to Dismiss the Second Amended Complaints filed by Plaintiff, Diversified Funding Group, LLC, against Defendants Daniel Lewis Hendon et. al. in adversary proceedings 2:16-ap-00127-SHG and 2:16-ap-00518-SHG. The Plaintiff filed objections to the Motions to Dismiss and the Defendants filed replies. On March 8, 2017, the Court held oral arguments on the relevant motions. Having considered the arguments presented, the Court grants the Motions to Dismiss all claims against all Defendants with

exception of the state law fraudulent transfer claim against Maria Barker for the reasons stated below.

## II. JURISDICTION

Jurisdiction is proper under 28 U.S.C. §§ 1334 and 157(b)(2)(J).

## III. FACTS AND PROCEDURAL HISTORY

### A. Relevant Procedural History

#### 1. The Hendon and DHV Bankruptcy Cases

On February 3, 2010, Danny's Happy Valley, LLC ("DHV") filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), in the United States Bankruptcy Court, District of Arizona.[1]  On July 25, 2011 (the "Petition Date"), Daniel Lewis Hendon ("Hendon") – the principal of DHV – filed a voluntary petition for relief (the "Hendon Bankruptcy") under Chapter 11 of the Bankruptcy Code.[2]  On July 26, 2011, the Court granted Hendon's Motion to jointly administer *In re Hendon* and *In re DVH* (*In re Hendon*, DE 7).

On December 12, 2011, Hendon and the DVH debtors filed the amended joint plan of reorganization (the "Plan") (*In re DHV*, DE 1516).  On December 16, 2011, (the "Confirmation Date") the Court entered an order confirming the Plan (*In re DHV*, DE 1536).  The Plan mandated the establishment of a trust ("Liquidating Trust") comprised of causes of action, including some avoidance actions, excluding certain enumerated assets.[3]  The Plan transferred the specified causes of action into the Liquidation Trust (the "Transferred Assets") upon its creation (*In re DHV*, DE 1516 at 40).  The Plan empowered a liquidating trustee ("Trustee") to administer the assets of the Liquidating Trust (*In re DHV*, DE 1516 at 73).  On November 15, 2012, Hendon filed a motion to approve the agreement that established the Liquidating Trust (*In re DHV*, DE 1817).  On

---

[1] Chapter 11 Voluntary Petition, *In re Danny's Happy Valley*, *LLC*, No. 10-02794-SHG (case cited hereinafter as *In re DHV*) (Bankr. D. Ariz. Feb. 3, 2010), DE 1.

[2] Chapter 11 Voluntary Petition, *In re Daniel Lewis Hendon*, No. 11-21164-SHG (case cited hereinafter as *In re Hendon*) (Bankr. D. Ariz. Jul. 25, 2011), DE 1.

[3] *DHV Bankruptcy*, DE 1516 at 73-74 (establishing Liquidation Trust), at 82-83 and Ex. B p.14 (enumerating causes of action which comprise corpus of the Liquidating Trust), at Ex. B p. 6 (enumerating assets excluded from the Liquidating Trust).

December 11, 2012, the Transferred Assets were transferred into the Liquidating Trust (*In re DHV,* DE 1826).

On April 25, 2016, Trustee filed a motion to convert the Hendon Bankruptcy from Chapter 11 to 7 for material default of under the terms of the Plan (the "Conversion Motion") (*In re Hendon*, DE 157). On September 16, 2016, the Court found Hendon to be in material default of the terms of the Plan, but set for further hearing Trustee's request for conversion (*In re Hendon*, DE 225). On September 30, 2016, the Court directed the parties to brief whether the case should instead be dismissed (*In re Hendon*, DE 227). On November 22, 2016, the Court approved a stipulated order dismissing the Hendon Bankruptcy ("Stipulated Dismissal") signed by Hendon, Trustee, the United States Trustee ("UST") and DFG (defined below) (*In re Hendon*, DE 258).

### 2. Diversified Funding Group Adversary Cases

On October 27, 2011, Diversified Funding Group, LLC, ("DFG") – a creditor in the Hendon Bankruptcy – filed an adversary complaint against Hendon seeking a determination that its claim was nondischargeable.[4] On August 13, 2014, after conducting a three-day trial, the Court entered a, $23,916,359.14, nondischargeable judgment in favor of DFG (the "Judgment") (*Nondischargeability Adversary*, DE 12).

On March 4, 2016, DFG filed the instant adversary proceeding against Hendon and others to collect on the Judgment.[5] On August 8, 2016, DFG filed an amended complaint (the "Arizona Complaint") (DE 30). DFG also filed in the California state court (the "California Case") a complaint against Hendon and the defendants. Some of the defendants removed the California Case to the Central District of California. On May 2, 2016, the United States Court for the Central District of California (the "Central District") entered a notice of removal of the California Case.[6] On August 2, 2016, DFG amended the compliant (the "California Complaint")

---

[4] Diversified Funding Group's Complaint to Except Debt from Discharge Pursuant to 11 U.S.C. § 523, *Diversified Funding Group, LLC v. Daniel Lewis Hendon,* No. 11-01972-SHG (cited herein as *Nondischargeability Adversary*) (Bankr. D. Ariz. Oct. 27, 2011), DE 1.
[5] Complaint Against Daniel Hendon, et al., *Diversified Funding Group, LLC et. al. v. Daniel Lewis Hendon, et al.*, No. 16-00127-SHG (main case, cited herein directly to docket) (Bankr. D. Ariz. Mar. 4, 2016), DE 1.
[6] Notice of Removal from Orange County Superior Court, case number 30-2016-00839008-CU-FR-CJC Receipt No: 0973-17747946, *Diversified Funding Group, LLC et. al. v. Daniel*

in the California Case.[7]  On October 17, 2016, the Central District transferred the California Case to the United States Court for the District of Arizona.[8]  Finally, On October 20, 2016, District of Arizona transferred the California Case to the United States Bankruptcy Court for the District of Arizona for joint administration with instant adversary proceeding (*California Adversary*, DE 1 at 1).[9]

The Arizona Complaint and the California Complaint (collectively, the "Complaints") name Hendon and along with 25 other non-debtors and non-creditor parties and sought relief in 18 separate counts (DE 30 at 16-33; California Complaint at 17-32).  In early motions to dismiss, certain defendants claimed that DFG lacked standing to pursue fraudulent transfer actions (DE 5 at 5-6; DE 13 at 1).  The defendants argued those claims belonged exclusively to the Trustee (Id.).

In response to the defendants' standing argument, DFG agreed to purchase the Trustee's rights to prosecute any potential claims (the "Speculative Claims") (*In re Hendon*, DE 180).  DFG's offer "provide[ed] the Trustee with 10% of any and all gross recovery, proceeds, or payment derived from the [l]itigation" of DFG's claims in the instant adversary proceeding for the Speculative Claims (*In re Hendon*, DE 180 at 5).  In response, The Verde Group (defined below) made a cash offer of $200,000 for the Speculative Claims (*See In re Hendon*, DE 207).  On July 25, 2017, the Court conducted an evidentiary hearing to determine which party's offer was superior (*See In re Hendon*, DE 214).

On October 21, 2016, the Court entered an ordered approving a proposed settlement between DFG and certain defendants (the "Settlement") (*In re Hendon*, DE 253 at 2).  The

---

*Lewis Hendon, et al.,* No. 16-03558-DJH (D. Ariz. May. 2, 2016), DE 1.

[7] The Bankruptcy Court's docket begins at the Order Referring the California Case.  As a result, the California Complaint appears only the District Court docket at: First Amended Complaint, *Diversified Funding Group, LLC et. al. v. Daniel Lewis Hendon, et al.,* No. 16-03558-DJH (D. Ariz. Aug. 2, 2016), DE 45 (citations to this docket entry herein referenced as California Complaint).

[8] Case Transferred in from District of California Central; Case Number 8:16-cv-00823, *Diversified Funding Group, LLC et. al. v. Daniel Lewis Hendon, et al.,* No. 16-03558-DJH (D. Ariz. Oct. 17, 2016), DE 102.

[9] Copy of Order from District Court Referring Civil 2:16-cv-03558-DJH to the Bankruptcy Court, *Diversified Funding Group, LLC et. al. v. Daniel Lewis Hendon, et al.,* No. 16-00518-SHG (cited herein as *California Adversary*) (Bankr. D. Ariz. Oct. 20, 2016), DE 1.

Settlement dismissed all DFG's claims, against: (1) Ernie Garcia; (2) Steven Johnson: (3) Verde Auto Services, LLC; (4) Verde Investments, Inc. (all collectively, the "Verde Group"): (5) Pacwest Energy, LLC; (6) Equilon Enterprises, LLC; (7) Jackson's Food Stores, Inc. (all collectively, "Pacwest"): (8) Ellis Rubenstein; (9) Prudential Metal and Steel Supply, LLC; (10) E Management Consulting (all collectively, "Rubenstein Parties"); (11) Victoria Hendon; and, (12) Heather Hendon ("Heather") (*In re Hendon*, DE 230 at 2). The Settlement also incorporated the sale of "any and all litigation claims, rights, standing and interest [consisting of the Transferred Assets or Speculated Claims] that the Trustee and the [Liquidating] Trust hold against any of the [remaining] defendants . . . [for] $200,000 . . . exclud[ing the] . . . Trustee's avoidance action against Kelly Carroll Hendon for $192,884.53" (*In re Hendon*, DE 230 at 8). DFG's claims against the remaining defendants are the subject of this decision (*In re Hendon*, DE 230 at 8).

Two defendants have filed answers to the Arizona Complaint (*See* DE 6; DE 16). The defendants have not filed a response to the California Complaint. Multiple parties filed motions to dismiss both of the Complaints.[10] On March 8, 2017, the Court heard oral arguments on the motions (the "Oral Argument") (DE 161; *California Adversary*, DE 38).

## B. ALLEGED TRANSFERS GIVING RISE TO DFG'S ADVERSARY COMPLAINTS

### 1. The Carwash Entity Transaction

#### *Background of the Carwash Entity Transaction*

Hendon and Heather held a controlling interest in certain entities that owned 14 separate car washes (the "Carwash Entities") (DE 30 at 9). In August of 2013, federal law enforcement raided the Carwash Entities (the "Raid") for criminal conduct allegedly violating immigration law (DE 30 at 9; *See In re DHV*, DE 1989). The government, as part of Hendon's plea agreement, required Hendon to divest himself from ownership of the Carwash Entities (Id.). DFG alleges that at all relevant times all defendants had knowledge of the Judgment (DE 30 at 11-12). DFG's claims arose out of the transactions and the subsequent events discussed below (collectively, the "Carwash Entity Transaction").

---

[10] *See* DE 5; DE 34; DE 35; DE 47; DE 60; DE 67; DE 69; *see also California Adversary*, DE 11; and DE 20.

### a)  The Verde Group's Acquisition of the Notes

In June of 2014, the Verde Group purchased three mortgage notes (the "Notes")—from the third-parties (the "Note Creditors")—whose notes were secured by the Carwash Entities (DE 47 at 5).  The Verde Group purchased the Notes for an amount less than their face value (DE 30 at 10).  The Note Creditors accepted Verde's discounted offer while the Notes were in default (DE 47 at 5).[11]

### b)  The Verde Group's Sale of the Notes to Pacwest

In August of 2014, The Verde Group sold the Notes – three months after acquiring them – to Pacwest.  The Verde Group made a profit of over $2,000,000 in the sale of the Notes to Pacwest (the "Pacwest Sale") (DE 30 at 11).

### c)  Pacwest's acquisition of the Carwash Entities

As part of the Pacwest Sale, the Verde Group arranged with Hendon to transfer the Carwash Entities – securing the Notes – to Pacwest by deed in lieu of foreclosure (the "Deed-in-Lieu Transfer") (DE 30 at 12).  Various entities controlled by Hendon owned the Carwash Entities (*In re DHV*, DE 1311 at 13-23).

### d)  Transfers Subsequent to the Pacwest Sale: The Verde Loans

Following the sale of the Notes to Pacwest, the Verde Group allegedly made two loans to Heather: (1) in April of 2015 a loan of $1,000,000; and (2) in December of 2015 a loan of $600,000 (collectively, the "Verde Loans") (DE 30 at 11).

### e)  Distribution of the Loan Proceeds

Using proceeds from the Verde Loans (the "Loan Proceeds"), Heather allegedly made a wire transfer(s) to the Rubenstein Parties of approximately $910,000 (Id. at 13). In 2015, Heather allegedly made seven wire transfers to Alan Meda and his firm Burch & Cracchiolo (collectively, "Meda"), totaling $45,000 from the Loan Proceeds, to pay for Hendon's legal fees (Id.11-12). DFG alleges Meda and Heather's counsel—Carolyn Johnson and her firm Dickenson Wright, PLLC (collectively, "Johnson")—instructed Heather to create a "sham bank account" to conceal Hendon's ownership of these funds from the DFG and the Bankruptcy Court (Id. at 26).

---

[11] The Note Creditors are not parties to this or any adversary proceeding or separate lawsuit.

*f)* ***DFG damages arising from the Carwash Entity Transaction***

During the oral argument, the Court questioned DFG with regard to the RICO claims. In response to the Court's question, DFG stated the damages were limited to the amount of the Verde Loans:

"**The Court**: I just want to make sure I have it right. Your claim is that [the defendants] conspired to transfer the Notes and the assets of the [Carwash] [E]ntities to Pacwest through [the Verde Group]. That resulted in net profit to Hendon of 1.6 million dollars, that was then concealed by transferring those funds to [Heather] and then disbursing them for [Hendon]'s benefit. That's your RICO claim.

**Lazo**: Basically.

**The Court**: And you think that constitutes wire fraud."

**Lazo**: We do, Your Honor . . . ."

(Oral Argument at 01:09:42 – 01:10:20[12]).

## 2. Alleged Independent Acts of Fraudulent Transfer

DFG alleges the following independent fraudulent transfers also occurred. Certain fraudulent transfer claims are omitted because DFG waived them pursuant to the Settlement.

*a)* ***Daniel Hendon***

DFG alleges that Hendon is currently the actual owner of the Carwash Entities and retains both ownership and control through Pacwest. DFG further alleges that Pacwest funnels profits of the Carwash Entities to Hendon.

*b)* ***Nell Hendon***

Nell Hendon ("Nell") is Hendon's deceased mother. DFG alleges that Hendon fraudulently "transferred approximately $530,033 to his personal bank claiming that it was a loan to repay defendant Nell Hendon. However no supporting documents for the purported loan were produced" (DE 30 at 8; California Complaint at 8).

---

[12] Oral Argument on Motions to Dismiss, *Diversified Funding Group, LLC et. al. v. Daniel Lewis Hendon, et al.*, No. 16-00127-SHG (Bankr. D. Ariz. Mar. 8, 2017), DE 160, Audio File THL01203123(1) (cited in herein as Oral Argument).

1

### c) *Kelly Carroll*

2  Kelly Carroll ("Carroll") is Hendon's ex-wife. DFG alleges that Hendon made three

3  fraudulent transfers to Carroll: (1) $200,000 comprised of proceeds of the sale of furniture in

4  2009-2010; (2) $198,000 in 2010 and (3) $160,000 in 2007 (DE 30 at 14, 18; *see* Oral Argument

5  at 00:11:40-00:12:55).

6

### d) *Maria Barker*

7  Maria Barker ("Barker") is allegedly Hendon's girlfriend. DFG alleges that Hendon

8  transferred to Barker at least $100,000 in August of 2014 to thwart collection. (DE 30 at 15).

9

### e) *Gill Olguin and OSC Capital*

10  DFG alleges Gil Olguin is an agent of OSC Capital and he and Hendon engaged in certain

11  business transactions involving bond financing.[13] DFG alleges that Hendon transferred

12  $1,200,000 to Gil Olguin and OSC Capital (collectively, "Olguin") in 2010 to thwart collection

13  (DE 30 at 17).

14

### f) *Jaw Swart*

15  Jay Swart ("Swart") is allegedly Hendon's longtime family friend. DFG alleges that

16  Hendon transferred to Swart a Ferrari for the "nominal sum" of $80,000 in 2010 to thwart

17  collection (DE 30 at 17).

18

### g) *Alan Meda and Burch & Cracchiolo*

19  Meda represented Hendon in the Hendon Bankruptcy. DFG alleges that Heather made

20  seven fraudulent wire transfers to Meda totaling $45,000 (DE 30 at 11).

21

### h) *Ernie Vasquez*

22  Ernie Vasquez ("Vasquez") is one of Hendon's former employees. DFG alleges that

23  Hendon made fraudulent transfers to Vasquez—disguised as payment for past services

24  rendered—in an unspecified amount, on unspecified dates (DE 30 at 11-12).

25

26

27

---

28  [13] *See* DE 28 (OSC has made no appearance in this adversary proceeding and notice has been returned).

# IV. LEGAL STANDARD

When considering a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), all alleged facts must be "taken as true and construed in the light most favorable to the nonmoving party." *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 338 (9th Cir. 1996); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (internal citations omitted) (brackets in original). Indeed, to state a claim for relief that is facially plausible, a complaint must contain sufficient factual material. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 570 U.S. at 555).

The pleader's claims are facially plausible when the facts plead "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 570 U.S. at 556). To satisfy the plausibility standard the conclusion the court may draw from the facts need not be probable, but "more than a sheer possibility that a defendant has acted unlawfully" is necessary. *Id.* When the facts plead "are merely consistent with a defendant's liability, 'it stops short of the line between possibility and plausibility of entitlement to relief.' " *Id.* (quoting *Twombly*, 550 U.S. at 557).

When the pleader's facts allow for "two possible explanations only one of which can be true and only one of which results in liability, plaintiffs cannot offer allegations that are 'merely consistent with' their favored explanation but are also consistent with the alternative explanation." *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013) (citing *Iqbal*, 556 U.S. at 678). In such a case, to overcome a Rule 12(b)(6) motion, the pleader must allege "facts tending to exclude the possibility that the alternative explanation is true" so that the "plaintiffs' allegations [are rendered] plausible within the meaning of *Iqbal* and *Twombly*." *Id.* (citing *Twombly*, 550 U.S. at 554). If the opposing parties offer "two alternative explanations . . . both of which are *plausible*, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)." *Id.* (quoting *Starr v. Baca*, 652 F.3d 1202 (9th Cir.2011)) (emphasis in original). If,

however, a "plaintiff's explanation is merely *possible*" the court must grant a Rule 12(b)(6) motion. *Century Aluminum*, 729 F.3d at 1108 (emphasis in original).

A party making a complaint alleging fraud must satisfy the requirements of Federal Rule of Civil Procedure Rule 9(b). Fed. R. Civ. P. 9(b). It is well-established Ninth Circuit law "that Rule 9(b)'s particularity requirement applies to state-law causes of action." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003). Under Rule 9(b), allegations of fraud "must state with particularity the *circumstances* constituting fraud." Fed. R. Civ. P. 9(b) (emphasis added). In the Ninth Circuit the Rule 9(b) circumstances are the " 'the who, what, when, where, and how' of the misconduct charged." *Vess*, 317 F.3d at 1106 (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir.1997). The complaining party "must set forth what is false or misleading about a [fraudulent] statement, and why it is false[;] neutral facts," which merely serve to "identify the transaction" are not sufficient. *Id.* (quoting *Decker v. GlenFed, Inc.*, 42 F.3d 1541, 1548 (9th Cir.1994)). The Ninth Circuit reasons that defining circumstances in such a way renders fraud claims "specific enough to give defendants notice of the particular misconduct [] so that they can defend against the fraud charge[ed] and not just deny" alleged wrongdoing. *Id.* (quoting *Bly–Magee v. California*, 236 F.3d 1014, 1019 (9th Cir.2001).

A court granting a Rule 12(b)(6) motion must decide whether to allow the non-moving party leave to amend. If the non-moving party relied on facts or circumstances that "may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Leave to amend should be "freely given" when there exists no "apparent or declared reason[,]" including *inter alia* "bad faith, . . . repeated failure to cure deficiencies by amendments previously allowed[,]" and "futility of amendment." *Id.* Specifically, with respect to Rule 9(b), "when dismissing for failure to comply with [the heightened pleading requirements] 'leave to amend should be granted unless the district court determines that the pleading could not possibly be cured by the allegation of other facts.' " *Vess*, 317 F.3d at 1108 (quotations omitted) (quoting *Bly–Magee*, 236 F.3d at 1019). The Bankruptcy Court has the discretion to "grant or den[y] an opportunity to amend," however, "outright refusal

to grant the leave without any justifying reason . . . [is] an abuse of discretion." *Foman,* 371 U.S. at 182.

## V. <u>DISCUSSION</u>

### A. ARIZONA COMPLAINT COUNT I: FRAUDULENT TRANSFERS UNDER THE BANKRUPTCY CODE 11 U.S.C. §§ 547-550

DFG does not identify the Bankruptcy Code section each individual transfer violated. DFG's transfer claims fail to satisfy the requirements of any applicable sections of the Bankruptcy Code.

#### 1. Arizona Complaint Count I: Preferential Transfers Under 11 U.S.C. § 547

DFG's first cause of action is a preferential transfer claim under 11 U.S.C. § 547 (a "Preference") (DE 30 at 16). Section 547(b) states: A "trustee may avoid any transfer of an interest of the debtor in property[:] (1) to or for the benefit of a creditor; (2) for or on account of an antecedent debt owed by the debtor before such transfer was made; (3) made while the debtor was insolvent; (4) made . . . on or within 90 days before the date of the filing of the petition, or . . . between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and (5) that enables such creditor to receive more than such creditor would receive if[,] . . . the case were a case under chapter 7 of this title[,] . . . the transfer had not been made[,] and such creditor received payment of such debt to the extent provided by the provisions of this title." To make a *prima facie* Preference claim, five distinct elements must be plead. § 547(b); *see In re Uhlmeyer,* 67 B.R. 977, 980 (Bankr. D. Ariz. 1986).

DFG purchased the Trustee's rights to prosecute any existing causes of action against the defendants pursuant to the Settlement. DFG, however, fails to allege facts stating a *prima facie* Preference claim. DFG has not alleged Hendon transferred property, to a *creditor*, in satisfaction of an *antecedent debt*, nor has DFG alleged any of the defendants were Hendon's creditors. Further, DFG has not alleged that any of the transfers occurred in the 90-day or one year period (which varies based the *creditor's* relationship to a debtor) preceding the Petition Date.

Alternatively, even assuming DFG could allege a *prima facie* Preference claim, it would be time barred under 11 U.S.C. § 546(a). Section 546(a) states in relevant part: "An action or

proceeding under section . . . 547 [or] 548 . . . of this title may not be commenced after the earlier of . . . 2 years after the entry of the order for relief[,] or . . . the time the case is closed or dismissed." Section 546(a) requires that a trustee bring a Preference action by the earlier of: (1) two years after the date of the filing of the petition; or (2) the case is dismissed or closed. 11 U.S.C. § 546(a); *see In re Conco Bldg. Supplies, Inc.*, 102 B.R. 190, 191 (B.A.P. 9th Cir. 1989).

The Hendon Petition Date is July 25, 2011. DFG filed the first Arizona Complaint in March of 2016.[14] July 25, 2013 (the "546-Bar Date") is the appropriate bar date, under § 546(a), because it precedes the date of dismissal, but is also exactly 2-years after the Petition Date. § 546(a); *see In re Gee*, No. ADV. 05-04195, 2007 WL 7535063, at *3 n.6 (B.A.P. 9th Cir. Mar. 29, 2007). As a result, DFG's Preference claim is also time barred. DFG's § 547 claims in Count I of the Arizona Complaint are **DISMISSED** with prejudice for futility as to all defendants without leave to amend.

### 2. Arizona Complaint Count I: Fraudulent Transfers Under 11 U.S.C. § 548

DFG alleges a fraudulent transfer claim under 11 U.S.C. § 548 (a "Fraudulent Transfer") (DE 30 at 16). Section 548 states in relevant part: "The trustee may avoid any transfer . . . of an interest of the debtor in property, or any obligation . . . incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily" made such transfers while, among other things, was insolvent or was rendered insolvent by the transfers. The Estate may avoid a fraudulent transfer. 11 U.S.C. §§ 548, 551; *see In re Viscount Air Servs., Inc.*, 232 B.R. 416, 434 (Bankr. D. Ariz. 1998). Like Preference claims, however, Fraudulent Transfer claims are time barred under § 546(a) unless brought within 2 years of the petition date. *In re Hernandez*, No. AP 14-04144, 2015 WL 6736698, at *5 (B.A.P. 9th Cir. Nov. 3, 2015).

DFG failed to assert any Fraudulent Transfer before the expiration of the §546(a) Bar Date. Again, DFG first asserted the Fraudulent Transfer claims in 2016 and thus, these claims are time barred. Accordingly, the § 548 claims in Count I of the Arizona Complaint are **DISMISSED** with prejudice for futility as to all defendants without leave to amend.

---

[14] *See supra* notes 2 and 5 (for Petition Date and filing of first complaint, respectively).

### 3. Arizona Complaint Count I: Unauthorized Estate-Property Transfers Under 11 U.S.C. § 549

DFG asserts Hendon made unauthorized post-petition transfers ("Unauthorized Transfer") under § 549 (DE 30 at 16). Very generally under § 549 unauthorized transfers of property of the Estate ("Estate Property") which occur after the petition date may be avoided. 11 U.S.C. 549(a); *see In re Mora*, 218 B.R. 71, 73 (B.A.P. 9th Cir. 1998), *aff'd*, 199 F.3d 1024 (9th Cir. 1999). A *prima facie* Unauthorized Transfer claim requires allegations of a post-petition transfer of Estate Property. *Id.*

Section 549 claims have certain temporal elements as well. First, under § 549(d), a Unauthorized Transfer claim must be brought after the earlier of: (1) two years of the date of transfer; or (2) the time the case is closed or dismissed. § 549(a); *In re Dietz*, 94 B.R. 637, 640 (B.A.P. 9th Cir. 1988), *aff'd*, 914 F.2d 161 (9th Cir. 1990). Under 11 U.S.C. § 541(a), the commencement of a bankruptcy case creates an estate, which is generally comprised of all property in which the debtor holds any kind of ownership rights (the "Estate"). *In re Jones*, 487 B.R. 224, 226 (Bankr. D. Ariz. 2012), *aff'd*, No. BAP AZ-12-1644, 2014 WL 465631 (B.A.P. 9th Cir. Feb. 5, 2014). "Section 1141(b) vests all of the property of the estate, scheduled and unscheduled, in the debtor upon plan confirmation, unless the court or plan provides otherwise." *In re JZ L.L.C.*, 371 B.R. 412, 418 (B.A.P. 9th Cir. 2007); 11 U.S.C. §§ 1141(b). Thus, a *prima facie* Unauthorized Transfer claim must allege a: (1) transfer of Estate Property; (2) within a window of time that begins on the petition date, and – unless otherwise enumerated in the plan of reorganization – ends on the confirmation date; and (3) is brought within two years of the transfer.

DFG's Unauthorized Transfer claim fails because the property allegedly transferred by Hendon was not Estate Property at the time of the transfer. Under § 1141(b), all of Hendon's property not transferred to the Liquidating Trust revested in Hendon on the Confirmation Date. An analysis of the Plan reveals no contradictory language (*See In re DHV,* DE 1516). Further, the Plan acknowledged the application of § 1141(b) and directed the relevant property revest in

Hendon on the Confirmation Date (*See In re DHV,* DE 1516 at 93). As a result, none of the alledged Unauthorized Transfers comprised Estate Property because they occurred more than 2 years after the property revested in Hendon on the Confirmation Date.

Additionally, under § 549(d), the last day to bring an Unauthorized Transfer claim was December 16, 2013.[15] Thus, DFG failed to timely assert any Unauthorized Transfer claims and they are time barred. Accordingly, the § 549 claims in Count I of the Arizona Complaint are **DISMISSED** with prejudice for futility as to all defendants without leave to amend.

### 4. Bankruptcy Fraud

DFG alleges the defendants conspired to commit bankruptcy fraud. Although the Arizona Complaint references an alleged fraud on the Bankruptcy Court 26 times, it fails to identify a statute that gives rise to any bankruptcy fraud claim.[16] Moreover, DFG fails to allege any specific factual basis for a bankruptcy fraud claim. Instead, the Arizona Complaint is replete with various random allegations of Hendon's non-disclosure of assets and illegal transfers of Estate Property.

DFG's bankruptcy fraud claim fails procedurally, for a lack of compliance with the Rule 9(b)'s pleading requirements, i.e. the alleged bankruptcy fraud is not plead with sufficient specificity. Furthermore, DFG's bankruptcy fraud claim fails because: (1) none of the property allegedly transferred by Hendon was Estate Property; (2) none of the defendants had a duty to voluntary disclose the alleged transfers to the Bankruptcy Court;[17] and, (3) no plausible theory of conspiracy exists between the defendants, such that DFG can hold them jointly and severally liable for the alleged damages. Accordingly, all causes of action based on bankruptcy fraud will be **DISMISSED** with prejudice for futility.

---

[15] Under § 549(d) DFG's Unauthorized Transfer claim must be brought before the earlier of the November 22, 2016 dismissal date or December 16, 2013, which is 2 years after the final date the relevant property was vested in the bankruptcy estate.

[16] *See* Arizona Complaint at paras. 5, 13, 14, 17, 18, 54, 67, 68, 97, 98, 139, 170, 171, 172, 173, 174, 175, 176, 177, 178.

[17] *See supra* pp. 12-15 (for discussion of unlawful transfers under the Bankruptcy Code).

**B. ARIZONA COMPLAINT COUNT II: CALIFORNIA COMPLAINT COUNT I: FRAUDULENT TRANSFER UNDER A.R.S. § 44-1004 & FRAUDULENT TRANSFERS UNDER CAL. CIV. CODE 3439 ET SEQ.**

Under A.R.S. §§ 44-1001 – 44-1013 and Cal. Civ. Code §§ 3439.01 – 3439.14, a transfer of the debtor's property is fraudulent if: (1) it was for less than reasonably equivalent value; or (2) at the time of the transfer the debtor was insolvent or was rendered insolvent because of the transfer; or (3) it was made with the intent to intent to hinder, delay or defraud any creditor. The statutory remedy for fraudulent transfer incorporates a restitutionary theory of law. The creditor, against whom the fraud was committed, holds an interest in transferred property. As a result, as a matter of law, the defendants cannot be jointly and severally liable under A.R.S. § 44-1004 or Cal. Civ. Code § 3439.04 for fraudulent transfers they did not receive. Neither Johnson nor Despain received any transfers, and therefore, cannot be jointly and severally liable. Therefore, DFG's fraudulent transfer claims against them are **DISMISSED** with prejudice and without leave to amend.

**1. Carroll, Swart, and Olguin**

DFG alleges Carroll is the recipient of three separate cash transfers taking place more than four years prior to the date of the Complaints. DFG further alleges that Swart was the recipient of disguised loans and a Ferrari for the "nominal sum" of $80,000, more than four years prior to filing date of DFG's Complaints. Finally, DFG alleges that Olguin was the recipient of a cash transfer more than four years prior to the filing date of DFG's Complaints.

Under A.R.S. § 44-1009 and Cal. Civ. Code § 3439.09 a cause of action is extinguished four years after the transfer is made or, if discovered after four years, within one year of the discovery or one year of the time when reasonable efforts would lead to discovery. A.R.S § 44-1009(1); Cal. Civ. Code § 3439.09(a). DFG acknowledged at the Oral Argument, however, that: "Despite the timing of when the transfers occurred, despite the filing of the adversary case [by DFG for fraud against Hendon in 2011], despite the appointment of the liquidating agent, and confirmation of a plan [of reorganization], if you did not discover these transactions until you

deposed Heather Hendon then you are permitted to be excluded from the statute of limitations" (Oral Argument at 00:19:30 – 00:20:15).[18]

The Court is unpersuaded by DFG's argument that the discovery rule extended its right to assert these claims until 2016 and finds that the fraudulent transfer claims against Carroll, Swart, and Olguin are untimely and thus barred under A.R.S § 44-1009 and Cal. Civ. Code § 3439.09.[19] Accordingly, Count II of the Arizona Complaint and Count I of the California Complaint is **DISMISSED** with prejudice for futility as to Carroll, Swart, and Olguin without leave to amend.

### 2. Nell

DFG alleges that Nell is the recipient of a cash transfer of $530,033. In August of 2014, this Court found: "$530,330.72 is listed in [Hendon's] ledger as a payment to Nell Hendon (Hendon's mother) as reimbursement for advances she made in conjunction with a loan from Mortgages Limited, which [Hendon] used to acquire some of the Specified Properties[, h]owever, that money was not transferred to Nell Hendon, but to [Daniel] Hendon's personal account" (*Nondischargeability Adversary*, DE 119 at 8). This transfer, *inter alia*, formed a basis for the ruling that DFG's claim is nondischargeable. It was proven that Nell never received the $530,330 transfer. Therefore, DFG fails to state a claim for fraudulent transfer against her. Accordingly, Count II of the Arizona Complaint and Count I of the California Complaint are **DISMISSED** with prejudice for futility as to Nell without leave to amend.

### 3. Meda

DFG alleges that Meda received fraudulent transfers totaling $45,000 from the Loan Proceeds.[20] Meda contends, the transfers are not voidable because they were in exchange for

---

[18] DFG affirmed the Court's summation of the facts.

[19] In addition, the $160,000 transfer to Carroll was an asserted as a basis for relief with regard to DFG's nondischargeability case filed in 2011 (*Nondischargeability Adversary*, DE 119 at 8). The record supports the conclusion that this and the other similarly conducted transfers alleged in the Complaints were discoverable by DFG with reasonable due diligence before 2016.

[20] It is unclear whether DFG is arguing this premise. In the Complaints DFG acknowledges that, at all relevant times, Hendon retained Meda to perform legal services in connection with the Hendon Bankruptcy.

valuable legal service he performed (Oral Argument 00:09:50 – 00:10:00).  A fraudulent transfer is not voidable if the recipient accepted the transfer as part of an exchange of "reasonably equivalent value."  A.R.S. § 44-1008(A); Cal. Civ. Code § 3439.08(a).

At the Oral Argument, when asked DFG to address Meda's defense, DFG replied: "I don't have evidence that it was not reasonably equivalent value. . . I cannot tell you he was not owed the reasonable value of his services" (Oral Argument 00:31:50 – 00:32:30).[21]  As a result, DFG fails to state a fraudulent transfer claim against Meda because it cannot allege there was no reasonable equivalent value for the transfers at issue.  Accordingly, Count II of the Arizona Complaint and Count I of the California Complaint are **DISMISSED** with prejudice for futility as to Meda without leave to amend.

**4. Hendon**

DFG alleges that Hendon remains an owner of the Carwash Entities and continues to receive income pursuant to his ownership interest.  DFG plead no facts that support this conclusory statement.  DFG asserted no facts at the Oral Argument that could support this conclusion.  Hendon is not the legal or beneficial owner of the Carwash Entities.  Pacwest is the current title owner of the Carwash Entites.  DFG's failure to assert plausible factual support for this claim alone constitutes grounds for dismissal.

Under A.R.S. § 44-1007 and Cal. Civ. Code § 3439.07 DFG's remedy for a successful claim of fraudulent transfer is avoidance of the transfer or relief against the beneficiary of the transfer with legal rights in the transferred property.  DFG has settled all claims against Pacwest and has no right under the terms of the Settlement to avoid an alleged fraudulent transfer received by Pacwest.  As a result, under A.R.S. § 44-1007 and Cal. Civ. Code § 3439.07, no further remedies for fraudulent transfer exist.  DFG's claim for fraudulent transfer of the Carwash

---

[21] The entirety of DFG's statement in response to the Court's query supports the conclusion that DFG abandoned the fraudulent transfer claim in favor of relief through imposition of a constructive trust: "I don't have evidence that it was not reasonably equivalent value.  What I do have is law that a constructive trust attaches in equity to those monies.  Those monies that were transferred, by virtue of a fraudulent series of events that occurred, orchestrated by Mr. Meda, inure to the benefit of Mr. Meda and his firm.  That's all I can tell you.  I cannot tell you he was not owed the reasonable value of his services."

Entities by Hendon is futile. Accordingly, Count II of the Arizona Complaint and Count I of the California Complaints are **DISMISSED** with prejudice without leave to amend.

### 5. Vasquez

DFG alleges that "Vasquez received funds from [Hendon] disguised as payments for past-rendered services" (DE 30 at 14; California Complaint at 15). DFG fails to plead facts providing Vasquez with adequate notice of the claim and the grounds upon which it rests. DFG fails to provide: (1) a date on which the alleged payments took place; (2) the dollar amount of each payment and the total damages; and (3) facts excluding the possibility that any payments Vasquez received from Hendon resulted from his prior employment. Accordingly, Count II of the Arizona Complaint and Count I of the California Complaints are **DISMISSED** without prejudice for failure to plead with specificity.

### 6. Barker

DFG alleges that Barker is the recipient of fraudulent transfers from Hendon facilitated by the cashing of four separate checks, totaling $100,000, in August of 2014. DFG timely brings this claim and pleads facts – which accepted as true – state a claim for relief.

## C. ARIZONA COMPLAINT COUNTS II & III: WIRE FRAUD UNDER 18 U.S.C. § 1343 & MONEY LAUNDERING UNDER 18 U.S.C. § 1956

DFG alleges that the defendants engaged in wire fraud and money laundering under 18 U.S.C. §§ 1343 and 1956. Neither statute creates an independent, private right of action. *See Wisdom v. First Midwest Bank, of Poplar Bluff*, 167 F.3d 402, 408 (8th Cir. 1999) (the Eight Circuit joins the Fifth and Sixth Circuits, finding that the mail or wire fraud statutes do not provide a private right of action); *Ateser v. Bopp*, 29 F.3d 630 (9th Cir. 1994) ("Courts have consistently found that the mail and wire fraud statutes do not confer private rights of action"); *de Pacheco v. Martinez*, 515 F. Supp. 2d 773, 787 (S.D. Tex. 2007) ("federal courts have not recognized a private right of action for breach of § 1956, the money laundering statue"); *Dubai Islamic Bank v. Citibank, N.A.*, 126 F. Supp. 2d 659, 668 (S.D.N.Y. 2000) ("18 U.S.C. § 1956 does not give rise to a private right of action"). At the Oral Argument, DFG conceded that there exists no private right of action under §§ 1343 and 1956 but reserved these claims with respect

to the RICO claims, discussed *infra* (Oral Argument at 00:38:50 – 00:39:30). Accordingly, Counts II and III of the Arizona Complaint are **DISMISSED** with prejudice for futility as to all defendants without leave to amend.

### D. CALIFORNIA COMPLAINT COUNTS II, V, VII & VIII: FRAUDULENT CONCEALMENT, UNJUST ENRICHMENT, ACCOUNTING, & MONEY HAD AND RECEIVED

#### 1. California Complaint Count II: Fraudulent Concealment

DFG claims that the defendants fraudulently concealed material information about the Verde Loans which resulted in damages of $1,600,000 (California Complaint at 19). Under California law: the "required elements for fraudulent concealment are: (1) concealment or suppression of a material fact; (2) by a defendant with a duty to disclose the fact to the plaintiff; (3) the defendant intended to defraud the plaintiff by intentionally concealing or suppressing the fact; (4) the plaintiff was unaware of the fact and would not have acted as he or she did if he or she had known of the concealed or suppressed fact; and (5) plaintiff sustained damage as a result of the concealment or suppression of the fact." *Hambrick v. Healthcare Partners Med. Grp., Inc.*, 238 Cal. App. 4th 124, 162 (2015) (quoting *Graham v. Bank of America*, N.A., 226 Cal.App.4th, 594, 606 (2014)), *reh'g denied* (June 17, 2015), *review denied* (Sept. 30, 2015).

DFG asserts the defendant's failure to disclose the existence of the Verde Loans and the subsequent distributions of the Loan Proceeds supports fraudulent concealment claims against all defendants. None of the defendants entered into any transactions with DFG. DFG was not a party to the Pacwest Sale or the Verde Loans. None of the remaining defendants were parties to the Pacwest Sale or the Verde Loans. As a result, the Court can construe no cognizable duty of disclosure owed to DFG by the remaining defendants.

DFG fails to state a claim for fraudulent concealment because no plausible facts exist establishing a duty of disclosure between DFG and any of the defendants. Accordingly, Count II of the California Complaint is **DISMISSED** with prejudice as to the all defendants without leave to amend.

### 2. California Complaint Count V: Unjust Enrichment

DFG alleges receipt of the Loan Proceeds unjustly enriched the defendants because: (1) the Loan Proceeds equitably belonged to DFG; (2) the defendant's retention of these proceeds unjustly enriched them to DFG's detriment. At issue is the distribution of the $1.6 million dollars (the Loan Proceeds) from Verde to Heather.

Under California law, the elements of unjust enrichment are: (1) receipt of a benefit; and (2) unjust retention of the benefit at the expense of another. *Loop AI Labs Inc v. Gatti*, No. 15-CV-00798-HSG, 2015 WL 5158639, at *6 (N.D. Cal. Sept. 2, 2015) (citing *Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723, 726 (2000)). The phrase unjust enrichment, however, "does not describe a theory of recovery, but an effect: the result of a *failure to make restitution under circumstances where it is equitable to do so.*" *Id.* (emphasis added) (quoting *Melchior v. New Line Prods., Inc.*, 106 Cal.App. 4th 779, 793 (2003)). Thus, to state a *prima facie* claim for unjust enrichment, DFG must plead facts that that establish: (1) the remaining defendants were enriched; (2) their enrichment was at DFG's expense; and (3) principles of equity and fairness require the remaining defendants make restitution.

DFG fails to allege that certain of the defendants received any of the Loan Proceeds. As a result, DFG fails to establish the first element of this cause of action, i.e. these defendants received any benefit. Accordingly, Count II of the California Complaint is **DISMISSED** with prejudice for futility as to Barker, Carroll, Despain, Johnson, Olguin, Swart, and Vasquez without leave to amend.

DFG alleges that Meda received $45,000 of the Loan Proceeds for payment of legal services provided to Hendon. DFG fails to satisfy the second element of unjust enrichment because Meda's receipt of the $45,000 must come at DFG's expense. The "retention of benefit at the expense of another" requires that DFG plead facts which support the conclusion that DFG is the holder an interest in Loan Proceeds. In other words, DFG must plead that Meda's retention of the $45,000 is the concurrent cause of DFG's loss of its interest in these funds. DFG cannot demonstrate this element is satisfied.

DFG held no interest in the Loan Proceeds even if all the facts plead by DFG are true. DFG did not contribute to the Verde Group's purchase of the Notes from the Note Creditors. DFG did not fund any loans made by the Note Creditors to the Carwash Entities. DFG fails to allege facts demonstrating it held an interest in the funds the Verde Group paid to the Note Creditors. DFG fails to allege any facts supporting any interest in the Loan Proceeds the Verde Group received from the sale of the Notes to Pacwest.

DFG alleges Pacwest was unjustly enriched. But, Pacwest did not receive any of the Loan Proceeds, nor did Pacwest transfer the Loan Proceeds to Heather or anyone else. Thus, nothing Pacwest did conceivably vested DFG with an interest in the Loan Proceeds. In any event – pursuant to the Settlement – DFG waived all claims against Pacwest.

With respect to Heather, the Judgment is against Hendon and does not include any of her assets. The transfer of the Loan Proceeds by the Verde Group to Heather did not vest in DFG any conceivable interest in them. The Loan Proceeds transferred from the Verde Group to Heather are her property. Heather may lawfully do with the Loan Proceeds as she wishes, including using them for Hendon's benefit.

This is not to say that Heather may lawfully hold assets – in name only – for Hendon. Indeed, in such a case the Judgment would allow DFG to seek relief against Heather. In the instant case, however, at every step, the Loan Proceeds held by Heather remained her property. Heather's use of the Loan Proceeds for Hendon's financial benefit did not vest in DFG any conceivable interest in the Loan Proceeds she received, or received by others. In any event, DFG settled with Heather so no such claim can be asserted against her.

To satisfy the second element of unjust enrichment DFG must plead facts that establish that Heather transferred $45,000 to Meda from Hendon's property. Both Meda and DFG do not dispute that Meda earned the Loan Proceeds transferred to him by Heather in consideration for legal services he performed for Hendon. Further, DFG has made no claim that Meda is concealing the funds received from Heather for Hendon. As a result, DFG fails to state a claim for unjust enrichment against Meda. Accordingly, Count II of the California Complaint is **DISMISSED** with prejudice for futility as to Meda and Hendon without leave to amend.

### 3. California Complaint Count VII: Accounting

DFG makes a claim for accounting asserting an inability to calculate the amount of damages arising out the instant causes of action (California Complaint at 26). "An accounting cause of action is equitable in nature, and may be sought where [] the accounts are so complicated that an ordinary legal action demanding a fixed sum is impracticable." *Civic W. Corp. v. Zila Indus., Inc.*, 66 Cal. App. 3d 1, 14 (Ct. App. 1977) (internal quotes omitted). Further, "[a]n accounting will not be accorded with respect to a sum that a plaintiff seeks to recover and alleges in his complaint to be a sum certain." *Lawrence v. Aurora Loan Servs. LLC*, No. CV F 09-1598 LJO DLB, 2010 WL 364276, at *10 (E.D. Cal. Jan. 25, 2010) (citing *Civic Western*, 66 Cal.App.3d at 14). Finally, "[a] cause of action for an accounting requires a showing that a relationship exists between the plaintiff and defendant that requires an accounting, and that some balance is due the plaintiff that can only be ascertained by an accounting." *Teselle v. McLoughlin*, 173 Cal.App.4th 156, 179 (2009) (citations omitted).

DFG claims the defendants are jointly and severally liable for damages of $1,600,000 as a result of the defendant's scheme to conceal the distribution of the Verde Loans. Because the amount of damages asserted against the defendants, jointly and severally, is a sum certain, as plead by DFG, the claim of accounting must fail. Accordingly, Count VII of the California Complaint is **DISMISSED** with prejudice for futility as to all defendants without leave to amend.

### 4. California Complaint Count VIII: Money Had And Received

DFG makes a claim of money had and received. To state a *prima facie* claim for money had and received a plaintiff must show the following elements: (1) the defendant received money that was intended to be used for the benefit of the plaintiff; (2) the money was not used for the plaintiff's benefit; and (3) the defendant has not given the money to the plaintiff. *English & Sons, Inc. v. Straw Hat Restaurants, Inc.*, 176 F. Supp. 3d 904, 926 (N.D. Cal. 2016). A claim for money had and received is "viable 'wherever one person has received money which belongs to another, and which in equity and good conscience should be paid over to the latter.' " *Id.* (quoting *Avidor v. Sutter's Place, Inc.*, 212 Cal.App.4th 1439, 1454 (2013)).

To state this claim DFG must assert that the Verde Group intended DFG—and not Heather or any of the other defendants—to be the final recipient of the Loan Proceeds. The undisputed record demonstrates that DFG was never the intended recipient of the Loan Proceeds. Further, an assertion that DFG was the intended recipient runs contrary to DFG's underlying theory of this case; i.e. the defendants worked in concert to conceal the Verde Loans and the distribution of the Loan Proceeds to thwart DFG's collection. Thus, because DFG was not the intended recipient of the Loan Proceeds, Count VIII of the California Complaint is **DISMISSED** with prejudice for futility as to all defendants without leave to amend.

### E. ARIZONA COMPLAINT COUNTS VI & VII: NEGLIGENCE & NEGLIGENCE PER SE. CALIFORNIA COMPLAINT COUNT X: NEGLIGENCE

#### 1. Arizona Complaint Count VI & the California Complaint Count X: Negligence

Under Arizona law to make a *prima facie* claim for negligence, "a plaintiff must prove four elements: (1) a duty requiring the defendant to conform to a certain standard of care; (2) a breach by the defendant of that standard; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual damages." *Gibson v. Cty. of Maricopa, No.*, No. CV1600767PHXJATJZB, 2017 WL 168035, at *3 (D. Ariz. Jan. 17, 2017) (quoting *Gipson v. Kasey*, 214 Ariz. 141, 143 (2007)).

As a preliminary matter, DFG fails to state a negligence claim against: Barker, Carroll, Despain, Nell, Olguin, Swart, and Vasquez because no facts are alleged satisfying any element of negligence. Further, the Court finds no facts supporting a plausible negligence claim against them exists. Accordingly, Count VI of the Arizona Complaint is **DISMISSED** with prejudice as to Barker, Carroll, Despain, Nell, Olguin, Swart, and Vasquez for futility without leave to amend.

##### a) Hendon

DFG asserts a negligence claim against Hendon. DFG alleges Hendon committed the following acts: (1) making false statements to this Court regarding the value of his assets; (2) fraudulently scheming to hide assets from DFG and his other creditors; and (3) divesting his interests in assets for less that reasonably equivalent value (DE 30 at 28).

DFG's alleges that Hendon misrepresented the value of certain furniture on his bankruptcy petition in 2011, then subsequently sold it for more and transferred the sale proceeds to Carroll (Id. at 17). Carroll, established without dispute that Hendon transferred title to the furniture to her between 2008 to 2010, pursuant to a prenuptial agreement and its amendments and attachments (Oral Argument at 00:52:45 – 00:53:45; DE 35 at 5). DFG does not refute these facts, rather it merely contends it did not become aware of the transfers until 2014 (DE 40 at 5).

DFG's tolling argument lacks merit. Any such transfer to Carroll was more than six years old when DFG first asserted this claim. There is no claim that Carroll concealed her ownership of the furniture from the Trustee appointed in 2011 or from DFG. Property in which the debtor holds an interest at the commencement of a bankruptcy case becomes Estate Property at the moment the petition is filed. § 541(a). Property transferred to Carroll years *before* the Petition Date does not become property of the bankruptcy estate.[22] Accordingly, the Court rejects DFG's equitable tolling argument. Hendon's transfer of the furniture to Carroll does not constitute bankruptcy fraud or negligence.[23]

DFG also alleges Hendon fraudulently schemed to hide assets from his creditors (DE 30 at 28). Common law fraud requires proof the defendant's conduct was intentional; the defendant *intended* the damage suffered by the plaintiff. *See Kennedy v. Chase Home Fin.*, LLC, No. CV11-8109-PCT-DGC, 2012 WL 1132785, at *4 (D. Ariz. Apr. 4, 2012) (quoting *Taeger v. Catholic Family & Cmty. Serv.*, 995 P.2d 721, 730 (Ariz.App.1999)); *Comerica Bank v. Mahmoodi*, 224 Ariz. 289, 291–92 (Ct. App. 2010). Assuming Hendon devised and carried out a scheme to fraudulently conceal assets from his creditors, such conduct could not support a negligence claim because fraud is by definition an intentional tort.

Finally, DFG asserts Hendon fraudulently transferred the Carwash Entities for less than their reasonable value. DFG's claim presupposes that Hendon, a judgment debtor, owes a legal duty to judgment creditor. There is no support for such a negligence claim. This is not to say that a judgment creditor is left without any relief in response to illegitimate conduct of a judgment

---

[22] *But see supra* pp. 12-15 (discussing claw back of bankruptcy debtor's property).

[23] Again, DFG fails to allege facts supporting any of the elements of a negligence claim against Carroll.

debtor, however, negligence is not the remedy for such conduct. Hendon's legal obligations to DFG arises out of a non-dischargeable judgment issued by this Court against Hendon. Hendon owes no duty of care to DFG, thus, all negligence claims fail. Count VI of the Arizona Complaint is **DISMISSED** with prejudice for futility as to Hendon without leave to amend.

### b) *Meda & Johnson*

DFG asserts negligence claims against Meda and Johnson (collectively, the "Attorneys") in connection with their representation of Hendon and Heather respectively, in Hendon's bankruptcy case and the associated adversary proceedings. DFG claims that, in their representation of Hendon and Heather, the Attorneys breached their duties: "to provide [DFG] truthful information . . . to refrain from obstructing [DFG's] ability to pursue its civil remedies . . . to refrain from making false statements and producing false evidence . . . to take reasonable remedial measures if the lawyer know the client has offered evidence that is false" (DE 30 at 30). DFG alleges the Attorneys breached their duty by: (1) giving instructions to Hendon and Heather to create a bank account in Heather's name for the purpose of shielding Hendon's assets from DFG's collection efforts; (2) making false representations to the Court regarding the custody or control of Hendon and Heather's assets; (3) submitting false or fabricated promissory notes in response to DFG's request for documents; and (4) knowingly receiving Hendon's hidden assets (Id.).

The Arizona Supreme Court holds "the general rule" that a lawyer "owes no duty to a non-client unless special circumstances require otherwise." *Paradigm Ins. Co. v. Langerman Law Offices, P.A.*, 200 Ariz. 146, 154 (2001) (quoting *Napier v. Bertram*, 191 Ariz. 238, 242 (1998)). The court's formulation of this rule is taken from the Restatement: "a lawyer owes a duty of care . . . to a nonclient when and to the extent that: (a) the lawyer or (with the lawyer's acquiescence) the lawyer's client invites the nonclient to rely on the lawyer's opinion or provision of other legal services, and the nonclient so relies; and (b) the nonclient is not, under applicable tort law, too remote from the lawyer to be entitled to protection . . . ." *Id.* at 153 (quoting Restatement (Third) of the Law Governing Lawyers § 51(3)(2000)).

In *Paradigm*, the court found that a lawyer hired by an insurance company to represent the insured owed a duty to the insurer as well. *Paradigm*, 200 Ariz. at 154. An Arizona appellate court recently stated duty of care arises when there is "shared benefit" between the duty-owed client and the damaged non-client. *Ballard v. DeConcini McDonald Yetwin & Lacy, P.C.*, 2013 WL 5593570, at *4 (Ariz. Ct. App. Oct. 9, 2013). The *Ballard* court concluded, however, that "where no duty is *expressly assumed* or no *shared benefit* can be found, attorneys remain free to zealously represent their clients' interests without the risk of liability to the nonclient." *Id*. (emphasis added). Thus, the threshold question is whether the Attorneys owed DFG a duty of care because: (1) the Attorneys expressly assumed a duty; or (2) there existed a shared benefit between the Attorneys' duty-owed clients – Hendon and Heather – and DFG.

The Attorneys never represented DFG. The Attorneys – at all relevant times – represented parties with interests adverse to DFG. The Attorneys representation of Hendon and Heather was precisely the opposite of a shared benefit. The record contains no plausible facts, which supports a theory that the Attorneys either, expressly assumed a duty of care, or that DFG and Hendon or Heather shared any benefit in the Attorneys' dutiful representation of their clients. As a result, neither Meda nor Johnson owed a duty of care to DFG rendering the negligence claim futile. Accordingly, Count VI of the Arizona Complaint is **DISMISSED** with prejudice as to Meda and Johnson without leave to amend.

### 2. Arizona Complaint Count VI: Negligence Per Se

DFG alternatively claims that the defendants are liable for damages as a result of Hendon's alleged fraudulent transfers as defined by §§ 548-550 of the Bankruptcy Code. In Arizona a claimant may state *prima facie* negligence claim, under a negligence per se theory, by asserting a "violation of a statute [as a means to] establish[] the elements of duty and breach . . . thus, "requiring the plaintiff to prove only proximate cause and damages." *Resolution Trust Corp. v. Dean*, 854 F. Supp. 626, 640 (D. Ariz. 1994) (citing *Cobb v. Salt River Valley Water Users' Ass'n*, 57 Ariz. 451 (Ariz.1941)). To satisfy the elements of duty and breach through the violation of a statute, however, the "statute [must be] intended as a safety regulation." *Resolution Trust*, 854 F. Supp. at 640 (citing *Brannigan v. Raybuck*, 136 Ariz. 513,(Ariz.1983)); *See*

*Kauffman v. Schroeder*, 116 Ariz. 104, 106 (1977) ("violation of a statute enacted for the public safety is negligence per se"); *Salt River Valley Water Users' Ass'n v. Compton*, 39 Ariz. 491, 496 (1932) ("Where a valid statute, enacted for the public safety, or governmental regulations made in pursuance thereof, provide that a certain thing must or must not be done, if a failure to comply with the regulations is the proximate cause of injury to another, such failure is actionable negligence per se") *abrogated on other grounds by MacNeil v. Perkins*, 84 Ariz. 74 (1958).

DFG's negligence per se claim relies on Hendon's alleged violations of the §§ 548-550 of the Bankruptcy Code. DFG's Bankruptcy Code claims have been dismissed. DFG's negligence per se claim, nevertheless, is fatally flawed. The Bankruptcy Code statutes allegedly underlying DFG's negligence per se claim are not public safety statutes, and therefore, cannot support any such a claim. DFG, therefore, fails to state a claim of negligence per se. Accordingly, Count VI of the Arizona Complaint is **DISMISSED** with prejudice for futility with respect to all defendants without leave to amend.

## F.   UNFAIR BUSINESS PRACTICES: CALIFORNIA COMPLAINT COUNT IX

DFG alleges the defendants engaged in unfair competition within the meaning of the California Unfair Business Practices Act, Cal. Bus. & Prof. Code §§ 17200 – 17210 (the "UCL"). In response, Meda argues that the application of the UCL to the defendants is impermissible (*California Adversary*, DE 32 at 8). Meda asserts DFG's UCL claim is impermissible because the conduct giving rise to the claim occurred in Arizona and none of the defendants resided in California.

California courts reject the extraterritorial application of its statutes. *Cumis Ins. Soc., Inc. v. Merrick Bank Corp.*, No. CIV07-374-TUC-CKJ, 2008 WL 4277877, at *5 (D. Ariz. Sept. 18, 2008); *Churchill Vill., L.L.C. v. Gen. Elec. Co.*, 169 F. Supp. 2d 1119, 1126 (N.D. Cal. 2000), *aff'd sub nom. Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004). "With respect to the UCL specifically, section 17200 does not support claims by non-California residents where none of the alleged misconduct or injuries occurred in California." *Churchill*, 169 F. Supp. 2d at 1126.

In *Norwest Mortg., Inc. v. Superior Court*, the court held that to apply the UCL in case where there are "injuries suffered by non-California residents, caused by conduct occurring outside of California's borders, by defendants whose headquarters and principal places of operations are outside of California . . .would be arbitrary and unfair and transgress due process limitations." *Norwest Mortg., Inc. v. Superior Court*, 72 Cal. App. 4th 214, 227 (1999). Applying *Norwest*, the *Tidenberg* court determined that "[t]he critical issues [with respect to the extraterritorial application of the UCL is] whether the injury [alleged] occurred in California and whether the conduct of [d]efendants occurred in California[;] If neither of these questions can be answered in the affirmative then [the p]laintiff will be unable to avail herself of [the UCL]. *Tidenberg v. Bidz.com, Inc., No*. CV085553PSGFMOX, 2009 WL 605249, at *4 (C.D. Cal. Mar. 4, 2009).

The defendant's conducted all parts of the Carwash Entity Transaction in Arizona. DFG alleges no injury—in either the California Complaint or their reply to Meda's motion to dismiss—that may plausibly have occurred in California. Further, no defendant resided or was present in California when the alleged injury occurred. As a result, DFG fails to satisfy the test for extraterritorial application of the UCL. Thus, DFG fails to state claim for unfair competition. Accordingly, Count IX of the California Complaint is **DISMISSED** with prejudice for futility as to all defendants without leave to amend.

## G. ARIZONA COMPLAINT COUNT V; CALIFORNIA COMPLAINT COUNTS III & IV: CIVIL RICO, CIVIL CONSPIRARACY, AIDING AND ABETTING

### 1. Arizona Complaint Count V: Civil RICO

DFG alleges the defendant's conduct with respect to the Verde Loans and the distribution of the Loan Proceeds constitutes a violation of the Racketeering Influenced and Corrupt Organization Act ("RICO") under 18 U.S.C. §§ 1962(c) and (d). DFG alleges the defendants committed the following RICO predicate acts: (1) money laundering under 18 U.S.C. § 1956; (2) mail and wire fraud under 18 U.S.C. §§ 1341 and 1343; (3) bankruptcy fraud under 18 U.S.C. § 152; (4) "Structuring pursuant to 31 U.S.C. 5324(d)(1)[;]" (5) "[t]he use of deception to undermine investigations of the defendants activities; (6) [a]buse of the legal system; (7)

[o]bstruction of civil proceedings; and (8) [t]ampering with evidence and/or witnesses" (DE 30 at 25).[24] DFG lists these predicate acts and blankelty attributes their commission to all defendants without specificity.

DFG does makes certain specific factual claims as part of their RICO claim, which include:

(A) The existence of an association-in-fact consisting of Meda, Johnson, and Despain (Id. at 24).

(B) The procurement of a loan on 2007 by Hendon (later giving rise to the Judgment) constituted the RICO predicate acts of wire fraud, mail fraud, and money laundering by Hendon, Nell, and Carroll (Id. at 25).

(C) Wire transfers by Hendon in 2010 constitute the RICO predicate act of bankruptcy fraud by Hendon and the recipients Heather, Nell, and Carroll (Id. at 25-26).

(D) The Deed-in-Lieu Transfer constitutes the RICO predicate act of money laundering by Hendon.

(E) The execution of the Verde Loans constitutes the RICO predicate act of wire fraud and money laundering by Hendon (Id.).

(F) The following acts presumably constitute the RICO predicate acts of "obstructing and civil proceeding" and "tampering with evidence and/or witnesses" by Meda and Johnson:

(i) instructing Heather to create a bank account for the deposit of funds to be used by Hendon without the knowledge of DFG or the Bankruptcy Court;

(ii) making false representations to the Bankruptcy Court with respect to assets held by Hendon and Heather;

(iii) obstructing DFG's "ability to pursue its civil remedies by producing false promissory notes; and

(iv) receiving funds from Hendon out of assets "known to be hidden from creditors" (Id.).

---

[24] Referred to *supra* by assigned number.

### a) *RICO Generally*

To plead a *prima facie* RICO claim a plaintiff must satisfy all of "[t]he elements of a civil RICO claim [under § 1962(c), which] are as follows: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as predicate acts) (5) causing injury to plaintiff's business or property." *United Bhd. of Carpenters & Joiners of Am. v. Bldg. & Const. Trades Dep't, AFL-CIO*, 770 F.3d 834, 837 (9th Cir. 2014) (citing *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir.2005)); *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985).

Under § 1962(d) a defendant who conspires to violate the RICO Act is also is also liable for a claim under § 1962(c). The conspirator's liability under a § 1962(d) civil RICO claim, however, is limited to damage the defendant causes the plaintiff in the defendant's commission of an *enumerated predicate act*; an overt act by the defendant, merely in furtherance of a RICO enterprise, not the direct cause of the plaintiff's injury does not suffice. *Beck v. Prupis*, 529 U.S. 494, 505–06 (2000) ("[A] civil conspiracy plaintiff cannot bring suit under RICO based on injury caused by any act in furtherance of a conspiracy that might have caused the plaintiff injury. Rather, consistency with the common law requires that a RICO conspiracy plaintiff allege injury from an act that is analogous to an act of a tortious character, meaning an act that is independently wrongful under RICO."); *see Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 650–51 (2008).

As a threshold matter, the Court finds that DFG's RICO claim fails with respect to Carroll and Vasquez. At Oral Argument DFG acknowledged the RICO claim was not based on any RICO predicate act allegedly committed by Carroll or Vasquez[25]. Accordingly, Count V of the Arizona Complaint is **DISMISSED** with prejudice with respect to Carroll and Vasquez for futility without leave to amend.

The Court further finds that DFG's RICO claim must necessarily fail with respect to defendants who have not directly participated in any alleged *bona fide* RICO predicate acts. The

---

[25] *See* Oral Argument at 01:16:10 – 30 (asserting their lack of involvement in wire fraud); *see also* Oral Argument 01:28:48 – 1:30:48 (attributing money laundering to acts Meda).

Court will consider the elements of DFG's RICO claim in the light most favorable to DFG, assuming facts could cure the Arizona Complaint if DFG were granted leave to amend.

### b) *Conduct*

The Supreme Court defines RICO conduct as "participat[ion] in the operation or management of the enterprise itself." *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993). To participate, within the meaning of conduct, "one must have some part in directing" the "enterprise's affairs." *Id.* at 179. "Mere participation" in a RICO "predicate offenses . . . even in conjunction with a RICO enterprise, may be insufficient to support a RICO cause of action. A defendant's participation must be in the conduct of the affairs of a RICO enterprise, which ordinarily will require some participation in the operation or management of the enterprise itself." *Bennett v. Berg*, 710 F.2d 1361, 1364 (8th Cir. 1983) (defining operation and management test adopted as the standard by the Supreme Court in *Reves*).

DFG fails to allege the requisite conduct with respect to Nell. DFG merely claims that Nell was the recipient of Hendon's transfers. But, DFG only addresses one transfer, which the record shows she has never received.[26] DFG does not plead any facts permitting the reasonable conclusion that Nell, now deceased, had any part in directing the enterprises events as required by the law.

DFG does not address nor discuss the specific RICO conduct of any other remaining defendant. DFG fails to plead any facts with regard to Barker, Swart or Vasquez or mention their involvement in any alleged predicate acts. DFG alleges no facts that would allow the Court to reasonably conclude any of them participated or directed any of the events involving the Carwash Entity Transaction, the Verde Loans, or the Deed-in-Lieu Transfer.

### c) *Enterprise*

An enterprise, which meets the § 1964(c) standard, is comprised of a group, organized as a legal entity, or a group that is "associated in fact although not a legal entity." 18 U.S.C. § 1961(4). An association-in-fact "enterprise is an entity, for present purposes a group of persons associated together for a common purpose of engaging in a course of conduct." *United States v.*

---

[26] *See infra* p. 17.

*Turkette*, 452 U.S. 576, 583 (1981). An association-in-fact enterprise must have a structure composed of three features: "a purpose[;] relationships among those associated with the enterprise[;] and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938, 946 (2009). Finally, an association-in-fact enterprise must exist "separately and apart" from the pattern of racketeering activity. *Turkette*, 452 U.S. at 583. In other words, proof of a pattern of racketeering activity "does not necessarily establish the" existence of an enterprise. *Id.*

The definition of "purpose" within the enterprise's structure is axiomatic; the enterprise must have some common purpose. The concept of "association" requires both interpersonal relationships among enterprise associates and common interest. *Id.* at 946. Finally, the enterprise's structure "must have some longevity, since the offense proscribed by that provision demands proof that the enterprise had 'affairs' of sufficient duration to permit an associate to 'participate' in those affairs through 'a pattern of racketeering activity' " *Id*. at 938.

DFG alleges that Hendon, Meda, Johnson and Despain formed an association-in-fact enterprise.[27] DFG alleges that the purpose of the enterprise was "the financial gain and benefit of the [d]efendants" (DE 30 at 24). DFG fails to plead the defendants engaged in a *course of conduct* to execute their alleged purpose. DFG further fails to plead facts that demonstrate a relationship between the parties. Meda represented Hendon in the Bankruptcy Case. Johnson represented Heather. Despain allegedly worked in some capacity for Hendon. DFG fails to allege that these separate parties have any relationship to one another that could plausibly be construed as a common interest. In the absence of a plausible theory that these parties share a common interest, DFG cannot demonstrate the existence of the enterprise outside of the alleged racketeering activity. As such, DFG fails to establish the existence of an association-in-fact enterprise composed of these parties.

---

[27] The full association-in-fact enterprise alleged by DFG included Heather, the Verde Group, Pacwest, and the Rubenstein Parties, but these persons and entities were dismissed from these cases as a result of the Settlement.

DFG does not include any facts with regard to defendants Nell, Barker, Swart, and Olguin.  Even assuming DFG plead all defendants as part of an enterprise, the Court finds an association-in-fact enterprise so implausible that it must necessarily fail.

DFG alleges Olguin was involved in the procurement of the 2007 loan, which gave rise to the Judgment.  But, DFG fails to allege his subsequent involvement with Hendon – or any other defendant – up to and including the execution of the Deed-in-Lieu Transfer or the Verde Loans in 2014.  Therefore, Olguin's involvement in the alleged enterprise is implausible and fails.

DFG pleads no facts that connect Nell, Swart, or Barker to the Carwash Entity Transaction or the subsequent transfers.  Hendon's relationships with Nell, Swart, and Barker according to the Arizona Complaint were personal.  Nell was Hendon's elderly mother.  Swart was Hendon's personal friend who allegedly purchased a Ferarri owned by Hendon.  Barker was Hendon's girlfriend in 2014.  There are no plausible facts alleged by DFG that permit the reasonable conclusion that an enterprise-in-fact existed comprised of Hendon, Nell, Swart and Barker that also includes the Verde Group, Pacwest, Meda, and Johnson.  Again, DFG's alleged enterprise – composed of these individuals and entities – is implausible and fails.

### d) *Pattern*

To establish a § 1962 RICO pattern, DFG must plead facts which demonstrate the enterprise committed at least two predicate acts: (a) that have a relationship to one another; (b) that constitute a threat of continuing racketeering activity; and (c) that are within a 10 year period of one another. *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239-40 (1989).  The Supreme Court defines a relationship among predicate acts as "criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id.* at 240.

Continuity, within the meaning of pattern, is comprised of either "a *closed* period of repeated conduct, or [an *open* period of] past conduct that by its nature projects into the future with a threat of repetition." *Id.* at 241 (emphasis added).  "A party alleging a RICO violation may demonstrate . . . closed period [continuity] by proving a series of related predicates extending

over a substantial period of time[, however,] [*p*]*redicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement*[.]" *Id.* at 242 (emphasis added). An open period of continuity is established by alleging the commission of "a small number of related predicate[]" acts, which although "occur close together in time . . . include a specific threat of repetition extending indefinitely into the future, and thus supply the requisite threat of continuity." *Id.* Or, by establishing "that the predicates are a regular way of conducting defendant's ongoing legitimate business . . . or of conducting or participating in an ongoing RICO 'enterprise.' " *Id.* at 243. As discussed *infra*, DFG fails to establish the requisite number of RICO predicate violations to satisfy the element of pattern.

### 2. *Racketeering Activity*

To state a RICO claim DFG must plead facts demonstrating the defendants conducted or continue to conduct a RICO enterprise through a "pattern of racketeering activity." *Sedima*, 473 U.S. at 496. Racketeering activity is defined as the acts enumerated in 18 U.S.C. § 1961(1) but also "includes, *inter alia*, any act which is indictable under the Hobbs Act, 18 U.S.C. § 1951, or any act or threat involving [] extortion, [] which is chargeable under State law." *United Bhd. of Carpenters*, 770 F.3d at 837 (9th Cir. 2014) (internal quotes and citations omitted).

As a threshold matter, DFG fails to state a RICO claim predicated on alleged acts (4)-structuring, (5)-the "use of deception to undermine the investigations of the defendants", and (6)-abuse of the legal system. Predicate act (4) is not an enumerated RICO predicate under § 1961(1). Because the structuring statute – 31 U.S.C. § 5324 – exists to protect the interests the government holds in the regulation of financial institutions, there is no conceivable damage structuring could cause a private party. Predicates (5) and (6) are similarly not enumerated RICO predicates, nor are they cognizable causes of action under any body of federal law.

Assuming predicate acts (7) and (8) are based on violations of 18 U.S.C. §§ 1503 and 1512—respectively, influencing or injuring officer or juror generally, and tampering with a witness, victim or informant—DFG alleges Meda and Johnson committed these RICO predicate acts in their representation of Hendon and Heather.[28] In the Ninth Circuit, §§ 1503 and 1512 are

---

[28] "Use of deception to undermine investigations of the defendants' activities" and "abuse of

criminal statutes and do not constitute a RICO predicate in a civil action prosecuted by a private party. *See Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1482 (9th Cir. 1997) (holding plaintiff may not state a civil RICO claim predicated on § 1503 because it constitutes a private right of action), *aff'd*, 525 U.S. 299, 119 (1999) *overruled on other grounds by Lacey v. Maricopa Cty.*, 693 F.3d 896 (9th Cir. 2012); *Kraft v. Old Castle Precast Inc.*, No. LA CV 15-00701-VBF, 2015 WL 4693220, at *3 (C.D. Cal. Aug. 5, 2015) (adopting *Forsyth* for § 1503 RICO predicates and also applying its reasoning to § 1512 predicates); *see Sepehry-Fard v. Dep't Stores Nat'l Bank*, No. 13-CV-03131-WHO, 2013 WL 5537126, at *9 (N.D. Cal. Oct. 4, 2013) (also adopting *Forsyth* for § 1503 RICO predicates and applying its reasoning to § 1512 predicates), *aff'd in part*, No. 14-16085, 2016 WL 6583601 (9th Cir. Nov. 7, 2016); *see also Ezike v. Mittal*, No. C 08-1867 SBA, 2009 WL 506867, at *5 (N.D. Cal. Feb. 27, 2009) (applying holding in *Forsyth* to § 1512 when cited by party as RICO predicate).

DFG alleges Meda and Johnson's conduct constitutes violations of predicate acts (7)- obstruction of civil proceeding and (8) –tampering with evidence or witnesses because they: instructed Heather to deposit Loan Proceeds in a bank account in her name without DFG's or this Court's knowledge; they falsely represented Hendon's assets to this Court; and they received thousands of dollars from Hendon's concealed assets (DE 30 at 26). In asserting this conduct constitutes predicate acts (7) and (8), DFG presupposes that the Loan Proceeds were Estate Property. As discussed above, the Loan Proceeds were neither Estate Property nor Hendon's property. Heather's or a third-party's distribution or concealment of the Loan Proceeds cannot plausibly be construed as fraud on this Court.

DFG further alleges that Meda and Johnson obstructed DFG's ability to pursue civil remedies by producing false promissory notes (Id.). Even accepting these facts as true, such conduct does not give rise to plausible RICO claim. DFG – as a private party – may not predicate a civil RICO claim on acts (7) and (8).

---

the legal system" are not enumerated RICO predicate acts. Sections 1503 and 1512 appear under of Title 18 Chapter 73, Obstruction of Justice, and are the most analogous to DFG's defectively plead RICO predicates.

DFG's alleged RICO predicate act (3)-bankruptcy fraud is based on a series of prepetition wire transfers made by Hendon and received by Nell and Carroll. For the reasons already stated, these transfers do not constitute bankruptcy fraud. Further, the Court held that Nell never received the alleged transfer and awarded DFG the Judgment, partially, on that basis. Thus, DFG fails to plead facts establishing a RICO violation predicated on bankruptcy fraud.

DFG alleges that Meda instructed Heather to set up a bank account to deposit the Loan Proceeds; then to disburse the Loan Proceeds for Hendon's benefit in payment of Meda's legal fees and to disburse additional amounts to the Trustee in Hendon bankruptcy case. DFG asserts this conduct constitutes the RICO predicate act (1)-money laundering (Oral Argument at 01:28:47 – 01:29:30).

To state a *prima facie* claim for money laundering, DFG must plead facts that demonstrate the defendants: "[(a)]conducted a financial transaction involving the proceeds of unlawful activity; [(b)] knew the proceeds were from unlawful activity; and [(c)] intended to" in this case "conceal or disguise . . . the ownership or control of the proceeds of a specified unlawful activity[.]" *United States v. Gough*, 152 F.3d 1172, 1173 (9th Cir. 1998) (emphasis added); see 18 U.S.C. § 1956(a)(1)(B)(ii). Unlawful activity, however, not a term of art; it is defined as a violation of the enumerated statues found in 18 U.S.C. § 1956(c)(7).

DFG acknowledges that the Pacwest sale and the Deed-in-Lieu Transfer were not "in and of [themselves] a criminal act" (Oral Argument at 01:30:10 – 22). The Deed-in-Lieu Transfer consisted of Hendon transferring the Carwash Entities allegedly controlled by him—to Pacwest for less than reasonably equivalent value. No plausible facts are alleged to support the conclusion that this transaction constituted money laundering in violation of §1956. Similarly, DFG cannot reasonably assert a RICO claim based on the funds arising from this transaction.

Under § 1956(c)(7), bankruptcy fraud as well as wire and mail fraud – 18 U.S.C. §§ 152, 1341, and 1343, respectively – are enumerated unlawful activates. DFG, however, has not alleged any facts that plausibly state a claim for bankruptcy, mail or wire fraud. As a result, DFG's RICO claim – predicated on money laundering–also fails.

DFG's final RICO predicate is act (2)-mail and wire fraud – under 18 U.S.C. §§ 1341 and 1343. DFG bases this claim on Heather's receipt of the two Verde Loans totaling $1,600,000 and the subsequent wiring of the Loan Proceeds by her to the Rubenstein Parties and then to Hendon as the predicate acts (Oral Argument at 01:04:37 – 01:10:47). To state a *prima facie* claim for wire fraud DFG must state facts that demonstrate: (a) the existence of a scheme to defraud; (b) the use of wire, radio, television or mail to execute the scheme; and (c) a specific intent to defraud. *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 557 (9th Cir. 2010); see *United States v. Jinian*, 725 F.3d 954 (9th Cir. 2013). DFG posits that because of the Judgment, it could execute on Hendon's assets wherever they are located. DFG alleges Hendon's transfer of the Carwash Entities to Pacwest for less than reasonably equivalent value resulted in Heather's receipt of the Verde Loan Proceeds for Hendon's benefit. DFG claims this transaction constitutes a scheme designed to conceal Hendon's illicit receipt of the proceeds from the Deed-in-Lieu Transfer.

Even accepting these facts as true, Pacwest – the beneficiary of the Deed-in-Lieu Transfer – did not transfer any of the Verde Loan Proceeds to Heather. DFG is required to plead facts demonstrating Hendon transferred his assets to Pacwest and subsequently Pacwest enriched him in some undisclosed fashion. DFG fails to plausibly explain how the Loan Proceeds – Heather received from Verde – were comprised of the transfer of Hendon's assets to Pacwest and then back to Hendon. DFG fails to allege a scheme that enriched Hendon at the expense of his creditors.

Under *Beck* and *Bridge*, DFG may not state a RICO without pleading facts that establish the defendants participated in the furtherance of a specific enumerated RICO predicate act. An act in furtherance of, merely, an alleged RICO enterprise is not sufficient. Accepting all facts in the Arizona Complaint as true, DFG has failed to establish that any of the defendants directly participated in any of the alleged RICO predicates. DFG fails to establish existence of an association-in-fact for the purpose of engaging in a course of conduct. DFG alleges no connection among the defendants, other than the alleged receipt – mostly, in unspecified amounts, at unspecified times – of the Loan Proceeds. Accepting these facts as true, there is no

plausible connection between the defendants to support a RICO claim. Accordingly, Count V of the Arizona Complaint is **DIMISSED** with prejudice as to all defendants without leave to amend.

### 2. California Complaint Count III: Civil Conspiracy

DFG alleges that the defendants entered into a conspiracy to perpetrate a fraud by assisting Hendon in concealing the proceeds of the Verde Loans to thwart DFG's collection. "The elements of a civil conspiracy under California law are: '(1) formation and operation of the conspiracy and (2) damage resulting to plaintiff (3) from a wrongful act done in furtherance of the common design.' " *Novak v. Merced Police Dep't*, No. 1:13-CV-1402 AWI BAM, 2014 WL 730725, at *5 (E.D. Cal. Feb. 24, 2014) (quoting *Rusheen v. Cohen*, 37 Cal.4th 1048, 1062, (2006)). It is "well established[ that ]civil conspiracy is not an independent tort[, but r]ather . . . a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration." *Sporting Supplies Int'l, Inc. v. Tulammo USA, Inc.*, No. SACV101338AGRNBX, 2011 WL 13135282, at *3 (C.D. Cal. Jan. 3, 2011) (quoting *Kidron v. Movie Acquisition Corp.*, 40 Cal. App. 4th 1571, 1581). A *wrongful act* – for the purposes of civil conspiracy – must be intentional. *Mendez v. County of Alameda*, No. C 03-4485 PJH, 2005 WL 3157516 at *12 (N.D. Cal. 2005) ("the law does not recognize a conspiracy to commit negligence"). Thus, to state a *prima facie* claim for civil conspiracy, DFG must "satisfy all of the elements of a cause of action for a [completely separate] tort or wrong" in addition to the elements of civil conspiracy. *Gen. Am. Life Ins. Co. v. Rana*, 769 F. Supp. 1121, 1125 (N.D. Cal. 1991).

As discussed *supra*, DFG fails to state a claim for an intentional tort plead under California law. In addition, DFG cannot recover against Hendon or the other defendants based on Hendon's transfer of his interest in the Carwash Entities to Pacwest. In *Renda v. Nevarez*, the court held that "a creditor who has obtained a judgment for damages against a debtor in a prior action is not entitled under the UFTA to recover a personal judgment against the debtor for the amount of money the debtor subsequently transfers to third parties to hinder, delay, or defraud the creditor in collecting on the original judgment." 223 Cal. App. 4th 1231, 1239 (2014). The

*Renda* court reasoned "that a plaintiff is entitled to only a single recovery for a distinct harm suffered, and double or duplicative recovery for the same harm is prohibited," rendering the creditor's subsequent judgment void. *Id*. at 1237 (citing *Tavaglione v. Billings*, 4 Cal.4th 1150, 1158–59 (1993).

The facts in the instant case closely resemble those contemplated in *Renda*. DFG holds a judgment against Hendon. DFG alleges Hendon fraudulently transferred his assets to the other defendants for the purpose thwarting collection.[29] DFG seeks a subsequent judgment, for damages in tort, against the Hendon and the other defendants in furtherance of collection. Under the *Renda* decision the relief sought by DFG is contrary to "well-established principle[s] applied both at law and in equity" that bar double recovery. *Id*. Accordingly, Count III of the California Complaint is **DIMISSED** with prejudice as to all defendants without leave to amend.

### 3. California Complaint Count IV: Aiding and Abetting

DFG alternatively seeks tort damages against Hendon and the defendants alleging, the defendants aided and abetted Hendon in a scheme to conceal the Verde Loan proceeds. California law provides that a third-party is held liable for a an intentional tort if a plaintiff can demonstrate that the third-party: "(1) knows the [tortfeasor's] conduct constitutes a breach of duty and gives substantial assistance or encouragement to the [tortfeasor] to so act . . . or (2) gives substantial assistance to the [tortfeasor] in accomplishing a tortious result and the [third-party's] own conduct, separately considered, constitutes a breach of duty to the third person." *Simi Mgmt. Corp. v. Bank of Am*., *N.A*., 930 F. Supp. 2d 1082, 1098 (N.D. Cal. 2013) (internal quotations omitted) (quoting *Seaman v. Sedgwick, LLP*, No. 11–664, 2012 WL 254046, at *7 (C.D.Cal. Jan. 26, 2012). Like a claim under a civil conspiracy theory, a *prima facie* aiding and abetting claim requires the plaintiff to demonstrate that the elements of an intentional tort are satisfied.

DFG's claim for aiding and abetting is futile under California law for the same reasons set forth in the discussion of DFG's civil conspiracy claim above. Accordingly, Count IV of the California Complaint is **DIMISSED** with prejudice as to all defendants without leave to amend.

---

[29] DFG already released all claims against Pacwest, the transferee of the Carwash Entities, as well as Heather, the Verde Group and the Rubenstein Parties pursuant to the Settlement.

### H. ARIZONA COMPLAINT COUNT VIII: CALIFORNIA COMPLAINT COUNT VI: CONSTRUCTIVE TRUST

#### 1. Arizona Complaint Count VIII: Constructive Trust

DFG's Arizona Complaint lists constructive trust as its eighth "cause of action". DFG "seek[s] equitable redress for the [d]efendants' illegal and wrongful course of conduct in taking the income, profits, proceeds, assets and monies from the sale of properties and other transfers" (DE 30 at 32). DFG alleges defendants' conduct included deprivation of Estate Property and the retention of property that belongs to the DFG (DE 30 at 33). DFG asserts entitlement to an order requiring the defendants to disgorge all funds received (Id.).

Under Arizona law, "A constructive trust is an equitable remedial device, generally used to prevent unjust enrichment." *Burch & Cracchiolo, P.A. v. Pugliani*, 144 Ariz. 281, 285 (1985). A constructive trust is available as a remedy in specific instances where "title to property has been obtained through actual fraud, misrepresentation, concealment, undue influence, duress, or through any other means which render it unconscionable for the holder of legal title to continue to retain and enjoy its beneficial interest." *In re Rose's Estate*, 108 Ariz. 101, 104 (1972) (internal citations omitted), *opinion supplemented on denial of reh'g*, 108 Ariz. 207 (1972). "The remedy of constructive trust has been applied in a variety of circumstances[, but] the doctrine is not without limits." *Pugliani*, 144 Ariz. at 285-86. "A prerequisite to the imposition of a constructive trust is the identification of a specific property belonging to the claimant." *Pugliani*, 144 Ariz. at 286 (citing *Barrasso v. First Nat. Bank*, 122 Ariz. 469, 471 (App.1979). Further, "[a]t a minimum . . . the plaintiff must have an equitable interest in the property wrongly held by the defendant to give rise to the defendant's duty to convey that property to the plaintiff." *Murphy Farrell Dev., LLLP v. Sourant*, 229 Ariz. 124, 131 (Ct. App. 2012), *as amended* (June 29, 2012).

Because constructive trust is a remedy and not cause of action, DFG must state an underlying claim for which a constructive trust would function as relief. Adopting the most liberal reading of the Arizona Complaint, it appears DFG is asserting a constructive trust claim as a prayer for relief for the multiple underlying claims made.

As discussed in detail, however, DFG fails to plead facts which accepted as true state a plausible claim that the defendants possess property in which DFG has an equitable interest. The Court already dismissed DFG's claims that Hendon transferred Estate Property. As a result, DFG fails to assert any basis for the imposition of a constructive trust in law or equity.

DFG has also failed to state claim under Arizona law for fraudulent transfer, negligence, or negligence per se. DFG's claims under federal law for money laundering and wire fraud fail because neither carries a private right of action. Finally, DFG has failed to state a claim under federal law for civil RICO. Because all asserted causes of action are futile, DFG is without an underlying claim to support the remedy of constructive trust. Accordingly, Count VIII of the Arizona Complaint is **DIMISSED** with prejudice with respect to all defendants for futility without leave to amend.

### 2. California Complaint Count VI: Constructive Trust

DFG lists a similar "cause of action" for constructive trust in the California Complaint, reciting the same factual basis as support for this claim for imposition of a constructive trust.

Under California law, "A constructive trust is not an independent cause of action but merely a type of remedy." *Kenneally v. Bank of Nova Scotia*, 711 F. Supp. 2d 1174, 1190 (S.D. Cal. 2010) (quoting *Batt v. City and County of San Francisco*, 155 Cal.App.4th 65, 82 (2007)); *accord Fox Hollow of Turlock Owner's Ass'n v. Mauctrst, LLC*, No. 1:03-CV-5439 AWI SAB, 2017 WL 1207188, at *35 (E.D. Cal. Mar. 31, 2017); *Kelleher v. Kelleher*, No. 13-CV-05450-MEJ, 2014 WL 94197, at *8 (N.D. Cal. Jan. 9, 2014); *Fitzpatrick v. Fitzpatrick*, No. 2:12-CV-2938 GEB AC, 2013 WL 1907730, at *5 (E.D. Cal. May 7, 2013) (citations omitted); *Arouchian v. Bank of Am., N.A.*, No. EDCV121028PSGDTBX, 2012 WL 12897038, at *3 (C.D. Cal. Oct. 11, 2012) (citing *Calistoga Civic Club v. Calistoga*, 143 Cal.App.3d 111, 117 (1983). "A plaintiff seeking imposition of a constructive trust must show: (1) the existence of a res (property or some interest in property); (2) the right of a complaining party to that res; and (3) some wrongful acquisition or detention of the res by another party who is not entitled to it." *Kelleher*, 2014 WL 94197, at *8 (citing *Communist Party of U.S. v. 522 Valencia, Inc.*, 35 Cal. App. 4th 980, 990 (1995)).

The application of constructive trust under California law does not materially depart from application adopted under Arizona law. The Court finds that DFG fails to state a claim for constructive trust in the California Complaint after applying the same reasoning outlined in the previous section. Accordingly, Count VIII of the California Complaint is **DIMISSED** with prejudice with respect to all defendants for futility without leave to amend.

## VI. <u>CONCLUSION</u>

For the reasons stated herein, all Counts against, Carroll, Despain, Hendon, Johnson, Meda, Nell, Olguin, and Swart are **DISMISSED** with prejudice without leave to amend.

Arizona Complaint, Count I, and California Complaint, Count II – claim of fraudulent transfer – against Vasquez is **DISMISSED** without prejudice with leave to amend. All remaining Counts against Vasquez are **DISMISSED** with prejudice without leave to amend.

With the exception of Arizona Complaint, Count I, and California Complaint, Count II – claim of fraudulent transfer – all Counts against Barker are **DISMISSED** with prejudice without leave to amend.

Leave to amend will expire 14 days from the entry of this order.

### **DATED AND SIGNED ABOVE.**

To be NOTICED by the BNC ("Bankruptcy Noticing Center") to:

**MARC Y. LAZO**
WILSON KEADJIAN BROWNDORF
1900 MAIN STREET, SUITE 600
IRVINE, CA 92614

**DANIEL HENDON**
21 MONTPELLIER
NEWPORT BEACH, CA 92660

**ROBERT C WARNICKE**
WARNICKE LAW PLC

777 EAST THOMAS ROAD SUITE 210
PHOENIX, AZ 85014

**JERRY L. COCHRAN**
COCHRAN LAW FIRM, PC
301 E VIRGINIA AVE STE 3300
PHOENIX, AZ 85004

**ANTHONY S VITAGLIANO**
MANNING KASS ELLROD RAMIREZ TRESTER LLP
3636 NORTH CENTRAL AVENUE, 11TH FLOOR
PHOENIX, AZ 85012

**LAURA A. ROGAL**
JABURG WILK, PC
3200 N. CENTRAL AVE., #2000
PHOENIX, AZ 85012

**GIL OLGUIN**
5600 GRAND GUINESS CT
LAS VEGAS, NV 89130-1366

**JAY SWART**
2525 E ELM STREET
PHOENIX, AZ 85016

**MARIA BARKER**
900 POPPY AVENUE
CORONA DEL MAR, CA 92625

**KENT DESPAIN**
10104 MCDOWELL VIEW TRAIL
FOUNTAIN HILLS, AZ 85268

**OCS CAPITAL GROUP**
G.M. OLGUIN, REGISTERED AGENT
330 WASHINGTON SE
ALBUQUERQUE, NM 87108

**CAROLYN J. JOHNSEN**
DICKINSON WRIGHT PLLC
1850 N. CENTRAL AVENUE #1400
PHOENIX, AZ 85004-4568

**OFFICE OF THE U.S. TRUSTEE**

230 NORTH FIRST AVE., SUITE 204
PHOENIX, AZ 85003